UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
AUBREY DRAKE GRAHAM,
:
            Plaintiff,
:
            v.                          No. 1:25-cv-00399-JAV
:
UMG RECORDINGS, INC.,
:
            Defendant.
:
:
------------------------------------------------------------x

**JOINT MEET AND CONFER LETTER**

      In accordance with this Court's Order on January 22, 2025, (ECF No. 8 ("Order")), Plaintiff Aubrey Drake Graham ("Plaintiff") and Defendant UMG Recordings, Inc. ("Defendant" or "UMG"), through undersigned counsel, conferred via telephone conference on March 10, 2025. The parties respectfully submit this Joint Letter. The parties agree that nothing in this Letter constitutes a waiver of any kind, including as to any party's right to propound discovery not described in this report or as to any objection to any discovery described in this Report. The parties' joint position on issues where they were able to reach agreement, and their respective positions where they were not, are set forth below:

    **1. NATURE OF THE CASE**

The Order requires a brief statement of the nature of the action and the principal defenses thereto.

**Plaintiffs' Position:** Beginning on May 4, 2024, and continuing every day since, Defendant—the self-proclaimed largest music company in the world and the company that has represented Plaintiff for over 10 years—has defamed Plaintiff by publishing and promoting content that asserts Plaintiff is a pedophile and sex offender (the "Defamatory Material"). Complaint ¶¶ 6–24, 166.[1]  Plaintiff has unequivocally denied these allegations publicly and privately to UMG. ¶¶ 20, 70–71, 167.  And at all times, Defendant knew the Defamatory Material was false. ¶¶ 6, 9, 19–24.  Defendant also knew that allegations in the Defamatory Material were a gold mine—Plaintiff is one of the biggest superstars in the world and allegations that he was a pedophile (published and promoted by the very company meant to represent him) were all but guaranteed to go viral and produce massive profits for Defendant. ¶¶ 9–11, 13–15, 20, 31–39, 49–50, 54–69.

Notwithstanding its knowledge that the allegations are fabricated, to ensure the Defamatory Material went viral, UMG waged an unrelenting and widespread campaign to publish the Defamatory Material as widely as possible starting no later than May 2024. ¶¶ 6, 9–11, 95–121, 125–65.  UMG leveraged traditional publicity strategies such as licensing, social media, and traditional news outlets. ¶¶ 95–125.  UMG also, on information and belief, spread the Defamatory Material through covert means, including removing copyright protections, purchasing fake streams, and engaging in other pay-for-play agreements. ¶¶ 9–11, 126–27, 132–37, 139–45.

---

[1] All ¶ cites are to the Complaint unless otherwise noted.

UMG's plan to spread the Defamatory Material succeeded. The Defamatory Material has been heard and seen by billions around the globe, many of whom *believe* that the allegations are true. ¶¶ 10–11, 120, 146–52, 214. Online, comments repeating and demonstrating belief in the allegations easily number in the hundreds of thousands. ¶¶ 14–16, 75. All over the world people are: calling for investigations of Plaintiff, by the police, the FBI, the CIA; likening Plaintiff to convicted sex offenders like Jeffrey Epstein; and threatening (and in some instances committing) violence against Plaintiff. ¶¶ 15–16, ¶¶ 167–79, 180–87. People are doing this not because they believe the allegations contained in the Defamatory Material.

The spread and belief of these allegations, which constitute defamation *per se*, have caused Plaintiff reputational, financial, physical, and emotional harm. ¶¶ 192–98. Within days of the initial publication of the Defamatory Material by UMG, which includes a doctored aerial picture of Plaintiff's Toronto home, there was an armed attack at the same residence, during which Plaintiff's security guard was shot and nearly killed. ¶¶ 1–2, 5, 64, 72–78. Days after that, a different invader attempted to break into the Toronto property, and another trespasser got into a physical altercation with one of Plaintiff's security guards. ¶¶ 3–4, 76–78. These and other many other harms suffered by Plaintiff were a reasonably foreseeable consequence of UMG's intentional course of conduct, particularly in today's environment where conspiracy theories spread rapidly online and given recent violence caused by false allegations of sexual crimes against children. ¶¶ 12, 18–21, 24, 93–94, 153, 192, 204.

Plaintiff filed this suit on January 15, 2025 to hold Defendant accountable for its decision to publish and promote lies about Plaintiff. The Complaint asserts three causes of action: defamation, harassment in the second degree, and violation of Section 349 of the New York

General Business Law. ¶¶ 202–36. The Complaint seeks a variety of forms of relief, including, but not limited to, compensatory and punitive damages.

