P42RGRAc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   AUBREY DRAKE GRAHAM,

4                  Plaintiff,

5            v.                          25 Civ. 399 (JAV)

6   UMG RECORDINGS, INC.,

                                         Conference
7

8                  Defendant.

    ------------------------------x
9                                        New York, N.Y.
                                         April 2, 2025
10                                       12:00 p.m.

11  Before:

12                  HON. JEANNETTE A. VARGAS,

13                                       District Judge

14                       APPEARANCES

15  WILLKIE FARR & GALLAGHER LLP
         Attorneys for Plaintiff
16  BY:  MICHAEL GOTTLIEB
         MARIE ANNE HOUGHTON-LARSEN
17       BRADY SULLIVAN

18  SIDLEY AUSTIN LLP
         Attorneys for Defendant
19  BY:  ROLLIN RANSOM
         NICHOLAS CROWELL
20       KATELIN EVERSON

21

22

23

24

25

P42RGRAc

1          THE COURT:  Please be seated.

2          (Case called)

3          MR. GOTTLIEB:  Good afternoon, your Honor.  Mike

4   Gottlieb from Willkie Farr & Gallagher on behalf of the

5   plaintiff.  With me at counsel table are my colleagues, Annie

6   Houghton-Larsen and Brady Sullivan.

7          THE COURT:  Good morning, counsel.

8          MR. RANSOM:  Good afternoon, your Honor.  Rollin

9   Ransom from Sidley Austin on behalf of defendant, UMG

10  Recordings, Inc., and with me at counsel table are Nick Crowell

11  and Katelin Everson.

12         THE COURT:  Good morning, counsel.  I have a pending

13  motion to stay discovery, so I wanted to start with that, as

14  obviously that's the threshold issue, before we can discuss any

15  other issues related to the case management plan for this case.

16         Mr. Ransom, it's your motion.  Are you going to be

17  arguing on behalf of defendants?

18         MR. RANSOM:  I will, your Honor.  And, your Honor, I

19  don't know if the Court has a preference if we speak to the

20  lectern?

21         THE COURT:  I have no preference whatever you're more

22  comfortable with as long as the court reporter is able to hear

23  you adequately.

24         MR. RANSOM:  I'm happy to stay here.

25         THE COURT:  As long as you are speaking into a

P42RGRAc

1    microphone, that's all I would ask.

2            MR. RANSOM:  Thank you, your Honor.  I will endeavor

3    to be fairly brief.

4            There has, though, been a fundamental change since the

5    parties submitted their letter brief on UMG's motion to stay,

6    and that is that plaintiff has effectively withdrawn his

7    original complaint and stated that he intends to file an

8    amended complaint.  And what that means is that there's really

9    not an operative complaint on file at this point.  While we

10   think discovery should be stayed in any event, that is

11   particularly true where we don't even have the operative

12   complaint on file.

13           Now, we do not believe that Drake can stay the claim

14   regardless, but to allow discovery to proceed when plaintiff is

15   not even attempting to defend his original complaint and hasn't

16   committed to a new filing simply makes no sense.  Frankly, your

17   Honor --

18           THE COURT:  Well, counsel, it's contemplated by the

19   federal rules that a party can amend the complaint upon the

20   filing of a motion to dismiss.  So there's nothing unusual

21   about that in the ordinary course, and as I think I made clear

22   in a prior order, it is not this Court's general practice to

23   stay discovery simply because there's a pending motion to

24   dismiss.

25           So in terms of the facts of this case, why do you

1    think a stay would be appropriate in terms of the burdens of

2    discovery or the deficiencies in the complaint itself?

3              MR. RANSOM:  Absolutely, your Honor, and I appreciate

4    that.  We do not merely invoke the fact that a motion has been

5    filed, and we also recognize that the rules contemplate that

6    the party can amend once as a right and that's what Drake

7    apparently intends to do.  Why we think it's particularly

8    appropriate on the facts of this case are that we believe it

9    actually goes to all of the elements the Court is to consider

10   in evaluating a motion to stay.  It certainly speaks to the

11   merits of our motion to dismiss.  Again, Drake could oppose the

12   motion, defend the adequacy of his complaint.  He has elected

13   not to do that.  That itself I think speaks directly to the

14   merits of our motion on that first factor the Court is to

15   consider.

