## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AUBREY DRAKE GRAHAM,

                Plaintiff,

      v.

UMG RECORDINGS, INC.,

                Defendant.

No. 1:25-cv-399-JAV

**ORAL ARGUMENT REQUESTED**

## UMG RECORDINGS, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................................1

STATEMENT OF FACTS ......................................................................................................3

    A.    The Parties .................................................................................................3

    B.    Drake and Lamar Engage in a Vitriolic Rap Feud............................................3

    C.    Not Like Us Is A Massive Commercial and Artistic Success ...............................8

ARGUMENT ........................................................................................................................8

I.      LEGAL STANDARD....................................................................................8

II.     DRAKE FAILS TO STATE A CLAIM FOR DEFAMATION .........................................9

    A.    The Alleged Defamatory Material is Nonactionable Opinion and Hyperbole ........9

    B.    Drake Cannot Allege That UMG Acted with Actual Malice ...............................19

III.    DRAKE FAILS TO STATE A CLAIM FOR SECOND DEGREE HARASSMENT .....20

IV.    DRAKE FAILS TO STATE A CLAIM UNDER N.Y. G.B.L. § 349.............................22

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld*,
603 N.E.2d 930 (N.Y. 1992)........................................................................................12, 14

*People ex rel. Arcara v. Cloud Books, Inc.*,
503 N.E.2d 492 (N.Y. 1986)........................................................................................9

*Armatas v. Maroulleti*,
2010 WL 4340334 (E.D.N.Y. Oct. 22, 2010)..............................................................20

*Aronson v. Wiersma*,
483 N.E.2d 1138 (N.Y. 1985).....................................................................................10, 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................8

*Bahar v. Sanieoff*,
2020 NY Slip Op. 33790(U), (Sup. Ct., N.Y. Cnty. Nov. 16, 2020)...........................20

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007).....................................................................................................8

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
151 F. Supp. 3d 287 (E.D.N.Y. 2015) ........................................................................11, 13

*Bellin v. Zucker*,
6 F.4th 463 (2d Cir. 2021) ...........................................................................................8

*Biro v. Condé Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)..........................................................................9, 19

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024)..........................................................................9

*Boehm v. Sportsmem, LLC*,
2019 WL 3239242 (S.D.N.Y. July 18, 2019) ..............................................................23

*Bollea v. World Championship Wrestling, Inc.*,
610 S.E.2d 92 (Ga. App. 2005)....................................................................................19

*Brandenburg v. Ohio*,
395 U.S. 444 (1969).....................................................................................................21

*Brian v. Richardson,*
    660 N.E.2d 1126 (N.Y. 1995) ................................................................ *passim*

*Cablevision Sys. Corp. v. Communic'ns Workers of Am. Dist.,*
    16 N.Y.S.3d 753 (App. Div. 2015) .......................................................... 20

*City of New York v. Smokes-Spirits.Com, Inc.,*
    911 N.E.2d 834 (N.Y. 2009) ................................................................... 24

*Cooper v. Templeton,*
    629 F. Supp. 3d 223 (S.D.N.Y. 2022) ............................................... 16, 18

*Cosby v. Russell,*
    2012 WL 1514836 (N.D.N.Y. Feb. 8, 2012) ........................................... 20

*Cruz v. NYCTA,*
    2025 WL 209598 (S.D.N.Y. Jan. 16, 2025) ............................................ 20

*Dfinity Found. v. N.Y. Times Co.,*
    702 F. Supp. 3d 167 (S.D.N.Y. 2023) ................................................... 9, 10

*Dobkin v. HUB Int'l Ltd.,*
    202 N.Y.S.3d 92 (App. Div. 2023) .......................................................... 24

*Doe v. Yeshiva Univ.,*
    703 F. Supp. 3d 473 (S.D.N.Y. 2023) ..................................................... 23

*Dongguk Univ. v. Yale Univ.,*
    873 F. Supp. 2d 460 (D. Conn. 2012) ..................................................... 19

*Dworkin v. Hustler Mag. Inc.,*
    867 F.2d 1188 (9th Cir. 1989) ................................................................ 19

*Dwyer v. Allbirds, Inc.,*
    598 F. Supp. 3d 137 (S.D.N.Y. 2022) ..................................................... 24

*Galasso v. Saltzman,*
    839 N.Y.S.2d 731 (App. Div. 2007) ........................................................ 18

*Gisel v. Clear Channel Commc'ns, Inc.,*
    942 N.Y.S.2d 751 (App. Div. 2012) ................................................... 18, 19

*Goshen v. Mut. Life Ins. Co.,*
    774 N.E.2d 1190 (N.Y. 2002) ........................................................... 22, 24

*Greene v. Paramount Pictures Corp.,*
    340 F. Supp. 3d 161 (E.D.N.Y. 2018) .................................................... 19

*Hammer v. AKC*,
  803 N.E.2d 766 (N.Y. 2003).................................................................20

*Hayashi v. Ozawa*,
  2019 WL 1409389 (S.D.N.Y. Mar. 28, 2019) ......................................10, 11, 13, 15

*Hess v. Indiana*,
  414 U.S. 105 (1973)..........................................................................21

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*,
  171 N.E.3d 1192 (N.Y. 2021).................................................................22, 23, 24

*Hobbs v. Imus*,
  698 N.Y.S.2d 25 (App. Div. 1999)............................................................11

*Hobish v. AXA Equit. Life Ins. Co.*,
  205 N.Y.S.3d 395 (App. Div. 2024)...........................................................24

*Hotchner v. Castillo-Puche*,
  551 F.2d 910 (2d Cir. 1977)..................................................................9

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018).........................................................19

*Immuno AG. v. Moor-Jankowski*,
  567 N.E.2d 1270 (N.Y. 1991)..............................................................10, 11, 14

*Israel v. City of Syracuse*,
  2021 WL 4777256 (N.D.N.Y. Sept. 16, 2021) .................................................20

*LaNasa v. Stiene*,
  2025 WL 893456 (2d Cir. Mar. 24, 2025)......................................................17

*Manko v. Volynsky*,
  1996 WL 243238 (S.D.N.Y. May 9, 1996) ....................................................20

*Mann v. Abel*,
  885 N.E.2d 884 (N.Y. 2008)..................................................................10

*Mirza v. Amar*,
  513 F. Supp. 3d 292 (E.D.N.Y. 2021) ........................................................12

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)..........................................................................22

*Newcomer v. Mom's Organic Mkt., Inc.*,
  2025 WL 903857 (D. Md. Mar. 25, 2025).......................................................23

*Ortiz v. Ciox Health LLC*,
179 N.E.3d 635 (N.Y. 2021) ............................................................20

*People v. Marquan M.*,
19 N.E.3d 480 (N.Y. 2014) ..............................................................21

*People v. Shack*,
658 N.E.2d 706 (N.Y. 1995) ............................................................21

*People v. Stuart*,
797 N.E.2d 28 (N.Y. 2003) ..............................................................22

*Prac. Ctr. Concord Rusam, Inc. v. Bavrovska*,
2019 NY Slip Op. 34624(U) (Sup. Ct., Westchester Cnty. Oct. 29, 2019) ............20

*Ralin v. City of New York*,
844 N.Y.S.2d 83 (App. Div. 2007) ....................................................20

*Rapaport v. Barstool Sports, Inc.*,
2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021) .............................. *passim*

