# EXHIBIT Q

# 22-2080-cv

## United States Court of Appeals

*for the*

## Second Circuit

---

MICHAEL RAPAPORT,

*Plaintiff-Counter-Defendant-Appellant,*

MICHAEL DAVID PRODUCTIONS INC,

*Plaintiff-Counter-Defendant-Counter-Claimant-Appellant,*

– v. –

BARSTOOL SPORTS INC.,

*Defendant-Counter-Claimant-Counter-Defendant-Appellee,*

ADAM SMITH, KEVIN CLANCY, ERIC NATHAN, DAVID PORTNOY,

*Defendants-Counter-Claimants-Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT AND PLAINTIFF-COUNTER-DEFENDANT-COUNTER-CLAIMANT-APPELLANT

RICHARD S. BUSCH
*Attorneys for Plaintiff-Counter-Defendant-Appellant and Plaintiff-Counter-Defendant-Counter-Claimant-Appellant*
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, California 90067
(424) 253-1255

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF THE ISSUES.........................................................2

STATEMENT OF THE CASE.........................................................4

    I.    Introduction .........................................................9

    II.    The "Alleged" Defamatory Statements...............................13

        A.    Defamatory Statements That Mr. Rapaport Has Herpes ..........13

        B.    Defamatory Statements That Mr. Rapaport Beat His Ex-Girlfriend "Black and Blue" Followed Immediately By A Picture Of Her In A Video ...............................14

        C.    Defamatory Statements of "Stalking".......................15

        D.    Defamatory Statements That Mr. Rapaport Is A Fraud/Racist ...............................................16

        E.    Complaint and Summary Judgment Order ...............................18

SUMMARY OF THE ARGUMENT .......................................................19

ARGUMENT .........................................................25

    I.    The standard of review for all issues in this case is *de novo* ..............25

        A.    On a motion for summary judgment the Court's role is to determine if there is a genuine issue of fact, and may determine questions of law .......................................25

    II.    Appellants have fully established each of the elements of their defamation claim and judgement should have been entered in their favor .............................................26

        A.    Defamation factors.................................................26

        B.    Factors considered to determine whether a statement is one of opinion or fact.................................................31

i

C.      The District Court's Analysis of the first two *Brian* Factors was erroneous as it disregarded the principals of linguistics .............................................................................32

D.      The District Court's analysis of the third *Brian* Factor concerning context of the statements was erroneous................36

        i.      Humor does not always turn facts into "mere opinion" ...........................................................................39

        ii.     The District Court erred by giving too much weight to the fact that the statements were made online ...........................................................................42

E.      The District Court incorrectly overlooked evidence that Barstool's audience interpreted Appellees' defamatory statements as true ....................................................48

CONCLUSION ...........................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abdelhamid v. Altria Group, Inc.*,
515 F. Supp. 2d 384 (S.D.N.Y. 2007) ................................................................28

*Bacon v. Nygard*,
2019 N.Y. Misc. LEXIS (Sup Ct. July 18, 2019) ...............................................17

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
151 F. Supp. 3d 287 (E.D.N.Y. 2015)............................................... 34, 42, 43, 44

*Beyer v. County of Nassau,*
524 F.3d 160 (2d Cir.2008) .................................................................................26

*Biro v. Conde Nast*,
No. 11-CV-4442 JPO, 2014 U.S. Dist. LEXIS 139065, 2014 WL 4851901
(S.D.N.Y. Sept. 30, 2014) ....................................................................................43

*Brahms v. Carver*,
33 F. Supp. 3d 192 (E.D.N.Y. 2014) ...................................................................43

*Brian v. Richardson*,
87 N.Y.2d 46 (1995)................................................................................ 32, 36, 39

*Brummer v. Wey*,
2016 N.Y. Misc. LEXIS 2029 (Sup. Ct. Mar. 1, 2016) ......................................17

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................25

*Cianci v. New Times Pub. Co.*,
639 F.2d 54 (2d Cir. 1980) ..................................................................................30

*Coliniatis v. Dimas*,
848 F. Supp. 462 (S.D.N.Y. 1994) ......................................................................30

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004) .................................................................30

*Daniels v. Kostreva*,
2017 U.S. Dist. LEXIS 5534 (E.D.N.Y. Jan. 12, 2017).......................................17

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016) ................................................... 17, 32, 38

iii

*Eros Int'l, PLC v. Mangrove Partners*,
191 A.D.3d 465 (2021) ........................................................................ 34, 35, 42

*Fisher v. Country Wide Publications, Inc.*,
29 Misc. 2d 96, 213 N.Y.S.2d 897 (Sup. Ct. N.Y. Co. 1961) .............................40

*Flamm v. Am. Ass'n of Univ. Women*,
201 F.3d 144 (2d Cir. 2000) ................................................................... 30, 34

*Frank v. National Broadcasting Co., Inc.*,
119 A.D.2d 252, 506 N.Y.S.2d 869 (2d Dep't 1986) ................................... 40, 41

*Goldman v. Reddington*,
417 F. Supp. 3d (E.D.N.Y. 2019) .......................................................................46

*Gross v. New York Times Co.*,
82 N.Y.2d 146 (1993) .......................................................................................32

*Guilbert v. Gardner*,
480 F.3d 140 (2d Cir. 2007) ..............................................................................26

*Hayes v. N. Y.C. Dep't of Corr.*,
84 F.3d 614 (2d Cir.1996) .................................................................................26

*In re Dana Corp.*,
574 F.3d 129 (2d Cir. 2009) ..............................................................................26

*Jacobus v. Trump*,
51 N.Y.S.3d 330 (Sup. Ct. 2017) ................................................................. 46, 47

*Krusen v. Moss*,
174 A.D.3d 1180 (App. Div. 2019) .....................................................................46

*Lafferty v. Jones*,
2021 Conn. Super. LEXIS 1930 .............................................................. 21, 22, 33

*Liberman v. Gelstein*,
80 N.Y.2d 429 (1992) .......................................................................................13

*Mann v. Abel*,
10 N.Y.3d 271 (2008) .......................................................................................31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .........................................................................................25

*McCarthy v. N.Y. City Technical Coll.*,
202 F.3d 161 (2d Cir. 2000) ..............................................................................25

iv

*Miller v. Wolpoff & Abramson, L.L.P.*,
321 F.3d 292 (2d Cir. 2003) ...............................................................25

*Mullenmeister v. Snap-On Tools Corp.*,
587 F. Supp. 868 (S.D.N.Y. 1984) .....................................................38

*Netzer v. Continuity Graphics Assoc.*,
963 F. Supp. 1308 (S.D.N.Y.1997) .............................................. *passim*

*Oakley v. Dolan*,
2020 U.S. Dist. LEXIS 28267 (S.D.N.Y. Feb. 19, 2020) ...................... 13, 19, 27

*Pring v. Penthouse Intern., Ltd.*,
695 F.2d 438 (10th Cir. 1982) .............................................................40

*Reeves v. Sanderson Plumbing Prods. Inc.*,
530 U.S. 133 (2000) ...........................................................................25

*Smartmatic USA Corp. v. Fox Corp.*,
2022 NY Slip Op. 30732 (Sup. Ct.) ............................................. 37, 38

*Solstein v. Mirra*,
488 F. Supp. 3d 86 (S.D.N.Y. 2014) ........................................... 30, 46

*Sprewell v. NYP Holdings, Inc.*,
772 N.Y.S.2d 188 (Sup. Ct. N.Y. Cnty. 2003)....................................15

*Steinhilber v. Alphonse*,
68 N.Y.2d 283 (1986).........................................................................32

*Stern v. Cosby*,
645 F. Supp. 2d 258 (S.D.N.Y. 2009) .......................................... 27, 28

*Thorsen v. Sons of Norway*,
996 F. Supp. 2d 143 (E.D.N.Y. 2014)..................................................14

*Versaci v. Richie*,
815 N.Y.S.2d 350 (N.Y. App. Div. 2006)............................................43

*Watson v. N.Y. Doe 1*,
439 F. Supp. 3d 152 (S.D.N.Y. 2020) .................................................46

*Weyant v. Okst*,
101 F.3d 845 (2d Cir. 1996) ...............................................................26

*Zherka v. Amicone*,
634 F.3d 642 (2d Cir. 2011) ...............................................................17

*Zuckerbot v. Lande,*
   75 Misc. 3d 269 (March 17, 2022) ......................................................... 36, 42, 49

## Statutes & Other Authorities:

28 U.S.C. § 1291 ...............................................................................................1

28 U.S.C. § 1332(a)(1) ......................................................................................1

Fed. R. Civ. P. 56(a) ........................................................................................25

Fed. R. Civ. P. 56 ............................................................................................25

## **JURISDICTIONAL STATEMENT**

The district court had jurisdiction based upon 28 U.S.C. § 1332(a)(1) in that the underlying controversy exceeded $75,000.00 and there is complete diversity of citizenship between the parties. This Court has jurisdiction under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

(1) With respect to the defamation claims of Plaintiffs-Appellants, Michael Rapaport and Michael David Productions Inc., the primary issue is whether the statements undisputedly and repeatedly made by Appellees that Mr. Rapaport has herpes, beat his girlfriend "black and blue", is a stalker, a racist, and a fraud, would have been understood by reasonable audiences as statements of fact as opposed to statements of opinion only, as found by the District Court.  Subsidiary issues are:

(a) Were Appellees' statements true or substantially true?