**Defendant's Position:** Plaintiff provoked, encouraged, and willingly participated in a high-profile rap battle with fellow rap artist Kendrick Lamar ("Lamar"). Mot. at 1.[2] Over the course of approximately two months in the spring of 2024, Plaintiff and Lamar exchanged nine increasingly vitriolic and incendiary "diss tracks," sometimes responding within hours of each other. *Id.* Lamar is widely seen to have won the rap battle. *Id.*

Plaintiff and Lamar are both represented by defendant record label UMG. *Id.*[3] Plaintiff had no concerns using UMG's platform during the rap feud to level incendiary attacks against Lamar, including, most significantly, that Lamar engaged in domestic abuse and that one of Lamar's business partners and managers is the true father of Lamar's son. *Id.* at 2. Plaintiff also expressly goaded Lamar to "[t]alk about [Plaintiff] likin' young girls" on Lamar's next track. *Id.* at 4–5 & 16. But now, having lost the rap battle, Plaintiff claims that the penultimate song in the feud, "Not Like Us," including the related music video and album image, is defamatory. It is not. As detailed in UMG's motion to dismiss, when assessed in context—as it must be—"Not Like Us" coveys nonactionable opinion and hyperbole, not fact (an issue that the Court is to resolve as a matter of law). *Id.* at 11–17. Plaintiff also cannot show that anyone at UMG published "Not Like Us" with actual malice, as required to sustain the defamation claim. *Id.* at 17–19.

---

[2] All cites to "Mot. __" are to UMG's Memorandum of Law in Support of its Motion to Dismiss. ECF No. 24.
[3] Plaintiff is represented by UMG's Republic division, and Lamar is represented by UMG's Interscope division. *Id.* at 3.

Plaintiff's claims that "Not Like Us" constitutes harassment in the second degree (a criminal claim under N.Y. Penal Law § 240.26(3)), and that UMG violated New York General Business Law § 349 in promoting the recording, are equally and entirely meritless. The harassment claim fails on multiple independent grounds, including that there is no private right of action, *id.* at 19–20, and even if there was, Plaintiff cannot meet the statutory and constitutional requirements to establish the claim (particularly in light of Plaintiff's *own* use of lyrics that are at least as violent as those that he now complains of in "Not Like Us,"), *id.* at 20–22. And as to the § 349 claim, Plaintiff has conceded that the centerpiece of that claim—*i.e.*, that UMG used "bots" to stream "Not Like Us," *see, e.g.*, ¶¶ 228, 233—is baseless, such that Plaintiff has expressly agreed to withdraw the allegations. *Id.* at 23–24. Plaintiff's remaining allegations of "payola" are conclusory, speculative and not cognizable (and are meritless in any event). *Id.* at 24–25.

**2. JURISDICTION**

The Order requires a brief explanation of why jurisdiction and venue lie in this Court.

**Parties' Position:**

  A. Subject Matter Jurisdiction

The Court has original jurisdiction over this action and Defendant pursuant to 28 U.S.C. § 1332(a)(1), as the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states. ¶ 27. Diversity of citizenship exists because Plaintiff alleges that he is a citizen of Texas and Defendant is a Delaware corporation with its principal place of business in California. ¶ 26.

B.   Personal Jurisdiction

The Court may exercise personal jurisdiction over Defendant pursuant to § 302 of the New York Civil Practice Law and Rules ("CPLR") because UMG transacts business within the state and owns, uses, or possesses real property within the state. ¶ 28.  Further, the Court may exercise personal jurisdiction over Defendant pursuant to CPLR § 301 because UMG systematically and continuously conducts and solicits business within New York and has availed itself of the privileges of conducting business in the state. *Id.*

C.   Venue

Venue is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c) because a substantial part of the alleged events or omissions giving rise to the claims occurred in this District, as well as because UMG is subject to personal jurisdiction in this District. ¶ 29.

### 3. EXISTING DEADLINES, DUE-DATES OR CUT-OFF DATES

The Order requires a statement of all existing deadlines, due dates, and/or cut-off dates.

**Parties' Position:**  The parties are required to appear before the Court for an initial pre-trial conference on April 2, 2025. ECF No. 8. Plaintiff intends to notify the Court on or before March 27, 2025 of his intention to file an amended complaint, which will be due April 16, 2025. *See* ECF No. 28.  Defendant's time to move to dismiss or answer is due three weeks after the filing of the amended complaint. *Id*.  Should Defendant move to dismiss the amended complaint, Plaintiff's opposition is due two weeks after that motion is filed, and UMG's reply is due one week after Plaintiff's opposition is filed. *Id*.

### 4. ANY OUTSTANDING MOTIONS

The Order requires a brief description of any outstanding motions.