16             With respect to plaintiff's claim of harm, from a

17   discovery stay, he asserts that his injuries accrue every

18   day -- that's a quote -- such that moving forward with

19   discovery is necessary.  But this song came out in May of 2024,

20   almost a year ago.  Drake says he notified UMG of his claim in

21   July of 2024, but he didn't file this action until January of

22   2025.  So the claim of urgency, we believe, is belied by those

23   facts.

24             More recently, in February --

25             THE COURT:  Again, counsel, urgency, it's not

1    plaintiff's burden to show urgency.  It is your burden to show

2    the extraordinary step of staying discovery.  Discovery is

3    something they're entitled to in the ordinary course.  You are

4    making a motion to do something that it requires a heavy

5    burden.  So I don't see it as plaintiff's burden to show

6    urgency, such as if they were seeking a TRO or some kind of

7    emergency relief.  It is your burden to show that there's

8    something so out of the ordinary in this particular case that a

9    stay of discovery under the three factors set forth by this

10   court would be appropriate.

11        MR. RANSOM:  Understood, your Honor.  One of those

12   factors is a question of the extent to which the defendant --

13   sorry -- the plaintiff would be harmed by a stay, and that's

14   all I'm attempting to speak to here.  We don't see harm in

15   light of plaintiff's continuing delay in moving the case

16   forward.  They could have filed their amended complaint

17   certainly weeks ago and still haven't even to this day.

18        On the burden question, there is both the question of

19   quantitative burden and qualitative burden.  On the

20   quantitative burden part, we attached the request.  Let me give

21   you one example, if I may, your Honor.  Among those requests is

22   one seeking every document relating to any marketing expense

23   ever paid in support of Kendrick Lamar.  That is simply

24   extraordinary.  Simply extraordinary.

25        On the qualitative burden question, these requests go

P42RGRAc

1    to extremely sensitive documents.  They are seeking the

2    recording contract of Kendrick Lamar.  They are seeking

3    executive metrics with respect to compensation of Interscope's

4    entire executive team.  The sensitivity of these documents,

5    divorced from any complaint that is currently on file and we

6    think from any legitimate request, speaks to the burden both

7    quantitatively and qualitatively with respect to the

8    sensitivity of these documents.

9         The other thing I would say, your Honor, and again I

10   take the Court's point that discovery is not automatically

11   stayed on the filing of a motion and generally proceeds.  There

12   is well-established authority though that defamation cases are

13   a unique creature.  And in particular, they recognize the

14   importance of early resolution of those claims where possible,

15   including to avoid the intrusiveness and the burden of

16   discovery in light of, among other things, First Amendment

17   concerns.  And UMG has filed the motion, and among the

18   arguments we raise are issues that the Court is to resolve as a

19   matter of law, making resolution of the defamation claim on a

20   12(b)(6) motion particularly appropriate.

21        We believe that under those circumstances, this a

22   paradigm case in which discovery should be stayed to avoid the

23   burdens that we have addressed; in light of the fact that we

24   have mild a motion that plaintiff has elected not even to

25   attempt to respond to or defend its complaint with respect to;

P42RGRAc

1    in absence of any harm from a short stay of discovery, and in

2    light of important constitutional principles governing the

3    defendant's rights in the face of a defamation claim and the

4    danger that such a claim can present to a defendant in light of

5    intrusive requests for discovery.  So we would ask that the

6    Court stay discovery pending resolution of the filing of an

7    amended complaint and the motion to dismiss that we anticipate

8    we would file as to that amended complaint.

9            THE COURT:  Let me hear from Mr. Gottlieb.

10   Mr. Gottlieb, are you arguing on behalf of plaintiff?

11           MR. GOTTLIEB:  Yes, your Honor.  So I'll just sort of

12   take some of these arguments in due course, your Honor.