*Rapaport v. Barstool Sports Inc.*,
2024 WL 88636 (2d Cir. Jan. 9, 2024) ...................................... *passim*

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ...............................................................8

*Salahuddin v. Jones*,
992 F.2d 447 (2d Cir. 1993) ..............................................................21

*Sandals Resorts Int'l Ltd. v. Google, Inc.*,
925 N.Y.S.2d 407 (App. Div. 2011) .....................................11, 13, 15

*Senese v. Hindle*,
2011 WL 4536955 (E.D.N.Y. Sept. 9, 2011) ...................................20

*Small v. Lorillard Tobacco Co.*,
720 N.E.2d 892 (N.Y. 1999) ............................................................24

*SolidFX, LLC v. Jeppesen Sanderson, Inc.*,
2014 WL 1319361 (D. Colo. Apr. 2, 2014) ......................................15

*Staehr v. Hartford Fin. Servs. Grp.*,
547 F.3d 406 (2d Cir. 2008) ...............................................................8

*Stathatos v. William Gottlieb Mgmt.*,
2020 WL 1694366 (S.D.N.Y. April 6, 2020) ...................................20

*Steinhilber v. Alphonse,*
    501 N.E.2d 550 (N.Y. 1986) .......................................................................... *passim*

*Sulehria v. New York,*
    2012 WL 1288760 (S.D.N.Y. Feb. 8, 2012) ......................................................20

*Torain v. Liu,*
    2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007) ...................................................18

*Weiner v. Doubleday & Co.,*
    549 N.E.2d 453 (N.Y. 1989) .............................................................................10

*Woodbridge Structured Funding, LLC v. Pissed Consumer,*
    6 N.Y.S.3d 2 (App. Div. 2015) .........................................................................17

*Zachmann v. Coleman Co.,*
    2022 WL 161480 (S.D.N.Y. Jan. 18, 2022) .....................................................23

**Statutes**

N.Y. Penal Law § 240.26 .......................................................................20, 21, 22

N.Y. G.B.L. § 349 ......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................8, 9

**"Yeah, I want it all, that's why I strive for it / Diss me, you'll never hear a reply for it."**
**- Drake, "Successful"**

Drake, one of the most successful recording artists of all time, lost a rap battle against fellow artist Kendrick Lamar that Drake provoked and in which he willingly participated. Instead of accepting the loss like the unbothered rap artist he often claims to be, he sued his own record label in a meritless attempt to salve his wounds. On March 17, 2025, UMG moved to dismiss Drake's complaint. Rather than attempt to defend his original complaint, Drake filed an amended complaint in which he removed obviously false factual allegations, but added multiple allegations about Lamar's live performance of a version of the song "Not Like Us" at the Super Bowl LIX Halftime Show on February 9, 2025.

Drake's new allegations are astonishing. As Drake concedes, Lamar's Super Bowl performance did not include the lyric that Drake or his associates are "certified pedophiles" (*i.e.*, the alleged "Defamatory Material" that is at the heart of this case). The focus of Drake's new claims—that "the largest audience for a Super Bowl halftime show ever" did ***not*** hear Lamar call Drake or his crew pedophiles—betrays this case for what it is: Drake's attack on the commercial and creative success of the rap artist who defeated him, rather than the content of Lamar's lyrics. The amended complaint is without merit and should be dismissed with prejudice.

## INTRODUCTION

In 2024, two of the most popular recording artists in the world, Kendrick Lamar ("Lamar") and Aubrey Drake Graham ("Drake" or "Plaintiff"), engaged in a high-profile rap battle. Over the course of approximately two months, they exchanged increasingly vitriolic and incendiary "diss tracks," sometimes responding within hours of each other. Drake encouraged the feud. When he felt at one point that Lamar was taking too long to respond, Drake released a recording goading Lamar to continue the rap battle. Lamar did just that, and collectively Drake and Lamar released a

total of nine tracks taking aim at each other.

"Not Like Us"—the penultimate track in the feud—is the subject of Drake's complaint. The recording was released by Lamar, through defendant UMG, on May 4, 2024, and was a massive success. The record was the best-selling rap recording of 2024, and has become a ubiquitous cultural phenomenon.

Like all of the recordings in the feud, and like the many notorious diss tracks throughout rap's history, "Not Like Us" consists of a series of hyperbolic insults. Drake was pleased to use UMG's platform to promote tracks leveling similarly incendiary attacks at Lamar, including that Lamar engaged in domestic abuse and that one of Lamar's managers is the true father of Lamar's son. But now, after losing the rap battle, Drake claims that "Not Like Us" is defamatory. It is not. While the complaint focuses almost entirely on "Not Like Us," it disregards the other diss tracks that surrounded "Not Like Us" as well as the diss track genre, and, thus, critically ignores the context of the dispute. Assessed in context, as it must be, "Not Like Us" conveys nonactionable opinion and rhetorical hyperbole. Indeed, diss tracks are a popular and celebrated artform centered around outrageous insults, and they would be chilled if Drake's suit were permitted to proceed.

Drake also alleges that "Not Like Us" constitutes "Second Degree Harassment," but sues under a criminal statute that has no private right of action and does not proscribe speech. Finally, Drake claims that UMG's promotion of "Not Like Us" violates New York General Business Law § 349, but fails to allege any of the elements for that claim.

Less than three years ago, Drake himself signed a public petition criticizing "the trend of prosecutors using artists' creative expression against them" by treating rap lyrics as literal fact. *See* UMG's Request for Judicial Notice ("RJN") Ex. A. As Drake recognized, when it comes to rap, "[t]he final work is a product of the artist's vision and imagination." *Id.* Drake was right then and

is wrong now. The complaint's claims against UMG are no more than Drake's attempt to save face for his unsuccessful rap battle with Lamar. The court should dismiss the amended complaint with prejudice.

<u>**STATEMENT OF FACTS**</u>

**A.     The Parties**

Defendant UMG is a global music company. Am. Compl. (ECF No. 41) ("FAC") ¶ 27. UMG represents artists through, *inter alia*, recording, distribution, publishing and third-party licensing agreements, *id.* ¶¶ 42-43, and helps "maximize their commercial success through its world-class marketing" and "global distribution network," *id.* ¶ 47. Drake is an internationally known rap artist. *Id.* ¶¶ 26, 32. Drake signed with UMG through UMG's Republic division in 2009 and extended his contract in 2022. *Id.* ¶ 51. Drake's partnership with UMG has been hugely successful. He is one of the "best-selling music artists of all time," *id.* ¶ 33, with over "170 million albums sold." *Id.* UMG also represents Lamar, through UMG's Interscope division. *Id.* ¶ 53. Lamar is also a highly successful rap artist. *Id.* ¶ 27.

**B.     Drake and Lamar Engage in a Vitriolic Rap Feud**

"Not Like Us" was released as part of a "rap beef" between Drake and Lamar. *Id.* ¶¶ 7, 24. The artists' feud reportedly traces its origins "back more than a decade," but broke into the public domain in early 2024, when Drake and Lamar began "trading diss tracks, sometimes within the same hour." *See* RJN Ex. B (FAC ¶ 200, n.279).[1]

Drake and Lamar's feud is not unique. Rap feuds have "existed pretty much since the beginning of rap" in the 1970s, and several storied feuds have occurred throughout rap history.

---

[1] The feud has garnered significant attention. *See, e.g.,* RJN Ex. C (New York Times search showing that the feud has been referenced in approximately 150 entries since March 31, 2024).