(b) Did certain of the allegedly defamatory statements constitute actionable statements of fact, or mixed opinions, or only opinions?  In this regard, did the District Court erroneously determine that these online factual statements were transmuted into opinions because Appellee Barstool is an internet-based sports and media company which made vulgar comments about Mr. Rapaport?

(c) Did Appellants establish the other elements for Defamation under New York law?

(d) In deciding these issues, did the District Court apply the proper standard for evaluating the evidence under Rule 56?  Specifically:

(i) Did it view the evidence in the light most favorable to the non-moving party?

2

(ii) Did it improperly weigh the evidence and discount evidence that, while admissible and probative, it found unpersuasive?

(2) Should the Judgment of the District Court be reversed, and should Judgment be entered in favor of Appellants on liability, or at minimum, should the issues be left for a jury to decide?

## STATEMENT OF THE CASE

Plaintiffs-Appellants Michael Rapaport ("Rapaport") and Michael David Productions Inc. (together, "Appellants") initiated this action against Defendants-Appellees Barstool Sports, Inc. ("Barstool"), Adam Smith ("Smith"), Kevin Clancy ("Clancy"), Eric Nathan ("Nathan"), and David Portnoy ("Portnoy") (collectively, "Appellees") asserting claims of breach of contract, fraudulent inducement and concealment arising from the termination of two agreements entered into between the Parties, and defamation arising from Appellees' vicious smear campaign aimed at Rapaport that began after Appellees decided that they wanted to jettison Appellants from Barstool, and continued mercilessly after Portnoy concocted a reason for the very public termination of Rapaport.

Unlike satirical platforms like The Onion,[1] opinion-seeking forums like Reddit,[2] or unverified social media profiles like the majority of those found on Twitter, Barstool prides itself on presenting its audience with what it proclaims as the "truth"; "That's all we spit. Truth and justice baby. Truth and justice." Appendix ("A"), A:195. Mr. Portnoy, the founder of Barstool, testified that Barstool's brand is

---

[1] *See, generally*, Brief for *The Onion* as *Amicus Curia*, *Novak v. City of Parma,* No. 22-293 __ U.S. __ (2023) (noting that "America's Finest News Source" relies on parody and satire)

[2] *See,* Reddit Terms of Service at ¶ 5, available at https://tinyurl.com/bderas5p (last accessed December 27, 2022 ("We [Reddit] take no responsibility for and we do not expressly or implicitly endorse, support, or guarantee the completeness, truthfulness, accuracy, or reliability of any of Your Content.")

being "authentic" and "real". A:195, 262. Because Barstool prides itself on its veracity and its followers understandably believe what they hear from Barstool because of this reputation, Mr. Rapaport's life was turned upside down upon Barstool repeatedly publishing statements declaring that he beat women, suffered from herpes, had a stalking charge, was a racist, and was a fraud. As discussed below, Appellees made these purported statements of fact with admitted actual malice, not only not caring whether they were true or false, but admittedly not having a factual basis to believe they were true, and with the intent, in Appellee Portnoy's words, to "put [Mr. Rapaport] down like a wounded animal." A:194.

Appellants filed a motion for summary judgment on all claims and Appellees filed a cross-motion for partial summary judgment. By Memorandum and Order dated March 29, 2021, the U.S. District Court for the Southern District of New York (U.S.D.J. Naomi Reice Buchwald) denied Appellants' motion and granted summary judgment in favor of Appellees, dismissing Appellants' defamation claims finding, *inter alia*, that the Appellees' statements would not, as a matter of law, be taken as statements of fact, and thus were inactionable opinion. Special Appendix ("SPA"), SPA:30-64. Appellants filed a motion for reconsideration, imploring the District Court to, *inter alia*, review the mountains of evidence showing that these horrific statements were statements of fact which were made with actual malice and were, in

fact, taken as true by their audience. The District Court (U.S.D.J. Buchwald) also denied this motion on June 25, 2021. SPA:90.

The Parties disposed of the remaining claims by way of joint stipulation of dismissal on September 12, 2022. A:27-28. This appeal followed. A:28, 2549.

As discussed fully herein, the District Court erred in granting summary judgment for the Appellees in numerous ways, all of which are discussed fully below, but a perfect example, which crystalizes the District Court's numerous legal errors, and is therefore being mentioned here right up front, is the District Court's blatant misapplication of *Netzer v. Continuity Graphics Assoc.*, 963 F. Supp. 1308 (S.D.N.Y.1997) which is one of the primary cases upon which the District Court relied on when granting summary judgment.  The District Court quotes *Netzer* in the following parenthetical:

> ("statements that 'plainly involve humor, fiction and fantasy' and 'could not be reasonably understood as describing actual facts about the plaintiff or actual events in which [he] participated' are not actionable) (citations and internal quotation marks omitted)." (SPA:47, citing *Netzer*).

The District Court omitted, however, the following language that immediately follows that quote:

In the context of publications that 'plainly involve [] humor, fiction and fantasy, or the bizarre,' **a court will consider whether the statements give 'rise to an impression that they are true' and whether they were 'intended to injure.' Although the fictional or humorous nature of a publication will not necessarily insulate it from a libel claim**, if the allegedly defamatory statement could not be 'reasonably understood as describing actual facts about the plaintiff or actual events in which [he] participated,' the publication will not be libelous.

*Netzer, supra* at 1324. (emphasis added).

The *Netzer* court then continued that where there are competing interpretations of the allegedly defamatory statements – at least one of which is actionable – at the very least the issue is reserved for the jury. *See* Argument Section II.F.ii. *infra* (citing *Netzer v. Continuity Graphics Assoc.*, 963 F. Supp. 1308, 1324-25 (S.D.N.Y.1997)).

The District Court's legal and factual errors regarding *Netzer* are numerous. First, Appellees' statements that Rapaport has "herpes," is a "fraud" and a "racist," has a "stalking charge," and beat his ex-girlfriend "black and blue" on no planet in this universe "plainly involve[s] humor, fiction and fantasy," or "could not be reasonably understood as describing actual facts about the plaintiff or actual events

in which [he] participated." It is the polar opposite: each of those statements absolutely purport to describe actual facts about Mr. Rapaport, and actual events in which Mr. Rapaport supposedly participated.  Furthermore, the statements "plainly" did *not* involve humor, fiction, or fantasy. There was nothing funny about any of it.

And, if that were not enough, the District Court completely omitted the key language that immediately followed what it cited, which is particularly applicable to these facts, since, as discussed in great detail herein, the Appellees' defamatory statements were absolutely and admittedly **intended to "rise to an impression that they are true" and were "intended to injure."**  Unfortunately, as discussed below, this is just an example of a running theme of the District Court completely misinterpreting authority and selectively quoting language.  The District Court's decision is therefore fatally infected throughout by misquoting controlling authority, by wrongfully concluding that the statements were opinion rather than fact, when even Appellees clearly meant the statements to be taken as fact, by ignoring the overwhelming evidence in the record that the statements were made with calculated intent to harm Mr. Rapaport and his reputation and with intentional disregard for the truth, and that the statements were perceived by the public at large to be true.

This is *not* a case of a hyperbolic, over-the-top, war of words[3] between two parties not to be taken seriously. Being on the internet made this no less believable, and was not meant to be less believable just because Appellees' statements were shared through internet sites. This was nowhere characterized as satire. This was not a Saturday Night Live sketch. This was a one-sided campaign to destroy Mr. Rapaport's career, by all means necessary, in which Appellees repeatedly stated that Mr. Rapaport beats women, has herpes, is a stalker, a racist, and a fraud. And it worked. Appellants' podcast was destroyed, with its rating going from 4.5 stars to 1.5 stars, advertisers lost, and the comment section littered with incendiary statements repeating the Appellees' statements that Mr. Rapaport beat women, has herpes, is a stalker, a fraud, and a racist. The District Court, however, did not care, and instead went out of its way through nothing short of legal gymnastics to rule against the Appellants. The District Court's decision warrants reversal.

## I.    <u>Introduction</u>

Rapaport is a successful actor, performer, director, and comedian who has countless movie and television credits over the course of his thirty-year career. A:32-33. Rapaport also produces and appears on his podcast, "I AM RAPAPORT:

---

[3] Appellants submitted an expert report on, among other things, the defamation issues by USC Professor, Dr. Daniel T. Durbin. Dr. Durbin's expert report contains a timeline of the Appellants' attacks on Mr. Rappaport. A:229, 265-267.

STEREO PODCAST," which he developed. A:34. Barstool is a sports and popular culture website whose services include a website, radio (Satellite Radio on SiriusXM), podcasts, articles, blogs, a newspaper, and merchandise. A:148. Barstool has a loyal following of listeners who call themselves "Stoolies," and who religiously believe what the Barstool figures state.