**Parties' Position:** On March 17, 2025, Defendant moved to dismiss the Complaint. ECF No. 23. Plaintiff's amended complaint is due April 16, 2025. ECF No. 28. Defendant's time to move to dismiss or answer is due three weeks after the filing of the amended complaint. *Id*. Should Defendant move to dismiss the amended complaint, Plaintiff's opposition is due two weeks after that motion is filed, and UMG's reply is due one week after Plaintiff's opposition is filed. *Id*.

On March 18, 2025, UMG filed a letter motion seeking to stay discovery pending disposition of its motion to dismiss. ECF No. 27. Plaintiff filed his opposition to UMG's motion to stay on March 20, 2025. ECF No. 29.

5. **DISCOVERY**

The Order requires a brief description of any discovery that has already taken place.

**Parties' Position:** Following the 26(f) Conference, Plaintiff served on UMG a first set of Requests for Production. UMG has moved stay discovery pending disposition of its motion to dismiss.

6. **SETTLEMENT**

The Order requires a brief description of any discovery that is necessary for the parties to engage in meaningful settlement negotiations as well as a list of all prior settlement discussions, including the date, the parties involved, and the approximate duration of such discussions, if any.

**Parties' Position:** The Parties agree that settlement discussions would not be productive at this time.

A. Discovery Necessary for Meaningful Settlement Negotiations

**Plaintiff's Position**: Plaintiff believes that in order to engaged in meaningful settlement negotiations, he needs discovery into the following: Kendrick Lamar's contract with UMG; documents and communications regarding the decision to publish the Defamatory Material,

including documents and communications relating to UMG's recent promotional activities surrounding the Grammys and Super Bowl; documents and communications regarding the decision to continuing publishing and to promote the Defamatory Material; documents and communications regarding UMG's knowledge that the allegations in the Defamatory Material; documents reflecting the revenues and profits UMG has generated and retained as a result of the song; and documents and communications relating to any other works (in the past five years) that UMG has declined to approve or green light on the basis of UMG objections to lyrics or other content.

**Defendant's Position**:  UMG does not believe that settlement discussions would be productive at this time, and seeks to stay discovery (including the broad swaths of discovery identified by Plaintiff above) pending disposition of its motion to dismiss.  *See* ECF No. 27.  UMG therefore does not seek discovery at this time.

### B.  Prior Settlement Discussions

**Parties' Position:** In the months leading up to the filing of the Compliant, various representatives of Plaintiff and Defendant discussed potentially mediating the dispute, but those discussions were unsuccessful.

### 7.  USE OF ALTERNATIVE DISPUTE RESOLUTION

The Order requires a statement confirming that the parties have discussed the use of alternate dispute resolution mechanisms and indicating whether the parties believe that (a) a settlement conference before a Magistrate Judge; (b) participation in the District's Mediation Program; and/or (c) retention of a privately retained mediator would be appropriate and, if so, when in the case

(e.g., within the next sixty days; after the deposition of plaintiff is completed; after the close of fact discovery; etc.) the use of such a mechanism would be appropriate.

**Parties' Position:** The Parties have discussed the use of alternative dispute resolution mechanisms. The Parties agree that alternative dispute resolution would not be appropriate at this time.

### 8. ADDITIONAL ELEMENTS

The Order requires any other information that the parties believe may assist the Court in advancing the case to settlement or trial, including, but not limited to, a description of any dispositive issue or novel issue raised by the case.

**Parties' Position:** None.

**PROPOSED CIVIL CASE MANAGEMENT PLAN & SCHEDULING ORDER**

The Parties were unable to reach a joint proposal for the Civil Case Management Plan and Scheduling Order. Defendant maintains that all discovery should be stayed pending the resolution of the motion to dismiss. As outlined in his opposition to Defendant's motion to stay discovery, Plaintiff believes discovery should proceed in the normal course. ECF No. 29. Attached as Exhibit 1 is a Civil Case Management Plan and Scheduling Order reflecting each of the Party's positions.

Dated: March 26, 2025

Respectfully Submitted,

By: */s/ Michael J. Gottlieb*
Michael J. Gottlieb
Meryl C. Governski
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Brady M. Sullivan
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212) 728-8000
bsullivan@willkie.com
mhoughton-larsen@willkie.com
*Counsel for Plaintiff Aubrey Drake Graham*


By: */s/ Rollin A. Ransom*
Rollin A. Ransom
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 896-6000
rransom@sidley.com

Nicholas P. Crowell
SIDLEY AUSTIN LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212) 839-5449
ncrowell@sidley.com
*Counsel for Defendant UMG Recordings, Inc.*