13           Let me start by just discussing the standard that --

14   the applicable standard for granting a protective order to stay

15   discovery, which is outside of the ordinary course, not just in

16   this district but in every other in the United States.  Courts

17   use a three-part test, the first of which is a test asking

18   whether the defendant has made a strong showing that the

19   plaintiff's claim is unmeritorious.  And the way that that

20   unmeritorious standard has been interpreted by cases in this

21   district -- and we cite some of these authorities in our letter

22   motion on this topic -- is that it means that the complaint has

23   to be facially without merit.  That's the *Bennett v. Cuomo* case

24   we cited.  And a stay is inappropriate unless the motion to

25   dismiss arguments are self-evidently obvious, which is also in

P42RGRAc

1    the case as cited in the *Bennett v. Cuomo* case.

2              What the courts that have been presented with motions

3    like UMG have looked at is not just sort of the face of the

4    complaint, but they've also looked at whether the motion to

5    dismiss gets into a fact-intensive exercise.  And in

6    particular, one of the cases cited in *Bennett* is the *Morales v.*

7    *Next Stop* case that says, in particular where a motion to

8    dismiss involves a fact-intensive analysis, courts have

9    declined to conclude that plaintiff's claims are unmeritorious.

10             There is no better example of a fact-intensive

11   analysis called for by a motion to dismiss than the motion to

12   dismiss filed in this case, which is entirely an attack on the

13   factual allegations in the complaint.  The factual allegations

14   in the complaint are that the public, the reasonable observer,

15   understood the song, the lyrics, the cover art to present

16   factual allegations.  UMG says no reasonable observer would

17   understand them in that way, directly challenging the factual

18   allegations in the complaint.

19             They've also attached and asked the Court to take

20   judicial notice of 26 separate exhibits from outside of the

21   complaint is evidence in support of both of their opinion

22   argument and their actual malice argue, which by itself

23   demonstrates that they are launching essentially an attack on

24   the factual sufficiency of the complaint with materials from

25   outside of the complaint.  Regardless of whether that's

P42RGRAc

1    appropriate at the motion to dismiss stage, it clearly shows

2    that the arguments that are being raised by the motion to

3    dismiss are essentially fact-intensive challenges to the

4    sufficiency of the complaint, which is the precise scenario in

5    which courts have said a stay of discovery is not appropriate.

6          My friend referred to the fact that we have announced

7    that we're going to -- we've notified the Court that we intend

8    to file an amended complaint.  He said it means there's no

9    operative complaint in this case.  This a false

10   characterization that was advanced by their Rule 11 argument.

11   They have notified us through a Rule 11 letter about a very

12   narrow set of allegations.  It really is an allegation that is

13   in one paragraph of a 200-plus paragraph complaint.  There's

14   some spillover references to that paragraph and about four

15   others.  So it's a total of about five paragraphs in total of

16   the complaint that go to a single substantive allegation in the

17   complaint, which is an allegation about the use of essentially

18   these streaming farms or payment in order to achieve streaming.

19         We've had an exchange of letters, an exchange of views

20   with the defendants on those allegations.  We even notified

21   them that we intend to withdraw and correct those specific

22   allegations, but that is a tiny subset of one legal issue, one

23   element within the complaint, and it does not affect the

24   substantive claims that we have raised.  In fact, UMG hasn't

25   challenged, in its Rule 11 exchange with us, any of those

P42RGRAc

1    substantive allegations.

2         We intend to amend in part because of the factual

3    issues that I just mentioned that the motion to dismiss raises.

4    The motion to dismiss includes those 26 exhibits.  It also

5    includes an entire history of different tracks between the two

6    artists in question, none of which are mentioned in the

7    complaint.  Part of the reason to amend is to address some of

8    this extraneous material that the defendants have brought to

9    the table in their request for judicial notice.  But we also

10   intend to amend to include events that occurred post-filing,

11   and we mentioned this in our papers.  For example, the Super

12   Bowl occurred after the filing of our complaint, and we intend

13   to amend in part because that, both the promotion that went

14   into the halftime show at the Super Bowl and then the event of

15   the Super Bowl itself constitute an act of defamation, which we

16   believe clearly gets around all of the -- to the extent the

17   opinion and actual malice arguments have any merit at all, the

18   fact that UMG continued to promote the song well after it knew

19   about the effects that the lyrics were having on the general

20   public, on reasonable observers, the harm it was causing to our

21   client demonstrates elements in an even greater respect with

22   respect to actual malice and probably with respect to opinion.