RJN Ex. B.[2] Drake is a prolific rap feud combatant, having traded diss tracks with artists including Meek Mill (*see* RJN Ex. D) and Pusha T (*see* RJN Ex. E).

The public feud between Drake and Lamar traces back to the October 2023 track "First Person Shooter" by Drake and J. Cole, in which J. Cole rapped that he, Drake, and Lamar were the "*big three*" (*i.e.,* the top three rappers in the industry). *See* RJN Exs. B, F. In response, Lamar appeared on the March 2024 track "Like That," with artists Future and Metro Boomin, in which he rejected the notion that Drake and J. Cole were his equals, rapping "*Motherfuck the big three, n\*\*\*\*, it's just big me.*" *See* RJN Ex. G.

Drake responded in April 2024 with the track "Push Ups," distributed by UMG. *See* RJN Ex. H. The track takes aim at Lamar, insulting, *inter alia,* his height ("*How the fuck you big-steppin' with a size-seven men's on?*" and "*Pipsqueak, pipe down*") and his career ("*Your last one bricked, you really not on shit*"). He also stoked the feud, stating: "*And that fuckin' song y'all got did not start the beef with us / This shit been brewin' in a pot, now I'm heatin' up[.]*"

Then, seemingly impatient with the time it was taking Lamar to respond, Drake released "Taylor Made Freestyle" on Instagram. *See* RJN Ex. I. The track uses artificial intelligence to make it sound as if the voice of deceased rap icon Tupac Shakur ("Tupac") is rapping Drake's lyrics. *See* RJN Ex. J at 4 (FAC ¶ 86, n.118). In Tupac's voice, Drake taunts Lamar, and notably urges Lamar to "*[t]alk about [Drake] likin' young girls*" on his next track:

> *Kendrick, we need ya, the West Coast savior*
> *Engraving your name in some hip-hop history*
> *If you deal with this viciously / You seem a little nervous about all the publicity*
> *Fuck this Canadian lightskin, Dot*
> *We need a no-debated West Coast victory, man / Call him a bitch for me*
> *Talk about him likin' young girls, that's a gift from me*
> *Heard it on the Budden Podcast, it's gotta be true*

---

[2] As noted in the "Pop Culture Happy Hour" podcast Drake cites, rap feuding is "[t]he art of blood sporting music…a speculative exercise that highly sensationalizes long-standing rumors." *Id.*

And in his own voice, Drake goads Lamar to release a new diss track:

> *Since "Like That," your tone changed a little, you not as enthused*
> *How are you not in the booth? It feel like you kinda removed*
> *You tryna let this shit die down, nah, nah, nah*
> *Not this time, n****, you followin' through*
> *I guess you need another week to figure out how to improve*
> *What the fuck is taking so long? We waitin' on you*

Lamar responded with two tracks: "Euphoria" (released by UMG on April 30), followed by "6:16 in LA" (released by Lamar on Instagram on May 3). *See* RJN Exs. K, L. Lamar raps of Drake in "Euphoria": "*A pathetic master manipulator, I can smell the tales on you now / You're not a rap artist, you a scam artist with the hopes of being accepted.*" He criticizes Drake's music ("*I make music that electrify 'em, you make music that pacify 'em*"), and attacks his use of Tupac's voice ("*a Canadian n**** make Pac turn in his grave*"), his parenting ("*I got a son to raise, but I can see you don't know nothin' 'bout that*"), and his character and identity:

> *I hate the way that you walk, the way that you talk, I hate the way that you dress*
> *I hate the way that you sneak diss, if I catch flight, it's gon' be direct…*
> *How many more fairytale stories 'bout your life 'til we had enough?*
> *How many more Black features 'til you finally feel that you're Black enough?*

Lamar's insults continue in "6:16 in LA," where he raps that members of Drake's team are disloyal: "*Have you ever thought that OVO is workin' for me? / Fake bully, I hate bullies, you must be a terrible person / Everyone inside your team is whispering that you deserve it.*"[3]

Drake responded on the evening of May 3 with the track "Family Matters," distributed by UMG. *See* RJN Ex. M. The track is a scathing attack on Lamar, laden with hyperbolic slurs. Drake attacks Lamar's authenticity ("*You just actin' like an activist, it's make-believe*"); mocks his height ("*He always said I overlooked him, I was starin' straight / These bars go over Kenny head, no matter what I say*"); states that Lamar cheats on his fiancée ("*Why did you move to New York? / Is*

---

[3] Drake uses the brand OVO for various commercial endeavors, including his record label, OVO Sound, and clothing brand, OVO. FAC ¶¶ 35-36. OVO uses an owl brand image. *Id.* ¶ 36.

it *'cause you livin' that bachelor life? / Proposed in 2015 / But don't wanna make her your actual wife / I'm guessin' this wedding ain't happenin', right? / 'Cause we know the girls that you actually like / Your darkest secrets are comin' to light*"); and asserts that one of Lamar's children was fathered by one of his managers, Dave Free ("*Your baby mama captions always screamin', 'Save me' / You did her dirty all your life, you tryna make peace / I heard that one of 'em little kids might be Dave Free / Don't make it Dave Free's / 'Cause if your GM is your BM secret BD / Then this is all makin' plenty fuckin' sense to me*").

Drake also raps that Lamar abuses his fiancée, stating "*When you put your hands on your girl / Is it self-defense 'cause she bigger than you?*" and "*They hired a crisis management team / To clean up the fact that you beat on your queen.*" The track makes other allusions to violence. Drake opens that he has "*emptied the clip over friendlier jabs,*" asks "*Which one of my so-called n***** / Need a shell from the clip?*," and raps "*Come get this ass whoopin', I'm handin' 'em out.*" The track closes with Drake stating "*You're dead / You're dead, you're dead / There's nowhere to hide, there's nowhere to hide.*" Gunshots sound at various points.

Lamar responded with two back-to-back tracks, "Meet the Grahams" followed by "Not Like Us." In "Meet the Grahams," Lamar directs his insults to Drake and members of his family. *See* RJN Ex. N.

"Not Like Us" was released on May 4. Like the diss tracks before it, "Not Like Us" consists of hyperbolic insults. *See* FAC, Ex. A. Lamar calls Drake names ("*Why you trollin' like a bitch? Ain't you tired?*" and "*It was God's plan to show y'all the liar*"); mocks Drake's brand ("*What OVO for? The 'Other Vaginal Option'? Pussy*"; and "*What is the owl? Bird n***** and bird bitches*"); makes hyperbolic threats of violence ("*You think the Bay gon' let you disrespect Pac, n****? I think that Oakland show gone be your last stop, n******"); attacks Drake's relationships,

6

including alleging that Drake had relations with rapper Lil Wayne's girlfriend ("*Fucked on Wayne girl while he was in jail, that's conniving*"); and calls him a "*fuckin' colonizer,*" inferring Drake exploits other artists for financial benefit.