A few months into their relationship, Appellees decided that Mr. Rapaport did not fit with Barstool, and decided to declare war on him for the purpose of generating publicity and viewers to its site for profit. This was a literal declaration of war admittedly designed to ruin Mr. Rapaport's career by: (1) openly and for pre-textual reasons firing him (A:163-164); and (2) repeatedly and brutally defaming him by publicly and falsely declaring that: he was a racist, a "race-baiter," had beaten his ex-girlfriend "black and blue," was a "fraud," had a "stalking charge," and had "herpes." A:178-190. Every one of these statements are false and defamatory on their own, as discussed in detail below, and none were couched in terms of inactionable opinion.[4]

---

[4] Appellants anticipate that Appellees will bring up the fact that after being the victim of a relentless defamation campaign, and being very publicly humiliated by being terminated by Appellee Portnoy in a video posted to social media that was clearly meant to destroy him for Appellees personal gain and amusement, Rapaport posted a photoshopped picture of himself behind Mr. Portnoy in a compromising position. While admittedly not in the best of taste, and cited by the District Court in its Opinion (SPA:7), that photo does not excuse the defamatory onslaught that preceded it, and does not act as a get out of jail free card for the vile and defamatory lies spread by Appellees thereafter. Rapaport actually showed great restraint in not engaging in a war of words

Barstool's founder Mr. Portnoy admits actual malice. He admits not only that Appellees had no basis to make these false statements, but that they made the herpes comments (and created and sold a T-shirt depicting Mr. Rapaport with herpes on it) for the express purpose of humiliating Mr. Rapaport. A:194. As noted above, Mr. Portnoy stated that everything Appellees did to Mr. Rapaport was done to "put [him] down like a wounded animal." A:194. Mr. Portnoy also admits that, even if he knew the statements were false, he would not apologize to Mr. Rapaport or retract the statements. A:192, 194, 264. When questioned publicly about the truth of these statements, Appellees went a step further and said that the statements they made about Mr. Rapaport were true. A:195. Mr. Portnoy confirmed that Barstool's brand is being authentic, true and real, and that he knows of nothing Barstool has published on its website stating that Barstool engages in satire. A:195.

Barstool's repeated accusations that Mr. Rapaport is racist and a fraud were designed to alienate Mr. Rapaport's African American fans by implying that he was not the person he portrayed himself to be, that Appellees supposedly had inside information about him which others did not, and that they were revealing the true Michael Rapaport. A:196-198. The statement that Mr. Rapaport physically abused his ex-girlfriend, a blatant lie as well, was clearly designed to ruin his career as an

---

with Appellees, and did not defame or spread lies about them.

actor in Hollywood in the post Me-Too era. A:205-206. Appellees' actions had the desired effect: Mr. Rapaport's podcast ratings went from 4.5 stars to 1.5 stars, and his ability to attract sponsors for his content was devastated. A:200, 202-204. The ruination of Mr. Rapaport's very lucrative podcast was the direct result of these defamatory statements that the public incorrectly believed to be true; indeed, the comments section in Mr. Rapaport's podcast were filled with users repeating over and over again each of Appellees' defamatory statements. A:203-207.

Nonetheless, in the face of this rampant evidence that the public believed these factual statements to be true – coupled with Appellees' statements that they meant them to be taken as statements of fact, Appellees had the audacity to argue that their heinous statements were merely statements of opinion. Based on a complete misapplication and misreading of the facts and applicable law, the District Court erroneously agreed and granted summary judgment to Appellees.

In furtherance of justice, and to clear his name, Mr. Rapaport now appeals, seeking to have the District Court's grant of summary judgment in Appellee's favor reversed and summary judgment on defamation entered in favor of Appellants, leaving only the question of damages to be left for trial.

12

## II.    The "Alleged" Defamatory Statements

As previously stated, the attacks against Mr. Rapaport were numerous, rampant, and widespread. For the purposes of the action below, and the instant appeal, the statements which Mr. Rapaport contends are actionable, and for which judgment on liability for defamation should be entered in his favor, can be categorized into the following groups: that Mr. Rapaport has herpes, that Mr. Rapaport physically abuses women, that Mr. Rapaport stalks women, and that Mr. Rapaport is a fraud and racist.

### A. Defamatory Statements That Mr. Rapaport Has Herpes

"Herpes-riddled fuck," "herpe having, race baiting, D-list actor," "75-year-old, herpe-having piece of shit."[5] Under New York law, publishing a statement of fact that an individual has a loathsome disease constitutes defamation per se. *Liberman v. Gelstein,* 80 N.Y.2d 429, 435 (1992). Loathsome diseases include "existing venereal disease[s]" and other "loathsome and communicable disease[s]." *Oakley v. Dolan*, 2020 U.S. Dist. LEXIS 28267, at *33 (S.D.N.Y. Feb. 19, 2020). All Appellees made public statements accusing Mr. Rapaport of having herpes. A:178-183. They also created a T-shirt with Mr. Rapaport's face on it depicting him as having herpes. A:151. Mr. Rapaport does not have herpes. A:190. Appellees

---

[5] A:178;182-183;190

repeatedly published these statements of fact despite having no knowledge as to the truthfulness of their statements and conducting no research as to their accuracy – they admittedly did not care about the truth, they only cared about tarnishing Mr. Rappaport's reputation. A:192-194. Appellees noted in their depositions that none of them would disavow their accusations of Mr. Rapaport having herpes, even if they were presented a medical record showing otherwise. A:192-193.

### B. Defamatory Statements That Mr. Rapaport Beat His Ex-Girlfriend "Black and Blue" Followed Immediately By A Picture Of Her In A Video

It goes without saying that an allegation of physical domestic abuse is the surest way to derail a Hollywood career. In a six-minute video posted online by Appellees, Appellees threatened to make Mr. Rapaport "as black and blue as [Rapaport made his] ex." A:188, 191. Immediately following that statement, Appellees placed a picture of Mr. Rapaport's ex-girlfriend in the video. "Serious misdemeanor may form the basis for a claim of defamation per se particularly where [] it involves a crime that puts another in fear of physical harm." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 171, n.6 (E.D.N.Y. 2014) (citation omitted). The CEO of Barstool, Ms. Erika Nardini, acknowledged in her testimony that Barstool produced a video that included statements which "were designed to allude to Mr. Rapaport and some type of altercation with an ex." A:191. Ms. Nardini

acknowledged that references in the video to "beating, mentioning his ex-girlfriend Lili Taylor, an order of protection, restraining order, and making him as black and blue as your ex," were all included to support this factual allegation. A:191. Mr. Rapaport has never been accused of, much less charged with, domestic or physical abuse of any woman, ever. A:191. During his deposition, Mr. Smith, who made the statements in the video, noted that he was unaware of any information or allegation that Mr. Rapaport had ever physically harmed a female. A:192. Given these factors and the nature of the crime alleged, Appellant's claim for defamation and defamation per se as against Adam Smith and Barstool is clearly established.

### C. Defamatory Statements of "Stalking"

On Barstool Rundown, a Barstool podcast, Mr. Portnoy stated that Mr. Rapaport "has this stalking case," which Appellees reasserted in the aforementioned video, accusing Mr. Rapaport of "giving girls the heebie jeebies so you stalk them."[6] "[S]talking/first degree harassment, a class B misdemeanor," may form the basis for a claim of defamation *per se*. *See Sprewell v. NYP Holdings, Inc.*, 772 N.Y.S.2d 188 (Sup. Ct. N.Y. Cnty. 2003) (citation omitted).[7] Mr. Portnoy and a non-Defendant

---

[6] A:190

[7] More than 30 years ago, a single harassment complaint was lodged against Mr. Rapaport, (A:190-191, 2248-2250), and Appellees used that to knowingly expound upon and lie to state that Rapaport stalks women.

Barstool host accused Mr. Rapaport of stalking. A:190. While only Mr. Portnoy referred to Mr. Rapaport as having a stalking charge, the host accused Mr. Rapaport of stalking girls in a video that also featured accusations of Mr. Rapaport having a protective order against him. A:188. Mr. Rapaport has never been charged with stalking. A:190. Mr. Portnoy also repeated his accusations of Mr. Rapaport having a stalking charge despite having prior knowledge that Mr. Rapaport had no such charge. A:190. Given Mr. Portnoy's actual knowledge, his admitted actual malice, and the nature of the crime alleged, Plaintiffs' claim for defamation and defamation per se as against David Portnoy and Barstool is clearly established.

### D. Defamatory Statements That Mr. Rapaport Is A Fraud/Racist

Finally, and once again viciously designed to ruin Mr. Rapaport's career, because of Appellees' knowledge that Mr. Rapaport has a large African-American following, and is outwardly supportive of African-American causes, Appellees went for the jugular: calling Mr. Rapaport a "fraud," a "fraudulent sack of shit," a "wannabe hack fraud," a "fucking fraud," a "snake oil salesman with nothing to sell," and a "racist," a "low key racist," a "racist motherfucker," and "blatantly racist."[8] Following these statements, Appellees went even further in the aforementioned video, calling Rapaport an "old racist man" followed immediately

---

[8] A:181, 183-189.