23        My friend talked about our claim of urgency being

24   belied by the facts.  I think it's not our burden to

25   demonstrate that in the first instance.  But even if it were,

P42RGRAc

that completely ignores the entire history of discussions and
negotiations that took place between the parties as well as the
initial pre-litigation actions that our client filed in both
Texas and New York, well in advance of filing this action
before this Court.

        And then, my friend made reference to discovery
requests that he claimed were overbroad.  This gets to the
burden question.  So the burden that has been articulated by
UMG in this case is no different from the burden that would be
articulated by any institutional or corporate defendant in any
case.  Typically courts in this district when they evaluate
burden, the courts that have found undue burden have looked at
circumstances like the *Spinelli v. NFL* case, that involved 40
different defendants and multiple antitrust and copyright
claims.

        This a single-plaintiff, single-defendant case.  The
requests for production that have been delivered to the
defendants thus far, there's 18 in total.  Sixteen of those 18
are time limited to one year.  The entire purpose of having
meet-and-confers between the parties is to discuss narrowing
and possible accommodations that can be made on request.  So to
the extent that UMG feels that the particular RFP that
Mr. Ransom mentioned is overbroad, we're always available to
have a discussion with them about appropriate ways to address
that or narrow individual requests.

P42RGRAc

1          We've also -- to the extent that Mr. Ransom mentioned

2    sensitive information, we have sent to the defendants a

3    proposed protective order, which is this Court's standard

4    protective order, along with an ESI stipulation and protocol.

5    We have not yet heard back from the defendants, but this

6    Court's standard protective order is, in our view, perfectly

7    appropriate and sufficient to address the type of sensitivities

8    that Mr. Ransom has made.

9          Last point, if the Court does not have questions,

10   Mr. Ransom made the argument that defamation cases are somehow

11   unique.  That is the reason why there are pleading standards

12   for defamation cases, including the actual malice standard.  We

13   believe we've far more than met that, and we've addressed that

14   in our submission to this Court.  But there isn't some separate

15   stay rule that exists for defamation cases, nor is there any

16   presumption that operates that just because you have a

17   defamation claim that has been raised, therefore discovery must

18   be stayed if a motion to dismiss is filed.

19         As we've pointed out in our filings, UMG is not a

20   newspaper.  UMG is not a journalistic endeavor.  UMG is in the

21   business of selling music for profit and selling content for

22   profit, and their first amendment rights have not been chilled

23   in any respect by this litigation or by the plaintiff's claims.

24   They have continued to promote and publish the song to our

25   client's harm and continuing harm every day since they were

P42RGRAc

1    notified about them.

2         THE COURT:  Mr. Gottlieb, let me inquire about the

3    contemplated discovery here.  You mention there are 18 RFPs

4    that are outstanding; 16 of which were, I believe you said,

5    time limited to one year; is that correct?

6         MR. GOTTLIEB:  Yes, your Honor.

7         THE COURT:  What other discovery do you contemplate

8    requiring if discovery were to go forward?  In terms of

9    depositions, in terms of any third-party discovery, what do you

10   think the scope would be?

11        MR. GOTTLIEB:  So, your Honor, we have served a

12   limited number of third-party subpoenas.  So far we've served

13   three third-party subpoenas to date, and we have been

14   attempting to serve a fourth third-party subpoena.  We've had

15   discussions with the three third parties that we have served,

16   who all asked that we extend the date for response to those

17   subpoenas until after the Court held this hearing, which we

18   were happy to agree to.  And so, those third-party subpoenas

19   will go forward if discovery is not stayed.