Taking up Drake's invitation in "Taylor Made Freestyle" to "*[t]alk about [Drake] likin' young girls,*" Lamar also makes various statements referred to in the complaint, including: "*Say, Drake, I hear you like 'em young / You better not ever go to cell block one / To any bitch that talk to him and they in love / Just make sure you hide your lil' sister from him,*" and "*Why you trollin' like a bitch? Ain't you tired? / Tryna strike a chord and it's probably A minor.*" He also raps: "*And Baka got a weird case, why is he around? / Certified Lover Boy? Certified pedophiles*";[4] and states, "*And your homeboy need subpoena, that predator move in flocks / That name gotta be registered and placed on neighborhood watch.*"

Drake responded the following day with "The Heart Part 6." *See* RJN Ex. O. There, Drake doubles down on his statement that one of Lamar's children was fathered by Mr. Free ("*And why isn't Whitney denyin' all of the allegations? / Why is she followin' Dave Free…?*" and "*Like if Dave really fucked your girl and got her pregnant, talk about breedin' resentment*"); and reiterates his claim of domestic abuse ("*I don't wanna fight with a woman beater, it feeds your nature*"). Drake states that he expected the alleged defamatory statements in "Not Like Us" ("*This Epstein angle was the shit I expected / TikTok videos you collected and dissected*") and denies them ("*Only fuckin' with Whitneys, not Millie Bobby Browns, I'd never look twice at no teenager*"). The track also contains further references to violence, including "*I'll slit your throat with the razor,*" and "*Yeah, bullets that I'm stuffin' in each chamber, your ass in extreme danger[.]*"

---

[4] "Baka" refers to OVO member Baka Not Nice who was arrested in 2014 on human trafficking and assault charges, and convicted of assault in 2015. *See, e.g.*, RJN Ex. P (FAC ¶ 84, n.110).

### C. Not Like Us Is A Massive Commercial and Artistic Success

Lamar is widely perceived to have won the rap feud. *See, e.g.*, RJN Ex. B ("[U]ltimately, I do think… Kendrick did come out on the superior end of that quarrel."); *id.* ("[W]e can say Kendrick has won"). "Not Like Us" has been a massive commercial and artistic success. It was the bestselling rap song of 2024, FAC ¶ 137, and *Rolling Stone* deemed it "the biggest moment in music this year." *Id.* ¶ 197. The song, recording, and video of "Not Like Us" were collectively nominated for five Grammy Awards (as voted on by over 13,000 music industry peers), including Record of the Year, Song of the Year, Best Rap Performance, Best Rap Song, and Best Music Video, and won in all five categories. *Id.* ¶ 164. Lamar performed a live version of "Not Like Us" at the February 9, 2025 Super Bowl LIX Halftime Show to a record audience. *Id.* ¶ 165.[5]

## ARGUMENT

### I. LEGAL STANDARD

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The Court can credit only "well-pleaded, nonconclusory factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009). "In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007), including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice," *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (cleaned up), including "the *fact* that press coverage … contained certain information," *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008). In particular, courts will "take[] judicial notice" of documents that

---

[5] Drake contends that the decision not to include the word "pedophiles" (as used in the phrase "certified pedophiles") in Lamar's Super Bowl performance could only reflect that the language is defamatory, FAC ¶ 167, but this ignores any number of other explanations for the decision—such as threats by Drake of additional meritless litigation.

"provide[] necessary context" for a "defamation claim." *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 173 (S.D.N.Y. 2024).

"There is particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023) (cleaned up). "[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

## II. DRAKE FAILS TO STATE A CLAIM FOR DEFAMATION

Drake, who had no concerns using UMG's platform to publish slurs about Lamar during their rap feud, now claims "Not Like Us" is defamatory. FAC ¶ 233-35. These allegations—directly aimed at chilling legitimate artistic expression safeguarded by the First Amendment and New York law, *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977); *People ex rel. Arcara v. Cloud Books, Inc.*, 503 N.E.2d 492, 494-95 (N.Y. 1986)—are meritless.[6] Drake fails to state a claim for defamation because "Not Like Us" conveys nonactionable opinion and rhetorical hyperbole, not fact, and because he does not adequately plead that UMG acted with actual malice.

### A. The Alleged Defamatory Material is Nonactionable Opinion and Hyperbole

To be defamatory, a publication must convey fact, not opinion or rhetorical hyperbole. *See Steinhilber v. Alphonse*, 501 N.E.2d 550, 552 (N.Y. 1986). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an

---

[6] Drake claims this lawsuit "is not about the artist who created 'Not Like Us.'" FAC ¶ 8. Nonsense. Although this lawsuit is baseless against *any* target, it is plainly about Lamar. Drake's repeated insistence to the contrary merely betrays his recognition that his *true* battle was, and is, with Lamar.

action for defamation." *Mann v. Abel*, 885 N.E.2d 884, 886 (N.Y. 2008). Whether a statement conveys fact or opinion is "a question of law for the court." *Rapaport v. Barstool Sports Inc.,* 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024); *Mann,* 885 N.E.2d at 886 (same); *see also Dfinity Found*, 702 F. Supp. 3d at 174 (question of fact versus opinion "is appropriately raised at the motion to dismiss stage"); *Hayashi v. Ozawa,* 2019 WL 1409389, at *3 (S.D.N.Y. Mar. 28, 2019) (same). "The burden rests with the plaintiff to establish that in the context of the entire communication a disputed statement is not protected opinion." *Rapaport v. Barstool Sports, Inc.*, 2021 WL 1178240, at *11 (S.D.N.Y. Mar. 29, 2021).

The concept of "'opinion' has come to mean more than it does outside the libel law context." *Weiner v. Doubleday & Co.*, 549 N.E.2d 453, 456 (N.Y. 1989). To distinguish assertions of facts from nonactionable opinion, courts analyze: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Brian v. Richardson*, 660 N.E.2d 1126, 1129 (N.Y. 1995). At its crux, the question for the Court to resolve as a matter of law is what an objective reasonable person hearing the statement would take it to mean. *Steinhilber*, 501 N.E.2d at 553.[7]

In this assessment, context is key. "The Court of Appeals of New York has consistently focused its analysis on the overall context in which the complained-of assertions were made."

---

[7] *See also Aronson v. Wiersma,* 483 N.E.2d 1138, 1139 (N.Y. 1985) (the words at issue "must be construed in the context of the entire statement or publication as a whole, [and] tested against the understanding of the average reader[.]"); *Immuno AG. v. Moor-Jankowski*, 567 N.E.2d 1270, 1281 (N.Y. 1991) (similar).

*Rapaport*, 2024 WL 88636, at *2. This includes both "the immediate context in which the disputed words appear," as well as "the larger context in which the statements were published, including the nature of the particular forum." *Brian*, 660 N.E.2d at 1130; *see also Hayashi,* 2019 WL 1409389, at *3 (courts must look to "tone," "purpose," and "setting").

A statement's "tone and apparent purpose" may signal that it is not conveying "an accurate factual assessment offered by a disinterested observer." *Rapaport*, 2021 WL 1178240, at *12 (cleaned up). For example, a statement may indicate nonactionable opinion where "it reflects a degree of anger and resentment," *Sandals Resorts Int'l Ltd. v. Google, Inc*., 925 N.Y.S.2d 407, 415 (App. Div. 2011); where the tenor is "rambling, heated, or speculative," or "often escalates into the hyperbolic," *Hayashi*, 2019 WL 1409389, at *5; or where it invokes "parody, loose, or figurative" language, *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015), *aff'd*, 670 F. App'x 731 (2d Cir. 2016).