16

by a photo of the Nazi flag. A:190. "Under New York law, a written statement constitutes libel *per se* where it 'tend[s] to injure another in his or her trade, business, or profession'" *Daniels v. Kostreva*, 2017 U.S. Dist. LEXIS 5534, at *23 (E.D.N.Y. Jan. 12, 2017) (quoting *Zherka v. Amicone*, 634 F.3d 642, 645, n.6 (2d Cir. 2011)). "Reputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties." *Enigma*, 194 F. Supp. 3d at 290.

As noted above, Appellees repeatedly stated that Mr. Rapaport is a racist and infused their accusations of fraud to carry the same meaning. The statements were made to imply that Barstool had insider knowledge as to the "true" and allegedly two-faced Michael Rapaport. A:196-197. These repeated statements that Mr. Rapaport is a racist and a fraud are actionable because, *inter alia*, they suggest that they are based on undisclosed facts and personal knowledge unknown to the public at large. *See Bacon v. Nygard*, 2019 N.Y. Misc. LEXIS, at *20 Sup Ct. July 18, 2019); *see also Brummer v. Wey*, 2016 N.Y. Misc. LEXIS 2029, at *7 (Sup. Ct. Mar. 1, 2016). ("Racist terms referring to plaintiff […] together with other statements describing the plaintiff as available for hire, involved in fraud, and affiliated with felons, could reasonably be susceptible to a defamatory connotation."). As noted, diversity has been a hallmark of Mr. Rapaport's brand in both his content production

and the guests he has invited on his various programs. A:197-198, 259-260. Mr. Rapaport's podcast has been a forum for countless African American guests. Mr. Rapaport's wife is African American. A:191, 197-198, 259-260. This direct attack on Mr. Rapaport's trade constitutes defamation *per se*.

### E. Complaint and Summary Judgment Order

Appellants filed a Complaint against Appellees on September 25, 2018, and an Amended Complaint on September 12, 2019, asserting claims for breach of contract, fraudulent inducement, fraudulent concealment, and defamation. A:7,13.

Appellants filed a motion for summary judgment. A:17.  Appellees filed a cross-motion for summary judgment, seeking dismissal of all of Mr. Rapaport's claims. A:20. At issue were various contract claims also brought by Mr. Rapaport which are not at issue on appeal, and Rapaport's defamation claim, which is the subject of this appeal. Specifically at issue was whether the complained-of statements are statements of fact, mixed opinion, or pure opinion.  In a ruling which defies all logic, the District Court agreed with Appellees' litigation-inspired defense that their statements were opinion, and subsequently denied Appellants' motion and granted Appellees' motion, dismissing Rapaport's claims. SPA:33-64.

Although the District Court recognized that there are several factors that must be considered in determining whether a statement is one of fact or opinion for the purposes of a defamation claim under New York state law, Appellees' horrific

18

statements were not evenly thinly veiled as opinion. As stated above, Appellees openly declared that these statements were objective truths. Despite this, in a gold medal act of legal gymnastics, the District Court somehow transmuted straightforward factual accusations into mere opinions.

Appellants then moved for reconsideration, arguing that, as fully discussed below, the District Court had overlooked evidence regarding the audience's understanding of the representations as statements of fact, as well as misinterpreted relevant legal precedent. SPA:84-89. The District Court declined to reconsider, denying Appellants' motion. SPA:90-91.

On September 22, 2022, Appellants filed a notice of appeal from the District Court's decision granting Appellees' motion for summary judgment and denying Appellants' motion for summary judgment and motion for reconsideration. A:2549.

## SUMMARY OF THE ARGUMENT

The plaintiff in a defamation action must prove five elements: "(1) a 'defamatory statement of fact concerning the plaintiff;' (2) 'publication to a third party;' (3) 'fault (either negligence or actual malice depending on the status of the [defamed] party);' (4) 'falsity of the defamatory statement; ' and (5) 'special damages or per se actionability.'" *Oakley v. Dolan*, 2020 U.S. Dist. LEXIS 28267, at *17-18

(S.D.N.Y. Feb. 19, 2020).  While the undisputed factual record, and Appellees' admissions, as discussed fully below, establish conclusively factors 2 through 5, the primary focus of the District Court was element 1, which is clearly erroneous and riddled with error.

In its ruling that converted Appellees' statements of fact into those of opinion, the District Court erred in its analysis of the applicable legal precedent by ignoring or minimizing conflicting case law, greatly expanding the case law on which it relies, not giving proper weight to evidence showing that readers and listeners did indeed understand the statements to be fact rather than opinion, and gave little to no weight to the binary nature of Appellees' statements through its failure to follow the principals of linguistics. The District Court stated that "context suggests that audiences would readily recognize the challenged statements as representing the (often overtly biased) viewpoints of the Barstool Defendants" but fails to explain why any reasonable person would assume Barstool is "overtly biased" and disregards the fact that they strive to be truthful. SPA:40. As discussed at length below, Barstool holds itself out to the public as being authentic, genuine, and relatable. While much of Appellees' content could be considered inappropriate, crude, lewd or vulgar, that does not render it inherently hyperbolic. Simply put, the District Court was distracted by this vulgarity, presupposing that vulgarity is

20

synonymous with hyperbole; in doing so, the District Court failed to consider that vulgarity is often what makes Barstool so genuine to its audience.

Here, the Appellees resort to the age-old defense by those facing a defamation suit—that their statements were merely opinion. Unsurprisingly, this is the exact defense Alex Jones recently attempted to raise in *Lafferty v. Jones*, 2021 Conn. Super. LEXIS 1930, one of the now infamous defamation suits brought against him stemming from his statements regarding Sandy Hook being a "hoax". Although the *Lafferty* Court was applying Connecticut law, Connecticut law requires the same essential *prima facie* elements, and is largely synonymous with New York Law. *Lafferty v. Jones*, 2021 Conn. Super. LEXIS 1930, at *18. In determining whether to strike the defamation claim against Jones, the *Lafferty* Court analyzed a particular statement he made: "We've clearly got people where it's actors playing different parts of people." The word "clearly," Mr. Jones argued, signaled that he was conveying opinion. The *Lafferty* Court stated that:

> To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion . . . A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known . . . In a libel action, such statements of fact usually concern a person's conduct or character . . .Context is a vital consideration in any effort to distinguish a nonactionable statement of opinion from an actionable statement of fact.

Ultimately, the *Lafferty* Court was not convinced, holding, "The court can reach no other conclusion than Jones meant to tell his audience, as a factual matter, that the Sandy Hook shooting did not happen and certain individuals such as the plaintiffs participated in deceiving the public."

More important here since the District Court was overly concerned with the fora in which the statements were made (the internet) rather than intent and implication, despite clear evidence that the statements were meant *and* taken as objective statements of fact, is that the *Lafferty* Court's holding comes despite the fact that Jones' statements were made via his *Info Wars* platform, an outlet the public commonly associates with promoting conspiracy theories. Despite the arguably dubious source, reasonable people often perceive statements on *Info Wars* as being factual. While the *Lafferty* Court actually weighed the statements at issue and correctly found that they were statements of fact (despite the source and despite being cabined with the term "clearly"), the District Court incorrectly gave a disproportionate amount of weight to the fact that the statements at issue here were made on the internet.

In an unprecedented and frankly dangerous misinterpretation of the case law, the District Court suggested that because the statements at issue were made on what the District Court erroneously considered "free-wheeling internet fora, such as blogs

22

or social media sites", New York law generally considers statements made on the internet inactionable opinion. SPA:33-34. In so doing, the District Court gutted this Court's precedent that statements made online may often properly form the basis for defamation claims as actionable statements of fact. *See* Section II D. ii *supra*. The District Court also failed to consider the overarching context of the statements taken together – rather, the District Court considered only each statement in the context of the discrete format in which it was made.  This is simply not what legal precedent requires, and there is in fact no logical or legal reason why this should be so.  It is common sense that where similar statements are made repeatedly over the course of an extended period of time, especially on the internet, the widespread audience is likely to view their repetition as lending credence to their veracity. A:252-253. Nonetheless, the District Court failed to even consider the cumulative effect on a reasonable reader or listener.

The District Court also relied on case law that does not support its conclusion, some of which case law actually supports the correct conclusion that the defamatory statements alleged by Appellants are actionable.

The anomalous result of the District Court's ruling, if upheld, is that no one will be able to viably pursue a defamation claim, so long as the libelous statement is vulgar and made over the internet.  Allowing those who spread false information to

23

escape liability in this manner is contrary to the purpose and policy of New York state law, as well as this Court's own precedent. When the only issue as to whether a statement is actionable is whether it constitutes fact or opinion, a slanderer should not be granted a safe harbor simply because the statement contains crude language and is published via the internet, particularly given that, contrary to the District Court's apparent belief, many readers do, in fact, understand colorfully worded statements on the internet to be true and accurate, especially when oft repeated. To use the District's Courts own words, "As a matter of logic, just because a statement of [fact]" is made on the internet, it, "does not magically transform that [fact] into an [un]actionable statement of [opinion]". SPA 87. Yet, despite this statement, that is exactly what the result of the District Court's ruling would do.