20        We do intend to serve additional discovery requests,

21   as a plaintiff would ordinarily do, as we learn more

22   information and as we gather information from the initial round

23   of discovery request from UMG.  We believe the ones that we've

24   issued sort of cover the core of what we're interested in.  As

25   for depositions, there are a significant number of individuals

1    that have been listed in the parties' disclosures and we

2    haven't yet really settled or narrowed down on the total number

3    from that list that we would expect to seek depositions of.

4    But obviously we made a proposal to use the standard number,

5    and would propose to come back to this Court if for some reason

6    that seemed insufficient to us.

7         THE COURT:  I see from your proposed case management

8    plan that you proposed fact discovery closing in October, is

9    that correct?  So six months of fact discovery would be

10   sufficient?

11        MR. GOTTLIEB:  Yes, your Honor.  And we recognize that

12   that is an aggressive timeline, but that timeline is in part

13   because of the continuing harm that our client is facing.  And

14   we have desired to get started and to litigate this case

15   efficiently and in a targeted manner in order to make sure that

16   we can get through discovery in an efficient manner, which we

17   also think is a reason not to stay discovery.  Because staying

18   discovery will obviously prevent us from meeting that type of a

19   schedule, and we think that there are benefits to both parties

20   and to judicial economy in proceeding along as expeditiously as

21   possible.  We don't -- UMG has not objected to that type of a

22   timeline for discovery once the issue of the stay is resolved.

23        THE COURT:  In terms of the motion to dismiss briefing

24   schedule, and I'm just reviewing it now, currently you are

25   filing your amended complaint when?  What is the current

P42RGRAc

1    deadline?

2            MR. GOTTLIEB:  The due date would be April 16, your

3    Honor.

4            THE COURT:  4/16, okay.  Then obviously defendants

5    will either rely on the original motion to dismiss, file a new

6    motion to dismiss or answer.  I'm just looking through the

7    docket right now to see if we would need to set a new schedule

8    at this point.  We don't have a current schedule for

9    oppositions or replies, do we?

10            MR. RANSOM:  Actually, your Honor the Court's order

11    from March 19 provides us three weeks to file, and then states

12    if we file a motion, there will be 14 days for the opposition

13    and seven days for the reply.  So I think that's the total time

14    period we're talking about essentially, six weeks following.

15            THE COURT:  Six weeks following the April 16 amendment

16    date?

17            MR. RANSOM:  Yes.

18            THE COURT:  All right.  So that would take us into

19    early -- I'm just pulling up by calendar -- June-ish.  I don't

20    know the exact date.  I'm going to take a brief recess to

21    consider the parties' arguments, and when I come back, I'm

22    going to rule on the motion to stay and discuss any other

23    issues we might have to take up for the order.

24            (Recess)

25            THE COURT:  Please be seated.  I'm going to read my

P42RGRAc

1    decision on the motion to stay.

2         On January 15, 2025, plaintiff commenced this action

3    in this Court.  Plaintiff, Aubrey Drake Graham, widely known as

4    "Drake," is a top charting rap artist.  He brought this action

5    alleging that defendant, Universal Music Group Records, "UMG",

6    defamed him by widely publishing and promoting the song "Not

7    Like Us," by fellow UMG artist Kendrick Lamar Duckworth, which

8    the complaint alleges was intended to convey the message that

9    plaintiff is a pedophile and sex offender.

10        Defendant filed a motion to dismiss on March 17, 2025.

11   In connection with the motion to dismiss, defendant also

12   submitted a request for judicial notice of 26 song lyrics and

13   news articles.  In the motion, defendant argues that plaintiff

14   fails to state claims for defamation, harassment in the second

15   degree, and under New York General Business Law Section 349.

16        Pursuant to this Court's Order issued on January 30,

17   2025, plaintiff's amended complaint is due on April 16, 2025;

18   defendant's response to the amended complaint is due May 7;

19   plaintiff's opposition is due May 21, and the reply brief is

20   due May 28.

21        On February 21 of this year, defendant filed a letter

22   motion requesting an adjournment of the initial pretrial

23   conference pending resolution of the forthcoming motion to

24   dismiss and arguing that discovery was premature.  The Court

25   denied this motion on March 4, 2025, and instructed that a

P42RGRAc

party seeking a stay of discovery should file a letter motion,

which would then be discussed at this conference.