Likewise, the broader context informs whether a statement is reasonably understood to convey factual assertions. "[E]ven apparent statements of fact may assume the character of statements of opinion… when made in public debate, heated labor dispute, or circumstances in which an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber*, 501 N.E.2d at 556; *see also Immuno AG*, 567 N.E.2d at 1280 (letter to the editor nonactionable because "the common expectation of a letter to the editor is not that it will serve as a vehicle for the rigorous and comprehensive presentation of factual matter but as one principally for the expression of individual opinion"); *Hobbs v. Imus*, 698 N.Y.S.2d 25, 26 (App. Div. 1999) (statements by "shock talk" hosts nonactionable because they "would not have been taken by reasonable listeners as factual pronouncements but simply as" the expression of views "in the crude and hyperbolic manner that has, over the years, become their verbal stock in trade").

New York courts routinely hold that tone and context render allegedly defamatory publications nonactionable. *See, e.g.*, *Brian*, 660 N.E.2d at 1130-31 (allegations plaintiff was involved in a conspiracy nonactionable because they were published in op-ed pages, where there is a "common expectation" that articles will "contain considerable hyperbole, speculation, diversified forms of expression and opinion," and "the predominant tone of the article, which was rife with rumor, speculation and seemingly tenuous inferences, furnished clues to the reasonable reader that [the article] was something less than serious, objective reportage").[8]

The recent case of *Rapaport v. Barstool Sports* is instructive. There, actor Michael Rapaport alleged that statements by Barstool Sports accusing him, *inter alia,* of having herpes and abusing his ex-girlfriend—including several statements in a six-minute "diss track" in which defendants "rap[ped] a constant stream of insults and slurs about Rapaport against a backdrop of unflattering video clips and images"—were defamatory. *Rapaport*, 2021 WL 1178240, at *15. The district court rejected the claim as a matter of law:

> [T]he statements were largely laden with epithets, vulgarities, hyperbole, and non-literal language and imagery; delivered in the midst of a public and very acrimonious dispute between the Barstool Defendants and Rapaport that would have been obvious to even the most casual observer; and published on social media, blogs, and sports talk radio, which are all platforms where audiences reasonably anticipate hearing opinionated statements.

*Id.,* at *15.[9] The Second Circuit affirmed, *Rapaport*, 2024 WL 88636, at *2-3, holding that "the

---

[8] *See also 600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 932, 937 (N.Y. 1992) (statement alleging a permit application was "as fraudulent as you can get and [] smells of bribery and corruption" not actionable as the statement was made at a "heated public debate" using "colloquial and loose terms"); *Mirza v. Amar*, 513 F. Supp. 3d 292, 300 (E.D.N.Y. 2021) (although statement that defendant broke state rules "technically one of fact that is capable of being proven true or false," it is nonactionable opinion because it was made in an online review "that is best described as a two-paragraph rant about [plaintiff], his business, and this suit" that "demonstrates defendant's significant hostility" towards plaintiff).

[9] As to the diss track video specifically, the Court had "no difficulty" finding that the video, "offered in the midst of a hostile public feud," and containing "[e]xaggerated, vitriolic words and

district court appropriately considered that the statements at issue were made in the context of a hostile, vulgar, and hyperbolic feud," *id.,* at *4, in which the use of epithets, vulgarities, and hyperbole "function as a strong indicator to the reasonable reader that the statement is not expressing or implying any facts." *Id.*

These conclusions apply equally here. Considered in context, as is required, "Not Like Us" conveys hyperbole and opinion, not facts. Looking first to its tone, the four-and-a-half-minute rap diss track consists of "epithets, fiery rhetoric [and] hyperbole," *Steinhilber*, 501 N.E.2d at 556. The track is "rife with rumor [and] speculation," *Brian*, 660 N.E.2d at 1131, and reflects a considerable "degree of anger and resentment," *Sandals*, 925 N.Y.S.2d at 415. The lyrics are loose and figurative, *Bellavia,* 151 F. Supp. 3d at 294, "rambling [and] heated," *Hayashi*, 2019 WL 1409389, at *5, and "[e]xaggerated, vitriolic words" pervade the recording "to attack all aspects of [Drake's] life," including his career, brand, relationships, and character. *Rapaport*, 2021 WL 1178240, at *16.

Exaggerated imagery in the music video reinforces that "Not Like Us" is not intended to reflect factual analysis. The video opens with Lamar whispering to a clown that he sees "dead people"—a nod to the film The Sixth Sense, *see* RJN Ex. J at 3, implying hyperbolically that Drake has been defeated in the rap battle. The video also shows Lamar beating an owl piñata with the disclaimer "NO OVHOES WERE HARMED DURING THE MAKING OF THIS VIDEO." FAC ¶¶ 109-10. This imagery reinforces the non-factual nature of "Not Like Us." No reasonable listener would require a disclaimer that the piñata is not *literally* Drake and his crew; the imagery is satirical, figurative and vitriolic—signaling to the audience that the video does not convey sober

---

imagery" attacking "all aspects of Rapaport's life, including his career, popularity, relationships, appearance, age, and legal troubles" conveyed nonactionable opinion. *Id.* at *15-16.

factual analysis.

Likewise, the cover image of Drake's Toronto house is "obviously doctored, further underscoring the non-factual nature of ["Not Like Us"]." *Rapaport,* 2021 WL 1178240, at *16. Again, no reasonable viewer would believe that the image of Drake's mansion with *13 sex offender markers* is real; the image is hyperbolic and exaggerated, conveying opinion, not fact. *Id.*

The broader context reinforces that "Not Like Us" is nonactionable. The alleged defamatory content was published in connection with a *rap diss track*—hardly a forum that a reasonable person would expect to convey rigorous, factual content. And "Not Like Us" was Lamar's culminating track in one of "the nastiest lyrical warfare rap [feuds]" in recent history. RJN Ex. B. It followed the release of seven preceding tracks in which Drake and Lamar hurled increasingly vitriolic allegations, including Drake's slurs that Lamar's son was fathered by someone else and that Lamar *physically abuses* his fiancée. If ever there was circumstance for the audience to "anticipate the use of epithets, fiery rhetoric or hyperbole," *Steinhilber*, 501 N.E.2d at 556, this is it. If statements in a letter to the editor are nonactionable because "the common expectation" is such letters do not "serve as a vehicle for the rigorous and comprehensive presentation of factual matter," *Immuno*, 567 N.E.2d at 1280; if statements in an op-ed are nonactionable because the expectation is op-eds "contain considerable hyperbole, speculation, [and] diversified forms of expression and opinion," *Brian*, 660 N.E.2d at 1129; and if statements at a public hearing are nonactionable because attendees "expect to hear vigorous expressions of personal opinion" at such events, *id., citing 600 W. 115th St.*, 603 N.E.2d at 937-938, it defies reason to suggest that statements made in a *rap diss track* convey anything but nonactionable opinion, rather than "an accurate factual assessment offered by a disinterested observer." *Rapaport*, 2021 WL 1178240, at *12; *see also id.* at *16.

In a strained attempt to justify his claim, Drake points to a selection of cherry-picked, anonymous online comments, which he says evidence that "the average listener or viewer has understood [Not Like Us] to reflect factual assertions about Drake, rather than art or hyperbole." FAC ¶¶ 14, 72-79, 113-115. This argument is easily dismissed. As discussed, *supra* at 10-11, the assessment of whether an impugned statement is nonactionable opinion is a question of law for the court based on an objective "reasonable" or "average" person standard. *See e.g., Aronson,* 483 N.E.2d at 1139; *Hayashi,* 2019 WL 1409389, at *3. The subjective opinions of a handful of people do not factor in, particularly where—as here—they are found in *anonymous online comments*, which are notoriously unreliable. *See e.g., SolidFX, LLC v. Jeppesen Sanderson, Inc.,* 2014 WL 1319361, at *5 (D. Colo. Apr. 2, 2014) ("[A]nonymous online comments…are inherently unreliable.").[10] The comments cited in Drake's complaint make this point; they are rife with grammatical errors, slang, and emojis, and authored by sources such as "@WrestlingWarrior15," "@meowmeow1234meow," and "@ImChickenLittle." *See* FAC ¶¶ 79 n.90, 93, 100.