Appellants submit that all of the evidence and case law, discussed above and further below, supports reversal of the District Court's ruling, as the allegedly defamatory statements are not opinion but statements of fact under New York state law.

# ARGUMENT

## I.    The standard of review for all issues in this case is *de novo*.

This Court reviews a district court's decision to grant or deny summary judgment *de novo*. *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).

### A. On a motion for summary judgment the Court's role is to determine if there is a genuine issue of fact, and may determine questions of law.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court should not grant summary judgment on a claim unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In other words, a court should only grant summary judgment to a party if the facts in the record could not support any outcome other than victory for that party.

In deciding a motion for summary judgment, the court must view all facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). The court must "mak[e] all credibility assessments in [the non-movant's] favor," *McCarthy v. N.Y. City Technical Coll.*, 202 F.3d 161, 167 (2d Cir. 2000), and "must disregard all evidence favorable to [the moving party] that the jury is not required to believe," *Reeves v.*

*Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000); *see In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009).

The court is not to weigh the evidence and choose among competing inferences; rather, its role is limited to determining if the non-moving party can offer competent evidence that creates a genuine issue of fact. *See, e.g., Weyant v. Okst*, 101 F.3d 845, 854-55 (2d Cir. 1996) ("in ruling on a motion for summary judgment, the district court is not to weigh the evidence" and must "eschew credibility assessments"); *Hayes v. N. Y.C. Dep't of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) (on a motion for summary judgment, a court "should not weigh evidence or assess the credibility of witnesses"). A genuine issue of fact exists "where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir.2008) (citing *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir.2007)). If so, summary judgment is not appropriate.

## II.  **Appellants have fully established each of the elements of their defamation claim and judgement should have been entered in their favor.**

### A. Defamation factors.

"Under New York law, a defamation claim requires a plaintiff to establish (1) a 'defamatory statement of fact concerning the plaintiff;' (2) 'publication to a third party;' (3) 'fault (either negligence or actual malice depending on the status of the [defamed] party);' (4) 'falsity of the defamatory statement;' and (5) 'special

damages or per se actionability.'" *Oakley v. Dolan*, 2020 U.S. Dist. LEXIS 28267, at *17-18 (S.D.N.Y. Feb. 19, 2020).

"The New York Court of Appeals has recognized four categories of statements as defamatory per se: (1) those that accuse the plaintiff of a serious crime; (2) those that 'tend to injure another in his or her trade, business or profession'; (3) those that accuse the plaintiff of having a 'loathsome disease'; or (4) and those that impute 'unchastity to a woman.' Determining whether a statement is defamatory per se is a question of law for the Court." *Stern v. Cosby*, 645 F. Supp. 2d 258, 288 (S.D.N.Y. 2009) (citation omitted). Defamation per se is not limited to these four categories however. "[A] statement is libelous *per se*, even if it does not fall within one of the four categories, if the statement is so severe that serious injury to the plaintiff's reputation can be presumed." *Id.* at 290. "The reason damages are presumed when forms of defamation are actionable per se is because the defendant's conduct is considered so severe that serious injury to the plaintiff's reputation is 'virtually certain.'" *Id.* at 289 (citation omitted). "In other words, certain statements are so clearly damaging that the law presumes that the plaintiff has suffered damages. It is inconsistent with this rationale to say that only statements within the four categories can be so inflammatory and offensive that damages will be

presumed, particularly because there is no principled reason why the rule only applies to these four categories." *Id*.

This case involves claims for defamation related to dozens of statements made by Appellees which Appellants could identify; Appellees likely made other defamatory statements which have not been identified due to Appellees' self-serving decision to delete 60,000 social media posts during the pendency of this litigation. A:177. Each of these defamatory statements fall within one or all of the following categories: (1) Mr. Rapaport having herpes, (2) Mr. Rapaport being a domestic abuser, (3) Mr. Rapaport having a stalking charge, (4) Mr. Rapaport being a fraud, and (5) Mr. Rapaport being a racist.

Appellees have openly acknowledged that Appellees made each of the allegedly defamatory statements and these statements were made within the scope of Appellees' employment with Barstool. A:1992.[9] Appellees' malice is clearly evidenced by their admitting that they had no basis to believe any of these things were true, (A:191-194), and by their open recruiting of fans to join in the pile-on attacks against Mr. Rapaport. A:200-201. Mr. Portnoy admits that Appellees

---

[9] Barstool is therefore liable for the statements made by the other Appellees under the common law doctrine of *respondeat superior. See Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 394 (S.D.N.Y. 2007) ("Under the common law doctrine of respondeat superior, an employer may be held liable for the tortious acts of an employee committed within the scope of his employment.").

considered themselves to be "in a war" (which was entirely one-sided) with Mr. Rapaport at the time of their defamatory statements (A:198), and that it was his goal to humiliate Mr. Rapaport and for the herpes T-shirt to haunt him for the rest of his life. A:194. This idea of "going to war" is well-entrenched as a part of Barstool's culture, with the site routinely engaging in attacks against third parties. A:198-200. This active promotion of Appellees' defamation of Appellants and reckless indifference to the accuracy of their statements is textbook malice. Appellees' malice is evidenced not only by their decision to not conduct research and ascertain the validity of their statements before making them, but by their indifference to their falsity. A:191-194. As Appellees noted in their depositions, even if they learned that their statements were false, they would not disavow them or apologize. A:191-194. Appellees ultimately decided to capitalize on their decision to end their relationship with Mr. Rapaport by trying to destroy his career through these defamatory statements all for monetary gain (since the more clicks and views they receive, the more revenue they receive) at Appellants' expense.

29

What is undeniable here is that Appellee's statements were false,[10] published
to third parties[11] with the sole purpose of harm and caused Mr. Rapaport significant

_____

[10] Appellants presented evidence that Appellees' statements were false because in fact Mr.
Rapaport does not have herpes, did not beat his girlfriend "black and blue", is not a racist, and is
not a fraud. A:1992-1994.  The District Court, however, erroneously concluded Appellants did
not present evidence that Appellee's statements that Mr. Rapaport is a "fraud," an "all-time
fraud" and the like were in fact false. SPA:37.  The District Court was also in clear error on this
point. According to Appellees, their accusations that Mr. Rapaport is a fraud are all "based on
disclosed facts: Smith's belief that Rapaport had refused to pay on a bet and, as a result, was a
fraud." A:1966. Although not all of Appellees' statements directly reference the bet, Appellees
have taken the position that broader context would have informed reasonable viewers of these
facts.  As such, A:2279-2283 provided pages of analysis and evidentiary support showing that 1)
the alleged bets upon which Appellees claimed to have based their defamatory statements never
happened, 2) one of the bets, which purportedly was made on DraftKings, was objectively
impossible and could not have occurred due to the limitations of DraftKings' platform, and 3)
Smith later admitted that one of the bets did not occur (though for purposes of trashing Rapaport,
has returned to claiming that it did).

[11] To the extent Appellees accused Mr. Rapaport of being a fraud in reliance upon a third party's
(Mr. Smith's) false statements, Appellees would similarly be liable for defamation. As noted in
*Solstein v. Mirra*, 488 F. Supp. 3d 86, 99 (S.D.N.Y. 2014):

> "'It is well settled that [a defendant] cannot escape liability simply because [he is]
> conveying someone else's defamatory statements without adopting those
> viewpoints as [his] own.' *Biro*, 883 F. Supp. 2d at 461 (also noting that the Second
> Circuit has "expressly embraced the 'widely recognized' rule that 'one who
> republishes a libel is subject to liability just as if he had published it originally'"
> (quoting *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980)); *see
> also Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) ("[T]he
> fact that a particular accusation originated with a different source does not
> automatically furnish a license for others to repeat or publish it without regard to
> its accuracy or defamatory character." (citation and quotation marks omitted));
> *Condit v. Dunne*, 317 F. Supp. 2d 344, 364 (S.D.N.Y. 2004) (although statements
> were "literally true because [the] defendant clarifie[d] that he [was] merely retelling
> stories told to him[,]" the defendant was not "immune from a slander suit" because
> the stories themselves [were] false and defamatory"); *Coliniatis v. Dimas*, 848 F.
> Supp. 462, 468 (S.D.N.Y. 1994) (finding that although a letter "purport[ed] to
> merely relay information" told by one person to another, the plaintiff's libel claim
> was actionable if he could prove that the factual assertions were "actually false")."

30

injury.  Therefore, the central issue of this appeal is the District Court's clear error in its analysis of the first element of defamation – whether the statements at issue are opinion or statements of fact.