Defendant filed the motion to stay discovery on March

18, 2025, and plaintiff submitted his letter response on March

20. "A motion to dismiss does not automatically stay

discovery," and "discovery should not be routinely stayed

simply on the basis that a motion to dismiss has been filed."

*Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance*

*Ltd.* 297 F.R.D. 69, 72 (S.D.N.Y. 2013).

Pursuant to Federal Rule of Civil Procedure 26(c)(1),

"upon a showing of good cause, a district court has

considerable discretion to stay discovery." *Id.* (quoting

*Integrated Sys. Power Inc. v. Honeywell Int'l, Inc.,* 2009 WL

2777076, at *1 (S.D.N.Y. 2009)).

Good cause is assessed through the application of the

following three factors: "(1) whether a defendant has made a

strong showing that the plaintiff's claim is unmeritorious; (2)

the breadth of discovery and the burden of responding to it;

and (3) the risk of unfair prejudice to the party opposing the

stay." *Morien v. Munich Reins. America, Inc.,* 270 F.R.D. 65,

67 (D. Conn. 2010); *Shulman v. Becker & Poliakoff, LLP,* 2018 WL

4938808, at *2 (S.D.N.Y. Oct. 11, 2018).

"The burden of showing good cause...falls on the party

seeking the order" for a stay of discovery. *Republic of Turkey*

*v. Christie's, Inc.,* 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018).

P42RGRAc

1   "A stay of discovery is generally appropriate only when 'there

2   are no factual issues in need of further immediate exploration,

3   and the issues before the Court are purely questions of law

4   that are potentially dispositive' such as challenges to the

5   Court's jurisdiction."  *Khan v. New York City,* 2024 WL 4814236,

6   at *5 (E.D.N.Y. Nov. 18, 2024)

7        Defendant's motion to dismiss seeks dismissal of all

8   three counts of plaintiff's complaint.  Notably, the motion

9   does not raise any jurisdictional challenges.  At present, I

10  cannot fully assess the strength of defendant's pending motion,

11  since an amended complaint is forthcoming, and I do not yet

12  have the benefit of full briefing of the issues.  And nothing

13  in this opinion should be taken as a preview of how I will rule

14  on that motion once I do have an opportunity to review the

15  papers.

16       Nevertheless, the Court notes that the issues raised

17  by the motion to dismiss are complex and, as demonstrated by

18  the request for judicial notice of the 26 exhibits, fact

19  intensive. For purposes of this motion to stay discovery, the

20  Court cannot find that all of plaintiff's claims are so devoid

21  of merit on their face as to warrant a stay of discovery.

22       I turn now to the remaining two factors for assessing

23  good cause.  Plaintiff has represented that they have served

24  only 18 requests for production, 16 of which are limited to a

25  one-year time span.  There is only one named defendant in this

P42RGRAc

matter, and the action dates back to only early 2024, thereby

"mitigating the breadth and burdens of discovery," and weighing

against granting a stay.  *Fahey v. Incorporated Village of*

*Manorhaven,* 2023 WL 2021019, at *2 (E.D.N.Y. Feb. 15, 2023).

Moreover, "any objections to individual discovery requests can

be dealt with accordingly, and are not proper grounds for a

Rule 26 protective order."

     Lastly, "while it is true that the motion to dismiss

may remain pending only for a matter of months, thus obviating

the degree of prejudice, as noted previously a stay of

discovery is the exception and not the rule in this district."

*Metzner v. Quinnipiac Univ.*, 2020 WL 7232551, at *6 (D. Conn.

Nov. 12, 2020).

     Accordingly, defendant's motion to stay discovery

pending the resolution of the motion to dismiss is denied.

     I have two other issues that I believe we need to take

up today.  Let me start with the first, which is the schedule

on the motion to dismiss.  We talked earlier about the motion

being fully briefed, I believe, by the end of May/early June.