Notably, Rapaport unsuccessfully advanced the same argument. On appeal, he argued that the district court "incorrectly overlooked evidence that Barstool's audience interpreted [the alleged] defamatory statements as true," on the basis that Rapaport's "podcast received thousands of negative statements" in the aftermath of Barstool's campaign, including comments repeating and expanding on the challenged statements. RJN Ex. Q at 48-52. The Second Circuit denied the argument out of hand. After holding that the publications at issue constituted nonactionable opinion, the Court concluded that it had "considered Rapaport's remaining arguments and find

---

[10] For this reason, courts consistently hold that online comments are opinion, not fact, as the "culture of Internet communications … has been characterized as encouraging a freewheeling, anything-goes writing style" such that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts." *Sandals*, 925 N.Y.S.2d at 415-16 (internal quotation marks omitted).

them to be without merit." *Rapaport*, 2024 WL 88636, at *5.

Drake also claims that the lyrics of "Not Like Us" imply that "they are based on additional facts not disclosed to the listener[.]" FAC ¶ 14. This too fails as a matter of law. New York courts apply the objective, reasonable person standard to assess whether a statement implies undisclosed facts (making it a "mixed opinion"). *See Steinhilber*, 501 N.E.2d at 553 (the court's "essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion."); *see also Cooper v. Templeton,* 629 F. Supp. 3d 223, 236 (S.D.N.Y. 2022) ("whether a statement constitutes a pure opinion or a mixed opinion is a question of law for the Court" that is "answered by considering, in the context of the entire communication and of the circumstances in which they were spoken or written, whether the average listener would reasonably understand the opinion as implying the assertion of undisclosed facts justifying the opinion") (cleaned up), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, 2023 WL 3882977 (2d Cir. June 8, 2023)

Drake points to two lyrics to support his argument that "Not Like Us" leaves an "unmistakable impression," FAC ¶ 14, that it is based on undisclosed facts: "Say, Drake, I hear you like 'em young," *id.* ¶ 60, and "Rabbit hole is still deep, I can go further, I promise," *id.* ¶ 63. These statements cannot be reasonably understood as conveying undisclosed facts.

Drake's claim as to the first lyric is particularly stunning; as noted above, *Drake himself goaded Lamar to "Talk about [Drake] likin' young girls." See supra* at 4-5, 7; RJN Ex. I. That Lamar then did so does not convey anything other than that Lamar accepted Drake's invitation. In all events, the statements are too vague to support the weight that Drake gives them, as they have

no "precise meaning which is readily understood." *Brian*, 87 N.Y.2d at 51.[11] More fundamentally, for the reasons of *tone* and *context* already discussed, these rhetorical statements fail to imply any *factual* basis for the lyrics in "Not Like Us." The decision in *LaNasa v. Stiene*, 2025 WL 893456 (2d Cir. Mar. 24, 2025), is illustrative. There, the Court held that although two statements "may cross the line into becoming potentially actionable mixed opinions," they did not imply undisclosed facts where they "could be reasonably understood as part of a tasteless effort to lampoon because they were made in circumstances where an audience may anticipate the use of epithets, fiery rhetoric or hyperbole." *Id*. at *3 (cleaned up).[12]

Moreover, the broader context shows that *both* Lamar and Drake traded these sorts of jabs. For example, Drake in "Family Matters" claimed with respect to his own unfounded allegations that "*Your darkest secrets are comin' to light*." RJN Ex. M. He makes similar assertions in the "The Heart Part 6," rapping: "*What about the bones we dug up in that excavation?*" *See* RJN Ex. O. For all these reasons, a reasonable person would not interpret these lyrics as conveying undisclosed facts, but would understand them for what they are—saber rattling in a rap battle.[13]

Drake's argument also fails because the statements in "Not Like Us" relate to controversies

---

[11] Indeed, to the extent "rabbit hole" has any understood meaning, it does not imply undisclosed facts, but rather pursuing a *known* piece of information (Alice followed the *rabbit* down the hole to Wonderland), and in that sense implies Lamar is referring to well-known rumors regarding Drake's relationships with minors.

[12] S*ee also Woodbridge Structured Funding, LLC v. Pissed Consumer,* 6 N.Y.S.3d 2, 3 (App. Div. 2015) ("Although some of the statements are based on undisclosed, unfavorable facts known to the writer, the disgruntled tone, anonymous posting, and predominant use of statements that cannot be definitively proven true or false, supports the finding that the challenged statements are only susceptible of a non-defamatory meaning, grounded in opinion.").

[13] Drake also alleges that statements in Lamar's "Euphoria," including "*don't tell no lie about me and I won't tell truths 'bout you*," and "*I know some shit about n****s that make Gunna Wunna look like a saint*" imply that "Not Like Us" is based on undisclosed facts. FAC ¶ 77; *see* RJN Ex. K. For the same reasons discussed above, this argument fails both in light of the rhetorical hyperbole of the artists' rap battle and because there is no connection drawn between these lyrics and the statements in "Not Like Us."

that are widely known, and that *Drake himself acknowledged and perpetuated. See e.g.*, *Gisel v. Clear Channel Commc'ns, Inc.*, 942 N.Y.S.2d 751, 752 (App. Div. 2012) (because impugned statements by talk show host "were based on facts that were widely reported by Western New York media outlets and were known to his listeners, it cannot be said that his statements were based on undisclosed facts"); *Torain v. Liu*, 2007 WL 2331073, at * (S.D.N.Y. Aug. 16, 2007) (dismissing defamation claim based on defendant's statement that plaintiff was "sick pedophile loser;" statement arose out of "'war of words' that 'was the subject of extensive media coverage and commentary,'" such that it was "impossible that an informed listener would think" it was "based on some undisclosed information known only to [defendant]"), *aff'd*, 279 F. App'x 46, 47 (2d Cir. 2008). [14]

Facts and criticism concerning Drake's relationships with minors predate "Not Like Us" and have been widely reported. *See, e.g.*, RJN Ex. B (noting that Lamar is "indicting Drake for years of … rumors and speculations around his misbehavior around minors," and that "Millie Bobby Brown … is one of the things that most people are aware of when it comes to Drake and the rumors around him"). [15] In "The Heart Part 6," Drake also affirmed that he understood Lamar's statements in "Not Like Us" to refer to the Millie Bobby Brown controversy, stating "*[t]his Epstein*

_____

[14] *See also Galasso v. Saltzman,* 839 N.Y.S.2d 731 (App. Div. 2007) (no undisclosed facts where "listeners were familiar with the issues in dispute"); *Cooper,* 2023 WL 3882977, at *4 (no undisclosed facts where incident at issue "was circulated widely").