### B.  Factors considered to determine whether a statement is one of opinion or fact.

While New York law states that whether a particular statement constitutes an opinion or an objective fact in the context of defamation is a question of law, New York courts have recognized that such inquiry has "proved a difficult task," and use a three-factor test to guide their analyses: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal … readers or listeners that what is being read or heard is likely to be opinion, not fact." *Mann v. Abel*, 10 N.Y.3d 271,

---

In addition to directly disproving the "disclosed facts" that Appellees purport to have made their defamatory accusations that Mr. Rapaport is a fraud, Appellants also presented evidence showcasing additional "undisclosed facts" inferred by Appellees' accusations that Mr. Rapaport is a fraud and a racist. A:2389-2390.  For example, while Mr. Rapaport was still with Barstool, its employees, including Appellees, would frequently comment on and tell stories about Mr. Rapaport and his relationship and interactions with African Americans. A:197,2389-2390. These personal stories grounded Appellees' statements with the inference of providing an "inside look" into the life of Mr. Rapaport. This added credibility to Appellees' defamatory assertions and suggested that their accusations were based on undisclosed "inside look" experiences that, if known, would reveal that Rapaport was actually a racist, and therefore a fraud when it comes to his sympathy for the African-American Community. A: 255-60.

276 (2008) (citing *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986).

"To qualify as a protected opinion, a 'statement must be accompanied by a recitation of the accurate facts on which it is based. When a statement of opinion implies that it is based on unstated facts that justify the opinion, the opinion becomes an actionable mixed opinion.'" *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) (citation omitted).

### C. The District Court's Analysis of the first two *Brian* Factors was erroneous as it disregarded the principals of linguistics

Linguistically, and as a matter of law, the statements at issue here *must* initially be considered what they grammatically are on their face, statements of fact, which can only be transformed into inactionable statements of opinion via context. The specific language at issue here has a precise meaning. Linguistically there exist statements of fact, statements of opinion as well as statements of mixed fact and opinion. "I like pineapple on my pizza" is an example of a grammatical (though erroneous) opinion, and "pineapple on pizza is good" is grammatically phrased as a statement of fact; however, it would be reasonable to still consider the latter one's opinion because context proves the underlying assertion is necessarily subjective. On the other hand, while "I think 2 + 2 is 4" is phrased grammatically as an opinion,

the underlying assertion is an objective fact, context does not change that. "I think it's very cloudy today" is a mixed statement of fact and opinion. This underlying assertion contains two parts: (1) the objective fact that clouds are present and (2) the subjective degree of cloudiness. Here, and unlike in *Lafferty, supra*, Appellees do not even attempt to disguise their statements as ones of opinion or mixed statements of fact and opinion, they are unequivocal statements of objective, binary facts with a precise meaning. Mr. Rappaport has herpes, or he does not; Mr. Rapaport has beat a woman or he has not; Mr. Rapaport has a stalking charge, or he does not; Mr. Rapaport is a racist or he is not; Mr. Rapaport is a fraud, or he is not.

When Mr. Rapaport moved for reconsideration, the District Court reframed its conclusion in a way that highlights the error in its analysis: "As a matter of logic, just because a **statement of opinion** was repeated by a third party does not magically transform **that opinion** into an actionable statement of fact." SPA:87. (emphasis added). This logic is plainly backwards and erroneous. Based on a simple, clear and precise meaning of the statements at issue based on their grammatical structure, the District Court would have needed to transform Appellees' factual assertions into those of opinion through context for them to not be actionable. However, in a grievous miscalculation of linguistics, grammar and syntax, the District Court admitted that it analyzed Appellees' unequivocal grammatical assertions of fact with

33

precise meaning, as those of opinion which would need to be transformed into fact through context to become actionable. SPA:87.

The District Court especially committed error in determining, as a matter of law, that the statements made by Appellees that Mr. Rapaport is a "fraud" are merely opinion rather than plausible actionable statements of fact. First, *Eros Int'l, PLC v. Mangrove Partners*, 191 A.D.3d 465 (2021) does not stand broadly for the proposition that calling an individual a "fraud" constitutes inactionable opinion as intimated by the District Court in its opinion.[12] SPA:36-38. Rather, in *Eros*, the tweet at issue, which the court found to be inactionable opinion, stated that "certain results *'should'* prove that the company is a fraud, rather than that the results *do* prove fraud." *Eros*, 191 A.D.3d at 466 (emphasis added). While "the use of 'appeared to be,' 'might well be,' 'could well happen,' and 'should be' . . . signal presumptions and predictions rather than facts," such language was not used here as in *Eros. See Flamm v. Am. Assoc. of Univ. Women*, 201 F.3d 144, 154 (2d Cir. 2000); *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 293 (E.D.N.Y. 2015). Here, the subject statements are not phrased in any qualified manner that would indicate opinion that Rapaport "may," "could," or "should" be

---

[12] Rather, New York courts have found simply "that use of the word "fraud" *can* be offered as a statement of opinion rather than as a factual declaration." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015) (emphasis added).

found a fraud; they are clear and unequivocal – Appellees stated repeatedly that Rapaport is a "fraud," a "fucking fraud," a "fraudulent sack of shit," the "biggest fraud I've ever met," and "an all-time fraud," among other comments of the same vein. As discussed above, these statements, particularly in their repetition were understood both by the Barstool audience, Stoolies, and by the general public to be factually accurate.  Accordingly, the *Eros* case has no relevance to the facts at issue in this case and should not have instructed the District Court's conclusion.

As far as the other statements are concerned, there is literally no way they can be viewed as anything other than statements of fact. As discussed above, either Mr. Rapaport beat his ex-girlfriend or he did not, either he has herpes or he does not, he either has a stalking charge or he does not, and he is either a racist or he is not. Appellees did not even try to couch their statements as opinion. Even though, as discussed below, it would not matter if they did, Appellees did not say that they "believe" or "think" or it's their "opinion":  Appellees said each of these statements directly and as if they were armed (although they were not) with factual support for all of their vicious defamatory statements, and, as discussed above, did so while suggesting that they had undisclosed knowledge about Mr. Rapaport, not known to the public, which made all of these statements true. A:177-194.

**D. The District Court's analysis of the third *Brian* Factor concerning context of the statements was erroneous**

When considering Appellees' motion for summary judgment, the District Court's analysis of the third *Brian* factor was clearly egregious in light of the undisputed evidence. The District Court neglected to consider not only whether such context would signal to Barstool's readers and/or viewers that the statements at issue were opinion, but outright disregarded the undisputed evidence that the listeners did, in fact, take the statements as statements of fact rather than opinion, a crucial part of the "context" and "surrounding circumstances" of the situation as a whole. (*See, e.g., Zuckerbot v. Lande,* 75 Misc. 3d 269, 285 & 292 (March 17, 2022) where, in determining whether statements made on social media constituted opinion or fact, the court considered the fact that the statements at issue were picked up and repeated by "major mainstream publications, including the *New York Times*" and that "in proper context, an ordinary reader plainly could (and, Plaintiffs allege, did) understand [the statements made on social media] as conveying fact, not merely opinion.")  In a February 27, 2018 video published on Barstool's official Twitch channel, titled, "Fortnite Squad Up Session As Well As A Live AMA On Barstool Smitty's Current Lawsuit With D-List Actor (Part III – THIS DAMN INTERNET)", following a discussion of this lawsuit and the defamation claims brought against Mr. Smith and Barstool, an audience member responded, "I hear nothing but truth." Mr.

36

Smith responded "[t]hat's all we spit. Truth and justice baby. Truth and justice."
A:195. Clearly, the District Court ignored outright that Appellees' conduct explicitly
shows that they meant their statements to be interpreted as true, even while their
attorneys argued otherwise. The age-old strategy of a defamation defendant taking
the position that "I didn't mean this seriously" cannot survive here and is not an
appropriate basis upon which the District Court may properly conduct its analysis
when Appellees themselves were literally contradicting their attorney's defense
position at the time they were making it. *See, e.g.*, *Smartmatic USA Corp. v. Fox
Corp.*, 2022 NY Slip Op 30732(U), ¶ 45, ¶ 48, n.26 (Sup. Ct.).

In *Smartmatic,* the New York Supreme Court ruled against Fox News host,
Lou Dobbs' assertions that his statements regarding the alleged voter fraud and the
role that Smartmatic USA had in it were merely "opinions", finding that his
statements at issue were clearly statements of fact based on clear implications that
they were based on facts unknown to the audience. *Id.* at ¶45. The *Smartmatic* Court
also noted that Sidney Powell had made similar arguments in the action filed against
her by Dominion Voting Systems in the U.S. District Court for the District of D.C.,
arguing that her statements were "'opinions' which 'reasonable people would not
accept . . . as fact.'" The *Smartmatic* Court actually held that not only did this fact
not magically change Powell's factual assertions into "opinions," but actually

supported a finding of actual malice in the case against her and Fox News. *Id.* at ¶ 48, n. 26.