The Court would like to set a time and date for oral argument

in this matter, because I do believe that this is a case in

which the Court would benefit from hearing the arguments of the

parties.  I have tentatively looked at my calendar and have

availability on June 30.  Would that work for the parties?

     MR. GOTTLIEB:  One moment, your Honor.

P42RGRAc

1                THE COURT:  Absolutely.  Confer with your calendar.

2                MR. RANSOM:  Your Honor, it's fine with defendant.

3        Thank you.

4                MR. GOTTLIEB:  That's fine with plaintiff, your Honor.

5                THE COURT:  So I'm going to set June 30 for oral

6        argument in this matter.  I'm scheduling it for 2:00 p.m. that

7        afternoon, and a confirming order will be placed on the docket

8        as well.

9                With respect to the discovery schedule, I have the

10       proposed case management plan from plaintiff.  In light of the

11       Court's decision on the motion to stay, what is defendant's

12       position with respect to the dates proposed by plaintiff in

13       their proposed case management plan?

14               MR. RANSOM:  Thank you, your Honor.  I think at the

15       time the dates were proposed, it seemed to me it was

16       contemplated that if the motion to dismiss were denied, that

17       would happen in relatively short order following these dates,

18       and therefore what was contemplated here was roughly a

19       six-month period.  It seems to me that if we're looking at a

20       resolution to the motion to dismiss sometime following the end

21       of June, the notion of the discovery being completed within the

22       time frame proposed by plaintiff is overly optimistic.

23               I say that in light of the fact that among other

24       things we received -- again, after this schedule was

25       submitted -- initial disclosures from plaintiff that identified

P42RGRAc

1   58 people and entities that they said had information that they

2   may use to support their claims.  So what I might suggest, your

3   Honor, is that the parties, in light of the Court's ruling in

4   the motion to stay discovery and in light of the subsequent

5   developments respecting an amended complaint, revisit the

6   question of a schedule and see if we can work something out

7   together.  If the Court wants to do it today, I'm happy to

8   maybe step aside and do that, or however you would like to

9   proceed.

10          THE COURT:  Let me preface any further discussion on

11  this by noting that this Court generally is very loath to

12  extend fact-discovery schedules.  I prefer that we have a

13  realistic conversation about what discovery is needed, what

14  time periods the parties would reasonably need to accomplish

15  that discovery, and set a discovery deadline that fits the

16  discovery that's going to be sought in this case, as opposed to

17  simply saying three months, six months, nine months.  Because

18  of the fact that you are very unlikely to get an extension of

19  the discovery at the back end, I would rather discuss at the

20  front end what is reasonable.  And if you hear you say that you

21  think, for example, there's going to be a number of

22  depositions, if you plan to be serving quite a number of

23  requests for production, and you think that there could be some

24  volume of that, that would also bear on the reasonableness of

25  an extended discovery schedule.

P42RGRAc

1    Six months does seem somewhat aggressive, particularly

2    if you are saying there were 58 people who were identified in

3    initial disclosures.  That does seem like quite a number of

4    depositions might be taken in this case.  So I think it might

5    be appropriate to have the parties confer outside of the

6    presence of the Court, and come back with a mutually agreeable

7    proposal.  If a proposal cannot be agreed to, then the parties

8    can each present their positions, and the Court will rule on a

9    discovery schedule.  But let me hear from plaintiff's counsel

10   on this issue.

11            MR. GOTTLIEB:  Your Honor, we have no objection to

12   that.  When we had these initial discussions, the defendant's

13   position was largely relying on a stay motion, so I do believe

14   that some conferral between the parties would be useful.

15            THE COURT:  Let's do that.  I'm going to set one week

16   from today for the submission of either a joint case management

17   plan for the Court's consideration, or if the parties are

18   unable to reach an agreement on appropriate deadlines, then a

19   joint letter setting forth each party's position.

20            Is there anything else that the Court needs to take up

21   today?

22            MR. GOTTLIEB:  Not from plaintiff, your Honor.

23            MR. RANSOM:  Not from defendant, your Honor.

24            THE COURT:  Thank you very much, and have a great rest

25   of your day.

P42RGRAc

1           (Adjourned)

2                                      o0o

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25