[15] *See also, e.g.,* RJN Ex. P ("we all know the stories of him going to girls' basketball games;" "there are some things that we've seen and heard over the years. It's kind of wild that this has been in the atmosphere for some time. But no one has previously called out Drake in this way;" "when Millie Bobby Brown was 13, she met Drake at a concert. He was 30 or 31 at the time… She said they would text a lot in interviews, and they maintain this friendship where he would give her advice about boys, stuff like that," "this was spoken about in interviews"); RJN Ex. J at 3 (allegations of Drake "having inappropriate sexual relationships with minors" is "a topic Drake has had to debunk in the past;" "Not Like Us" reflects these "rumors surrounding Drake's personal life").

*angle was the shit I expected*," and "*Only fuckin' with Whitneys, not Millie Bobby Browns, I'd never look twice at no teenager.*" *See* RJN Ex. O. Clearly Drake *himself* understands that Lamar's lyrics refer to well-known issues that have been widely reported. Drake's arguments concerning undisclosed facts carry no weight. *Gisel*, 942 N.Y.S.2d at 752.

## B.     Drake Cannot Allege That UMG Acted with Actual Malice

Drake's claim should also be dismissed for failure to plead actual malice. A public figure can prevail on a defamation claim only where "clear and convincing evidence" proves that a defamatory statement was published with actual malice—that is, with "deliberate or reckless falsification." *Biro*, 963 F. Supp. 2d at 279. "The element of actual malice" "focuses primarily on what a defendant knew or believed at the time a purportedly false statement was made." *Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429, 453 (S.D.N.Y. 2018). Because UMG is a corporation, Drake must also plead "specific allegations that individuals at [UMG] acted with actual malice" at the time that they "participated in the publication of the statement in question." *Id*. at 453-54; *see also Dongguk Univ. v. Yale Univ.,* 873 F. Supp. 2d 460, 465 (D. Conn. 2012), *aff'd*, 734 F.3d 113 (2d Cir. 2013). Drake does not—and cannot—plead that any specific person acted with actual malice. His defamation claim fails for this reason as well.[16]

---

[16] Courts also recognize that the malice inquiry must focus on what the publisher intended to convey. *Dworkin v. Hustler Mag. Inc*., 867 F.2d 1188, 1194-95 (9th Cir. 1989) (where "the speaker intends his statements as outrageous parodies or caricatures," there may be "no consciousness that the speaker is publishing something false, because the speaker does [not] think he [is] publishing a statement of fact," and therefore "lack[s] subjective knowledge or recklessness as to the falsification of a statement of fact required" to show actual malice) (cleaned up). *See also Greene v. Paramount Pictures Corp.,* 340 F. Supp. 3d 161, 170 (E.D.N.Y. 2018), *aff'd*, 813 F. App'x 728 (2d Cir. 2020) (same); *Bollea v. World Championship Wrestling, Inc.*, 610 S.E.2d 92, 97 (Ga. App. 2005) (same). So too here. UMG released a *rap diss track,* conveying rhetoric and insults; Drake has not alleged that anyone at UMG intended to *convey* anything other than what this was: an incendiary diss track.

## III. DRAKE FAILS TO STATE A CLAIM FOR SECOND DEGREE HARASSMENT

Drake asserts a claim for "Harassment in the Second Degree" under N.Y. Penal Law § 240.26(3), claiming that Lamar issued a "call to target Drake, including through violence" and that "Not Like Us" amounts to incitement. FAC ¶ 249. This claim fails for multiple reasons.

First, there is no private right of action. "Where a penal statute does not expressly confer a private right of action on individuals pursuing civil relief, recovery under such a statute may be had only if a private right of action may fairly be implied." *Hammer v. AKC*, 803 N.E.2d 766, 768 (N.Y. 2003). This requires considering "whether creation of such a right would be consistent with the legislative scheme," which is not the case when there are "alternative enforcement mechanisms." *Ortiz v. Ciox Health LLC*, 179 N.E.3d 635, 638-39 (N.Y. 2021) (cleaned up).

Section 240.26 does not satisfy this test because nothing distinguishes it from every other criminal statute that lacks a private right of action. *Senese v. Hindle*, 2011 WL 4536955, at *12 (E.D.N.Y. Sept. 9, 2011) ("Rarely is there a private right of action under a criminal statute.") (cleaned up). Indeed, the fact that Second Degree Harassment "is included in the Penal Law, giving police officers the ability to enforce its provisions," means that "a private right of action is inconsistent with the legislative scheme." *Armatas v. Maroulleti*, 2010 WL 4340334, at *4 (E.D.N.Y. Oct. 22, 2010). Courts therefore routinely hold that § 240.26 "do[es] not create a private right of action." *Cablevision Sys. Corp. v. Communic'ns Workers of Am. Dist.*, 16 N.Y.S.3d 753, 754 (App. Div. 2015). [17]

---

[17] *See also Cruz v. NYCTA*, 2025 WL 209598, at *5 (S.D.N.Y. Jan. 16, 2025); *Israel v. City of Syracuse*, 2021 WL 4777256, at *7 (N.D.N.Y. Sept. 16, 2021); *Stathatos v. William Gottlieb Mgmt.*, 2020 WL 1694366, at *4 (S.D.N.Y. April 6, 2020); *Cosby v. Russell*, 2012 WL 1514836, at *11 (N.D.N.Y. Feb. 8, 2012); *Sulehria v. New York*, 2012 WL 1288760, at *10 (S.D.N.Y. Feb. 8, 2012); *Manko v. Volynsky*, 1996 WL 243238, at *2 (S.D.N.Y. May 9, 1996); *Ralin v. City of New York*, 844 N.Y.S.2d 83, 84 (App. Div. 2007); *Bahar v. Sanieoff*, 2020 NY Slip Op. 33790(U), at 3 (Sup. Ct., N.Y. Cnty. Nov. 16, 2020); *Prac. Ctr. Concord Rusam, Inc. v. Bavrovska*, 2019 NY

Drake's harassment claim fails for other reasons. The statute requires that UMG act "with intent to harass, annoy or alarm" Drake. N.Y. Penal Law § 240.26. But at most, Drake merely asserts an intent to "devalue Drake's music and brand in order to gain leverage in negotiations." FAC ¶ 213. And even this allegation makes no sense: Drake does not explain how a contract with Drake would be more profitable for UMG if Drake was "devalued"—UMG's revenues would *decrease*. *Id*. Indeed, Drake contradictorily alleges that UMG had the opposite incentive with respect to re-signing Lamar. *See id.*; *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) (disregarding "conclusory and inconsistent allegations").

Furthermore, § 240.26(3)'s prohibition on a harassing "course of conduct" does not proscribe pure speech, which is what is at issue here. *See People v. Marquan M.*, 19 N.E.3d 480, 488 n.4 (N.Y. 2014) ("course-of-conduct" statute constitutional only because it "criminalized conduct … without regard to the content of any communication"); *People v. Shack*, 658 N.E.2d 706, 710 (N.Y. 1995) (similar statute "does not prohibit speech or expression"). Drake's claim also cannot meet the constitutional test for incitement, which requires that the speech at issue be both "intended to produce" and "likely to produce, *imminent* disorder." *Hess v. Indiana*, 414 U.S. 105, 109 (1973); *see also Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969). Drake nowhere alleges that UMG *intended* to cause violence against him, nor are the lyrics of "Not Like Us" likely to produce *imminent* lawless action. And while Drake attempts to contort violent metaphors in the lyrics into incitement, *see, e.g.*, FAC ¶ 62, hyperbolic and metaphorical language is par for the course in diss tracks—indeed, Drake's own diss tracks employed imagery far more violent (with such lyrics as

---

Slip Op. 34624(U) (Sup. Ct., Westchester Cnty. Oct. 29, 2019). While Drake has cited a handful of decisions that have recognized a private cause of action, *see* ECF No. 29 at 3, those decisions generally include no analysis in support and reflect—at best—a minority view.