To the extent that Appellees now claim some or all of their statements were not meant to be taken seriously, a position only taken during litigation, "[i]t is no defense to a suit for libel that the defendant did not mean the offending statement to be taken seriously." *Mullenmeister v. Snap-On Tools Corp.*, 587 F. Supp. 868, 873 (S.D.N.Y. 1984). Likewise, to the extent that Appellees argue that somehow their straightforward statements are couched in disclaimers, "[t]he mere recitation of prefatory phrases such as 'in my opinion' or 'I think' will not render innocent an otherwise defamatory statement." *Enigma*, 194 F. Supp. 3d at 286 ("The impression created by [Defendant's] words in the mind of a reasonable person could be that they were purporting to state the truth of the matter, not merely [his] opinion.").

It is notable that Appellees made their statements within their capacities as Barstool employees. Although Barstool has a controversial reputation, the platform does not have a reputation for dishonesty. To the contrary, the platform strongly pushes the narrative that it is "authentic" and that its words are both "true" and "real". A:195, 262. As Mr. Smith explained during an online video where he fielded questions about this litigation, including Plaintiffs' defamation claims, he noted that all Barstool spits is "[t]ruth and justice." A:195.

38

The District Court's Analysis of the third *Brian* factor crystalizes into three main errors: (i) ignoring guiding precedent and selectively quoting authority, the District Court incorrectly decided that the statements were inactionable because of their humor and vulgarity; (ii) incorrectly holding that the accusations of fraud were inactionable statements of opinion; and (iii) giving too much weight to the fact that the statements were largely made on internet fora.

### i.    Humor does not always turn facts into "mere opinion"

The District Court cited the humorous and often vulgar and obscene nature of Appellees' comments when weighing whether the statements were actionable. SPA:40-47. The District Court then ruled that the viewers would not take these statements to be factually accurate given their vulgarity. *See Id.* at 47 (citing *Netzer v. Continuity Graphics Assoc.*, 963 F. Supp. 1308, 1324-25 (S.D.N.Y.1997)). As noted in the very introduction of this brief, the District Court quotes *Netzer*, but elides over a crucial portion of that quote AND fails to follow *Netzer*'s holding. *Id.* The District Court quotes *Netzer* in the following parenthetical:

> ("statements that "plainly involve humor, fiction and fantasy" and "could not be reasonably understood as describing actual facts about the plaintiff or actual events in which [he] participated" are not actionable) (citations and internal quotation marks omitted).

39

However, what immediately follows the first portion is crucial. *Netzer* continues:

> In the context of publications that "plainly involve[] humor, fiction and fantasy, or the bizarre," **a court will consider whether the statements give "rise to an impression that they are true" and whether they were "intended to injure." Although the fictional or humorous nature of a publication will not necessarily insulate it from a libel claim**, if the allegedly defamatory statement could not be "reasonably understood as describing actual facts about the plaintiff or actual events in which [he] participated," the publication will not be libelous.

*Netzer, supra* at 1324 (citing F*rank v. National Broadcasting Co., Inc.*, 119 A.D.2d 252, 261, 506 N.Y.S.2d 869, 875 (2d Dept. 1986); Fisher v. Country Wide Publications, Inc., 29 Misc. 2d 96, 98, 213 N.Y.S.2d 897, 899 (Sup. Ct. N.Y. Co. 1961); *Pring v. Penthouse Intern., Ltd.*, 695 F.2d 438, 442 (10th Cir. 1982)) (emphasis added).

As discussed above, *Netzer* completely supports Appellants. The statements at issue in this action do not "plainly involve humor, fiction and fantasy" and absolutely do purport to "describe[e] actual facts about the plaintiff or actual events in which [he] participated."  Moreover, as also noted above, the District Court omitted the emphasized portion that directly followed what it quoted, at the same

40

pinpoint cite, and therefore did not consider that the statements rose to an impression that they were true AND were intended to injure. New York law is clear — "[O]ne assaulting the reputation or business of another…cannot justify it upon the ground that it was a mere jest, unless it is **perfectly manifest** from the language employed that it could **in no respect** be regarded as an attack upon the reputation or business of the person to whom it related." *Frank v. Broadcasting Co.*, 506 N.Y.S.2d 869, 873 (N.Y. App. Div. 1986) (emphasis added).

As discussed above (and further below), *both* truth and intent to injure were inarguably established in the factual record. Not only does Barstool only "spit truth and justice" thus giving the impression that they were true, the repeated statements of herpes, wife beating, stalking, being a racist and fraud, all were taken as true. Furthermore, it is indisputable that all these statements *were in fact* intended to injure Mr. Rapaport. Appellees likened this to a "war" and that they were going to "put him down like a dog."

Given these indisputable facts and clear precedent, Appellants should have been granted judgment in their favor on this claim. Yet, the District Court selectively quoted and skipped over vital steps of the analysis in reaching its conclusion. *Netzer* itself provides guidance that *even if* the District Court was inclined to find the statements as "mere opinion," given the evidence to the contrary, the District Court

41

should have allowed this issue to pass to the jury. *Netzer, supra* at 1324. ("If the statement complained of is susceptible of more than one meaning, at least one of which is defamatory, ***the claim must go to the jury***.") (emphasis added). At the very least, Appellants' defamation claims should go to the jury.

### ii.    The District Court erred by giving too much weight to the fact that the statements were made online

As the Supreme Court for New York County recently held in *Zuckerbrot v. Lande*, 75 Misc. 3d 269 at 291-292, "[w]eb content, like all content, must be assessed on a case by case basis." The *Zuckerbrot* Court then cites *Eros Intern. PLC v Mangrove Partners*, 2019 NY Slip Op. 30604[U], \*17 [Sup Ct, New York County 2019], *aff'd*, 140 N.Y.S.3d 518 [1st Dept 2021]), thusly:

> Although several years ago it was suggested that "readers give less credence to allegedly defamatory remarks published on the Internet than to similar remarks made in other contexts,", this observation, even if it is assumed to be true, should not be read to "immunize [content] the focus and purpose of which are to disseminate injurious falsehoods about their subjects". *Our "broader social context"—a necessary element of the **defamation** analysis— suggests that online commentary is just as capable as print or broadcast media of inflicting the kinds of harm the **defamation** laws are designed to protect against*. Indeed, online communications can spread more quickly, and to all corners of the world, than can print or broadcast media statements. (internal citations omitted, emphasis in original).

The District Court's citation to *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 293 (E.D.N.Y. 2015), and the cases cited

therein, is also inapplicable to its conclusions that no one could have taken these serious accusations as factual because they were made on the internet. SPA:32-34. While *Bellavia* does state, as the District Court cites, that "New York courts have consistently protected statements made in online for[a] as statements of opinion rather than fact," the District Court neglects to address the case law the *Bellavia* court cites to in making this assertion: *Brahms v. Carver*, 33 F. Supp. 3d 192, 199 (E.D.N.Y. 2014) (finding statement was inactionable opinion where it was "made on an internet forum where people typically solicit and express opinions"); *Biro v. Conde Nast*, No. 11-CV-4442 JPO, 2014 U.S. Dist. LEXIS 139065, 2014 WL 4851901, at *4 (S.D.N.Y. Sept. 30, 2014) (noting that determination that plaintiff failed to state a defamation claim was "buttressed by the context of the publications in question: an online website that was essentially a blog"); *Versaci v. Richie*, 815 N.Y.S.2d 350, 351 (N.Y. App. Div. 2006) (finding statement made on "Internet public message board, which, as characterized even by plaintiff, is a forum where people air concerns about any matter" was opinion).

What the District Court also failed to appreciate is that the *Bellavia* quote, while accurate in its substance, is followed by important context that renders the instant case clearly and unequivocally distinguishable. Each of the cases to which *Bellavia* cites in its summary of the state of New York law reference consumer-

forward internet fora, such as blogs, chat rooms, Twitter, or comment sections of internet posts.  These are simply not the same as online publications by media companies which regularly report on actual, factually based stories, such as Barstool.[13]

Indeed, the *Bellavia* court, mere sentences after the assertion upon which the District Court relies, states unequivocally, and contrary to the District Court's apparent conclusion, "[o]bviously, these aforementioned cases do not stand for the proposition that no comments posted on an online forum can ever be found to be defamatory." *Bellavia*, 151 F. Supp. 3d at 295.  The District Court apparently did not consider this part of the *Bellavia* court's opinion in rendering its analysis; instead, its cherry-picking is a mischaracterization of the relevant legal precedent and amounts to clear error.

Moreover, the District Court's opinion on reconsideration wrongly relied on cases involving anonymous message boards, chat rooms, and weblogs. SPA: 33-35. None of these cases stand for the position that statements posted online have less credibility than statements made in other mediums; they only stand for the position

---

[13] As Appellees are quick to admit, "all [they] spit" is "truth and justice" and their brand is "authentic" and "true". A:195, 262.  They should not now be permitted to claim that no one would think the defamatory statements were true, when they have consistently and repeatedly held themselves out to the public and their readers/viewers to be authentic and truthful.

that representations made by anonymous and pseudo-anonymous individuals are less credible. This is especially true in a world where, according to a 2020 Pew Research Center survey, a majority of Americans get their news primarily from social media and other online sources—with eighty-six percent reporting that they get their news on their smartphone, computers, and/or tablets.[14] The same survey indicates that over half of survey participants get their news from social media sources.