"*You're dead, you're dead. There's nowhere to hide*," and "*I'll slit your throat*," RJN Exs. M, O).[18]

Finally, Drake fails to allege that UMG acted with "no legitimate purpose" in publishing and promoting "Not Like Us." N.Y. Penal Law § 240.26(3). "[T]he phrase 'no legitimate purpose' means the absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten." *People v. Stuart*, 797 N.E.2d 28, 41 (N.Y. 2003). Here, Drake expressly alleges that UMG's motives with respect to "Not Like Us" were financial. *E.g.*, FAC ¶¶ 6, 21.

## IV. DRAKE FAILS TO STATE A CLAIM UNDER N.Y. G.B.L. § 349

Immediately after the release of "Not Like Us," Drake started making baseless accusations that Lamar was using surreptitious means, such as fake streams, to make the song appear more popular than it was. *See* RJN Ex. O. Now Drake has attempted to shoehorn his grievance into a N.Y. G.B.L. § 349 claim against UMG. Drake claims UMG "made materially false and misleading representations about the Recording's popularity to consumers" without disclosing that it was "covertly financially incentivizing third parties … to play, stream, and promote the Recording," including paying others "to use bots to stream the Recording." FAC ¶¶ 256-57. Drake cannot satisfy the elements of a G.B.L. § 349 claim.[19]

First, Drake fails to plausibly allege a "covert[]" scheme. All of his allegations are "on information and belief." *See, e.g.*, FAC ¶ 173 (bots allegation "[o]n information and belief"); *id.* ¶

---

[18] Courts have rejected far stronger claims that speech was likely to produce imminent lawless action. *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 902, 905, 927-28 (1982) (statement that "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck" was protected speech even though subsequently "shots were fired into [the] home" of boycott violators).

[19] To state a § 349 claim, a "plaintiff must allege: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co.*, 171 N.E.3d 1192, 1197 (N.Y. 2021). Plaintiff must also allege the deception "result[ed] in a transaction in which the consumer was harmed" that "occur[ed] in New York." *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002).

185 ("Drake has also "received information that UMG engaged in a classic pay-for-play scheme by paying to increase the air play of the Recording on the radio[.]"). But such allegations "must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation." *Boehm v. Sportsmem, LLC*, 2019 WL 3239242, at *2 n.1 (S.D.N.Y. July 18, 2019). This is true "especially with regard to consumer fraud claims such as those under GBL § 349." *Doe v. Yeshiva Univ.*, 703 F. Supp. 3d 473, 501 (S.D.N.Y. 2023) (collecting cases).

After withdrawing his prior false allegations—*i.e.*, that UMG was accused on a podcast of paying to use bots to stream "Not Like Us"—Drake is now reduced to citing a different podcast host who claimed that "Kendrick used bots" so that a "Drake record [would have] more dislikes than likes." FAC ¶ 176. He also relies on a now-deleted anonymous X comment accusing Lamar of "buying promo" to "clown [Drake's law]suit"—not to promote "Not Like Us"—as well another post claiming that UMG and Lamar used "a bot streamer." *Id.* ¶¶ 177-78. Courts reject such online comment-based pleading because online comments "utterly fail to make plausible" the underlying factual claims. *Newcomer v. Mom's Organic Mkt., Inc.*, 2025 WL 903857, at *1 (D. Md. Mar. 25, 2025). Thus, these comments cannot save Drake's "information and belief" allegations. *Boehm*, 2019 WL 3239242, at *2 n.1. Drake's remaining allegations are even more speculative, such as two X posts from July 2024 showing "Not Like Us" being recommended to Spotify users who searched for rap artists. FAC ¶ 180. Drake also fails to plausibly allege that UMG had actual knowledge of any conduct or accusations concerning Lamar. *See Zachmann v. Coleman Co.*, 2022 WL 161480, at *8 (S.D.N.Y. Jan. 18, 2022) ("[P]laintiffs do not sufficiently allege actual knowledge" despite alleged "knowledge of three online comments").

Moreover, Drake cannot allege that any "representations about the Recording's popularity to consumers" were actually "deceptive or misleading in a material way." *Himmelstein*, 171 N.E.3d

at 1197. Drake does not (and cannot) allege that "Not Like Us" would *not* have been an immense success had it not been for the alleged "financial incentives" at issue. That is, there are no alleged false or deceptive statements even assuming that these payments occurred. Nor does Drake allege that knowledge of these alleged "covert" payments would be "material" to consumers. After all, "[t]here is no obligation under GBL § 349 … to provide whatever information a consumer might like to know." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022).

Second, Drake's injury theory is that (1) "each time the Recording was artificially streamed, Drake's songs received a disproportionate share from the pool of royalties collected based on the streaming data;" and (2) "every time the Recording was played [on the radio], Drake lost the opportunity for one of his songs to be played." FAC ¶¶ 262-63. But such far-fetched claims are not cognizable—the proposition that a Drake song would necessarily have been played *instead of* "Not Like Us" is pure speculation. *See Hobish v. AXA Equit. Life Ins. Co.*, 205 N.Y.S.3d 395, 396 (App. Div. 2024) (rejecting "speculative" injury); *Dobkin v. HUB Int'l Ltd.*, 202 N.Y.S.3d 92, 94 (App. Div. 2023) ("speculative causation [is] insufficient to support" § 349 claim). Nor does Drake allege how either claimed injury was caused by a failure to disclose the alleged "financial incentives"—that is, how they were "a result of the deception." *Himmelstein*, 171 N.E.3d at 1197.[20]

And in any event, Drake's G.B.L. § 349 claim fails because he only alleges injuries that are "indirect," *i.e.* injuries "purely contingent on harm to third parties." *City of New York v. Smokes-*

---

[20] Drake's claim also fails because he merely alleges consumers streamed "Not Like Us" and listened to it in on the radio, only the latter of which purportedly partially occurred in New York. *See* FAC ¶¶ 257-58. Those are not transactions, much less transactions that caused cognizable harm to consumers in New York. *See Goshen*, 774 N.E.2d at 1196 (New York "transactions with consumers" required); *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 898 (N.Y. 1999) ("deception" by itself is not "actual harm" under the statute).

*Spirits.Com, Inc.*, 911 N.E.2d 834, 838-39 (N.Y. 2009). Here, under Drake's own telling, the injuries he suffered are contingent on others—streaming platforms or consumers—being deceived, which means that they are "'indirect'—and thus not compensable under section 349." *Id.*

## **CONCLUSION**

The amended complaint should be dismissed with prejudice.

Dated: May 7, 2025

*/s/ Rollin A. Ransom*
Rollin A. Ransom (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
350 South Grand Street
Los Angeles, CA 60603
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rransom@sidley.com

Nicholas P. Crowell
James R. Horner
Katelin Everson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: ncrowell@sidley.com
jhorner@sidley.com
keverson@sidley.com

*Counsel for Defendant UMG Recordings, Inc.*

## <u>WORD COUNT VERIFICATION</u>

I, Rollin A. Ransom, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1, there are 8,749 words in the document.