As asserted repeatedly by Appellants, the statements at issue in this litigation were made by well-known individuals without a shield of anonymity, from verified twitter accounts or company-run or sanctioned internet pages.  Given, again, that Barstool holds itself out to be "authentic" and "truthful," Appellees' statements would have been treated as fully credible, especially in light of their representations

---

[14] *See* https://www.pewresearch.org/fact-tank/2021/01/12/more-than-eight-in-ten-americans-get-news-from-digital-devices/, also available at https://www.supremecourt.gov/opinions/URLs_Cited/OT2021/21A720/21A720-1.pdf.

as such. A:195-196, 262. Indeed, Appellees' credibility was indisputably observed by Appellees' own expert. A:2388. *See also Solstein*, 488 F. Supp. 3d 86 ("[A]lthough courts have 'noted that statements made online in blogs or forum boards are more likely to be interpreted as opinion,' courts have also found that such statements may qualify as defamation.) (*See, e.g., Watson v. N.Y. Doe 1*, 439 F. Supp. 3d 152, 162 (S.D.N.Y. 2020) (finding that a defendant's Facebook comments could "reasonably be read to suggest that [the defendant] intended to endorse the alleged defamatory statement that the plaintiff sexually assaulted women"); *Goldman v. Reddington*, 417 F. Supp. 3d at 173 (E.D.N.Y. 2019) (finding that the plaintiff stated a claim of defamation when the defendant published "numerous statements" on Facebook accusing the plaintiff of rape); *Krusen v. Moss*, 174 A.D.3d 1180 (App. Div. 2019) (finding that a statement on Facebook that the plaintiff was "pilfering free gas from taxpayers" was "susceptible to a defamatory meaning, in as much as it conveys, at a minimum, serious impropriety and, at worst, criminal behavior" (citations, alterations, and quotation marks omitted))").

The District Court made no mention of any of the above case law, but rather attempted to dispose of the need for such analysis by citing to *Jacobus v. Trump*, 51 N.Y.S.3d 330 (Sup. Ct. 2017). *Jacobus* dealt with defamation claims brought against former president Trump for a number of tweets he made regarding the

plaintiff; the District Court cites to *Jacobus* for the proposition that statements published on social media, such as Twitter, are 'increasingly deemed to attract less credence to allegedly defamatory remarks that other contexts.'" SPA:53 (citing *Jacobus, supra,* at 339.).

Ironically, in attempting to distinguish the legal precedent regarding the contextual analysis required to determine whether a statement is opinion, the District Court neglects to consider the differences in context in *Jacobus* and both the cases cited by Appellants as well as the instant litigation. To equate repeated, consistently untrue statements made by Appellees in a variety of formats, through company-sanctioned avenues, over an extended period of time, to Trump's tweets, which are widely known to regularly be shown false through fact checking and are consistently outrageous and hyperbolic, is disingenuous and shows the District Court's error in considering only a portion of relevant case law and ignoring the importance of the third *Brian* factor – context.

Here, the evidence offered by Mr. Rapaport supports a finding that the overall context of the statements shows them to be actionable statements of facts. Appellees made the statements regularly, and repeatedly, through a variety of media formats, all while touting their own reputation as being truthful and authentic. Indeed, the evidence shows clearly that "Stoolies" understood the disputed statements as fact,

and that as the broader public became aware of the statements, the public at large understood these statements to be fact as well; Appellees' own expert confirms as much. Based on the foregoing undisputed facts, the District Court's conclusion that the Appellees' statements regarding Rapaport were opinion is clear error and must be reversed.

### E. The District Court incorrectly overlooked evidence that Barstool's audience interpreted Appellees' defamatory statements as true.

The Court's review of Appellees' defamatory statements, which must take "full context" and "surrounding circumstances" into account, wholly ignores how Barstool's audience interpreted Appellees' statements and how secondary audiences interpreted these statements as they were repeated at Appellees' request. Given the implications of this Court's subjective review of whether Appellees' statements would be perceived as statements of fact or mixed opinion, this oversight constitutes clear error.

A casual audience, having no direct interest in or practice viewing Barstool, seeing the constant repetition of charges of fraud, racism, low key racist, and race-baiting, domestic violence, and having herpes against a celebrity involved in sports would be expected to accept those charges as having some basis in fact. A:196. The manner in which Mr. Rapaport was repeatedly called a racist, a low key racist, or a race baiter would leave anyone hearing or seeing such comments with the clear

impression that Appellees, his former employer and its employees, knew facts about him that others did not and that those facts led them to this conclusion. A:196. The same may be taken as true regarding the constant stream of language and images portraying Mr. Rapaport as engaging in domestic violence. A:196. On top of this stream, statements that Barstool would make Mr. Rapaport as black and blue as he made his ex-girlfriend, followed by a picture of the woman, would create visual support for this false claim. A:196. This would be expected to lead those hearing and seeing the image to conclude that Mr. Rapaport did, in fact, beat this particular woman. A:196.

Under oath, Portnoy, Barstool's founder, head of content and self-proclaimed "El Presidente," claimed that Barstool is an "authentic," "true" brand. A:195, 262. In fact, Barstool's content aims to connect with their audience on a personal level and be truthful about life, even when doing so is risqué – whether addressing sex and relationships on former Barstool podcast "Call Her Daddy," business and finance on Barstool podcasts "Token CEO," "Barstool Finance," and "Davey Day Trader," or religion on Barstool podcast "Barstool Confessions." Each of these shows, and many more podcasts, blogs, and other content published by Barstool relies upon their audience buying into this "authentic," "true" brand. And as is their self-proclaimed brand, statements made on Barstool would broadly be and are

accepted as true or "real" by their audience. Moreover, Barstool's audience could then be expected to repeat those statements as if they were "authentic" or true. This dissemination of statements across the internet would then gain the legitimacy of content repeated hundreds of times as if it was true for outside audiences – and this is precisely what occurred and continues to occur.

As reflected in evidence submitted by Appellants, prior to the 24-hour window in which Rapaport was terminated, Rapaport's Podcast had received only a single Apple Podcast rating accusing him of having herpes (7-17-2017) or of being a racist (10-24-2017). The 10/24/2017 rating followed Barstool calling Rapaport a "low key racist." A:188. As in *Zuckerbrot*, *infra*, where, the fact that listeners picked up the defamatory statements and believed them to be true became an important part of the courts analysis of the situation's context and surrounding circumstances, the same happened here but was erroneously not part of the courts analysis. Prior to the 24-hour window in which Rapaport was terminated, Rapaport had never been accused in his Apple Podcast ratings of being a stalker or a fraud or beating women. A:203. However, during and subsequent to Appellees' onslaught of defamatory statements against Mr. Rapaport, his podcast received thousands of negative statements accusing him of being a "racist," a "race baiter," a "sexual abuser," a "women beater/abuser," a "wife beater," a "rapist," a "fraud," a person who "hates

black people," a "woman assaulter," a "stalker," and a "hitter of women," as well as having "herpes" and an "STD." A:203-204.

These ratings and comments show that the audience did, in fact, accept the defamatory statements about Rapaport as fundamentally true. A:204. This is evidenced for example by the fact that when searching "Michael Rapaport" on Bing, "Michael Rapaport herpes" is the first item listed on "related searches for Michael Rapaport." A:203. Given that the evidence shows that Barstools audience clearly did interpret Appellees' statements as true, something that Appellees admitted to intending, despite knowing their falsity, as part of a "war" with Mr. Rapaport designed to ruin him and "put [him] down like a wounded animal," the District Court's opinion is noticeably devoid of any analysis of this reality. Instead, the Court focuses on the "likelihood" that a reasonable observer would understand the statements to be assertions of fact or opinion, while turning a blind eye to the fact that reasonable observers in droves did, in fact, believe Appellees' assertions about Rapaport to be factually true and repeated them presuming them to be true. Such statements evidence the Court's clear error in concluding that Appellees' distribution of a video that suggested Mr. Rapaport made his ex "black and blue" alongside a photo of his ex-girlfriend would not infer that Mr. Rapaport had physically assaulted his ex-girlfriend. Shockingly, the District Court turned a blind eye to the actual effect

these statements had on reasonable people when determining how a reasonable

person would interpret them.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the District Court's grant of summary judgment to Appellees on Appellants' defamation claims, and either enter judgment in favor of Appellee's on liability, or remand all issues for trial by jury.

Respectfully submitted,

/s/Richard S. Busch
Richard S. Busch
rbusch@kingballow.com
KING & BALLOW
1999 Avenue of the Stars, Suite 1100
Century City, CA 90067
(424) 253-1255

*Counsel for Plaintiffs-Appellants*

53

**Certificate of Compliance
With Type-Volume Limitation, Typeface Requirements, and
Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,009 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in 14 point Times New Roman font.

/s/Richard S. Busch_____
Richard S. Busch

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2023, I electronically filed the foregoing with the Clerk of the court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/Richard S. Busch
Richard S. Busch

55