**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AUBREY DRAKE GRAHAM, <br><br> Plaintiff, <br><br> v. <br><br> UMG RECORDINGS, INC., <br><br> Defendant. | Case No. 1:25-cv-00399 (JAV) |

**JOINT STIPULATION ON THE PROTOCOL FOR DISCOVERY OF**
**ELECTRONICALLY-STORED INFORMATION AND HARD COPY DOCUMENTS**

To facilitate the exchange of electronically-stored information ("ESI"), documents, and hard copy documents pursuant to Fed. R. Civ. P. 26, Plaintiff Aubrey Drake Graham and Defendant UMG Recordings, Inc. (collectively the "Parties") in the above-captioned action (the "Action"), hereby stipulate to the following protocol for discovery of ESI and hardcopy documents (the "ESI Protocol").

**I.        COOPERATION**

1.        The Parties commit to cooperate in good faith to comply with the provisions of this Stipulation and to comply with all applicable rules, including, but not limited to, the Federal Rules of Civil Procedure.

2.        To the extent reasonably possible, the production of documents shall be conducted to maximize efficient and quick access to documents and minimize related discovery costs.  The terms of this ESI Protocol shall be construed so as to ensure the prompt, efficient, proportional, and cost-effective exchange of information consistent with the Federal Rules of Civil Procedure, the Local Rules, and any orders by this Court.

3.      This ESI Protocol shall not enlarge or affect the proper scope of discovery in this action, nor imply that discovery produced under the terms of this ESI Protocol is properly discoverable, relevant, or admissible in this or in any other litigation. Additionally, this ESI Protocol does not alter or expand the preservation obligations of the Parties.

4.      A party that issues or has issued a nonparty subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena, or send a copy of this ESI Protocol to any person or entity that was served a nonparty subpoena prior to the execution of this ESI Protocol, and request that the non-party produce documents in accordance with the specifications set forth herein. The Issuing Party is responsible for producing any documents obtained pursuant to a subpoena to all other Parties. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third-parties to object to a subpoena.

5.      The Parties acknowledge their duty to work together cooperatively throughout the discovery process and to use reasonable good faith and proportional efforts to identify and produce relevant information. Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Court's rules and guidelines, the Parties will first attempt to resolve, in person, by video conference, or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief.  If a Producing Party cannot comply with any material aspect of this ESI Protocol, such Party shall inform the Requesting Party in writing, before the time of production, as to why compliance with the Order is not possible. No Party may seek relief from the Court concerning compliance or lack thereof with the Order unless it has first conferred with other affected Party or Parties.  If the Parties are unable to resolve the dispute after

a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

6.     With respect to ESI, the fact that a document is captured by the application of a search term does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this Action. The discovery requests, objections thereto, agreements of the Parties and any Court orders shall govern the scope of documents to be produced. The Parties may review the documents that are populated by the agreed search terms for each custodian for responsiveness and privilege. Parties need only produce responsive and non-privileged documents.

7.     To the extent compliance with this ESI Protocol imposes an undue burden with respect to any protocol, source, or search terms listed herein, the Parties shall promptly meet and confer in an effort to resolve the issue.  Nothing in this ESI Protocol shall be deemed to waive or limit any Party's right to object to the production of certain Documents, or to move for an appropriate Order on the grounds that the sources are not reasonably accessible because of undue burden or cost.

## II.    <u>DEFINITIONS</u>

The following definitions shall be used in construing the meaning of the ESI Protocol contained herein:

a.  "**Electronic Document(s) or Data**" means Documents or Data existing in electronic form at the time of collection, including but not limited to: email or other electronic communications (*e.g.*, texts or instant messages), mobile phone data (*e.g.*, call logs, photos, or app data), communications conducted in ephemeral messaging applications (*e.g.*, WhatsApp, Telegram, Signal), word processing files (*e.g.*, Microsoft Word or Google Docs), computer presentations (*e.g.*, PowerPoint slides), spreadsheets (*e.g.*, Excel), and image files (*e.g.*, GIF, JPEG, PNG).

b. "**Electronically-stored Information**" or "**ESI**," as used herein, refers to computer-generated information or data, stored in or on any storage Media, from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, including, for example, information or data located on computers, mobile phones, file servers, database servers, digital or optical disks, tapes, USB drives, or other real or virtualized devices or Media, as such information is defined in the Federal Rules of Civil Procedure, including Rule 34(a).

c. "**Extracted Text**" refers to the text electronically extracted from a Document and includes all header, footer, and Document body information, when reasonably available.

d. "**Load File**" or "**Unitization File**" refers to an electronic file containing information identifying a set of scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.

e. "**Media**" refers to an object or device, including, but not limited to, a digital or optical disc, tape, computer, or other device, irrespective of whether in the Producing Party's physical possession, on which data is or was stored.

f. "**Metadata**" means: (i) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origin, usage, and/or validity of the electronic file; and/or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

g. "**Native Format**" refers to the format of Electronic Documents and/or ESI in which information or data was generated and/or as used by the Producing Party in the usual course of its business and in its regularly conducted activities.

h. "**OCR Text**" refers to text generated through an optical character recognition process.

i. "**Hard Copy Documents**" means Documents existing in tangible form, including but not limited to paper Documents.

j. "**Parties**" refers collectively to Aubrey Drake Graham ("Plaintiff") and UMG Recordings, Inc. ("Defendant").

"**Party**" shall refer to either Plaintiff or Defendant, individually.

k. "**Producing Party**" refers to a Party in the above-captioned case from which production of ESI or hard copy Documents is sought.

l. "**Requesting Party**" refers to a Party in the above-captioned case seeking production of ESI or hard copy Documents.

III.    <u>NOT REASONABLY ACCESSIBLE DOCUMENTS</u>

a. Absent an order from the Court upon a showing of good cause, a Party from whom ESI has been requested shall not be required to search for responsive ESI from sources that are not reasonably accessible without undue burden or cost. In particular, the following types of data stores are presumed to be inaccessible and are not subject to discovery, and need not be collected or preserved, absent a particularized need for the data as established by the facts and legal issues of the case:

   i.   On-line access data such as temporary internet files, history, cache, cookies, and the like;

   ii.  Back-up data that is substantially duplicative of data that are more accessible elsewhere;

   iii. Back-up data that would be unduly burdensome and costly to restore while providing minimal substantive value;

   iv.  Server, system, or network logs;

   v.   Data remaining from systems no longer in use that is unintelligible on the systems in use;

IV.    <u>PRODUCTION</u>

a. **Deduplication**

   i.   <u>General</u>. The Parties shall use reasonable, good-faith efforts to avoid the production of duplicate ESI following industry-standard practices for MD5 or SHA-1 hash comparison. Deduplication must be done globally. Deduplication must be applied at a family level.

   ii.  <u>Duplicates</u>.

      1. To the extent that duplicate Documents (based on MD5 or SHA-1 hash values) reside within a Party's ESI data set, each Party shall endeavor to produce only a single copy of a responsive Document or record. Where any such Documents have attachments, hash values must be identical for the Document-plus-attachment ("family deduplication"). Loose electronic Documents shall not be compared to email attachments for deduplication.

      2. For any Custodian determined to have a copy of an email, email family, or loose electronic Document in its collection, said

Custodian value shall be listed in the All Custodians metadata field for every document in the family.

3.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.

4.  Hard Copy Documents shall not be eliminated as duplicates of ESI.

iii.  <u>No Manual Deduplication</u>. No Party shall identify and/or eliminate electronic duplicates by manual review or any method other than by use of the technical comparison using MD5 or SHA-1 hash values as provided above.

**b. Email Threads**

i.  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize commercially available "email thread suppression" tools. Lesser Included or Lesser Inclusive Emails suppressed under this paragraph need not be reflected on the Party's privilege log, as further discussed in paragraph J. 5. below.

ii.  Only the Inclusive Emails in a thread need to be produced. For example, if (in a responsive, non-privileged email chain), A emails B, B forwards that email to C, who forwards that email to D, only the email from C to D which includes the prior emails from A to B and B to C needs to be produced. If (in a responsive, non-privileged email chain), A emails B with an attachment, B sends to C without the attachment, both the original email from A to B with attachment, and the separate email from B to C, should be produced.

iii.  Additionally, any emails or Documents which cannot be threaded must be reviewed in full with all responsive, non-privileged Documents being produced.

**c. Hard Copy Document Production Format**

i.  <u>Production</u>. All Hard Copy Documents shall be scanned and produced as black-and-white, single page TIFF images ("TIFFs"),and will include, to the extent feasible, the following fields in the .DAT text file: BEGBATES, ENDBATES, PAGE COUNT, FULLTEXT, and ALL CUSTODIANS. Color Hard Copy Documents will be produced in grayscale in TIFF format; provided that if an original Hard Copy Document contains color, and the color is necessary to understand the meaning or content of the Hard Copy

Document, the Parties will accommodate reasonable requests for production of such Documents in color to the extent available. Producing Hard Copy Documents as specified above does not change their character from Hard Copy Documents into ESI.

ii. <u>Extracted Text</u>. The Producing Party is not required to OCR (Optical Character Recognition) hard copy documents. If the Receiving Party requests that hard copy documents be OCR'ed, the Receiving Party shall bear the cost of such request, unless the Parties agree to split the cost so that each has an OCR'ed copy of the documents.

iii. <u>Unitization</u>. Hard Copy Documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records). Unitization of a Hard Copy Document and any attachments or affixed notes should be maintained as it existed when collected by the Producing Party, and unitized Hard Copy Documents shall be produced in the order in which they are kept in the usual course of business, and with information that identifies the holder (or container) structure, to the extent such structure exists and it is reasonable to do so. Parties may unitize their Documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original Hard Copy Documents like staples, clips, and binder inserts) or logical unitization (*i.e.*, a manual review to determine what logically constitutes a Hard Copy Documents, like page numbers or headers). If unitization cannot be reasonably maintained, the original unitization should be documented in the data Load File or otherwise electronically tracked, if reasonably possible.

iv. <u>Custodian</u>. The Producing Party will provide the name of the custodian who had possession of the Hard Copy Document upon its collection.

d. **ESI Production Format**

i. <u>General</u>. The following provisions shall govern the production format and procedure for ESI, subject to the other provisions contained herein.

1. Black-and-white, single page TIFFs.

2. Delimited Load Files for Documents (.DAT) containing a field with the full path and filename to native and text files along with the metadata fields identified in **Exhibit A**, to the extent that the fields can be extracted. The Parties are not obligated to manually populate any of the fields in **Exhibit A**;

7

3. Load files for images (.OPT) containing the Bates number and file path;

4. Document level .txt files for all Documents containing Extracted Text, or OCR Text if Extracted Text is unavailable, or if the Document has been redacted;

5. Bates number and Confidentiality designation (if any) on the face of the image;

6. Compression file styles (*e.g.*, .ZIP) shall be decompressed in a reiterative manner to ensure that, for example, a .ZIP within a .ZIP is decompressed to the lowest possible level of compression, resulting in individual folders and/or files.

ii. <u>Production of Non-Native ESI</u>.

1. All hidden text (*e.g.*, tracked changes, hidden columns, comments, notes, markups) will be expanded, extracted, and rendered in the TIFF, including, but not limited to, the inclusion of any notes or comments contained within any PowerPoint slides/presentations that are produced in the TIFF.

iii. <u>Production of Native Format ESI</u>.

1. Spreadsheets (*e.g.*, Excel, Lotus, Google Sheets, CSV) and audio or video media files (*e.g.*, .WAV, .MP3, .MP4, .MOV, .WMV, .MPEG), shall be produced in Native Format.

2. If a Document is produced in native format, a single-page Bates stamped TIFF slipsheet shall be produced, stating the document has been produced in native format and endorsed with the corresponding Bates number and confidentiality designation (if any).

iv. <u>Request for Documents in Native Format</u>. If production in Native Format of any Document(s) initially produced in TIFF is reasonably necessary (*e.g.*, to decipher the complete meaning, context, or content), a Party may request production of the original Document in Native Format. The Parties agree to meet and confer in good faith with respect to any such request. Reasonable requests for specific Documents in Native Format, accompanied by a reasonable explanation for the request, shall not be refused.

v. <u>Email Attachments</u>. The Parties shall collect and produce files attached to emails. If any part of an email or its attachments is responsive, the entire email family, including all attachments, will be produced, except any

8

attachments that may be withheld or redacted on the basis of privilege. The Parties shall take reasonable steps to ensure that parent-child relationships within a Document family (the association between an attachment and its parent document) are preserved. The child Document(s) should be consecutively produced immediately after the parent Document. For further clarification, this shall not require a Party to produce Documents merely referenced in responsive documents; and in the absence of a showing of particularized and reasonable need, a Party is not required to produce Documents sent via a link within an email. Nothing in this subsection shall restrict the Parties' abilities to provide placeholder images for non-email attachments validly withheld in accordance with the terms of this ESI Protocol or any operative Protective Order or other Court order.

vi.   <u>Compressed Files Types</u>. Compressed or container file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted. The compressed files themselves need not be produced.

vii.   <u>Embedded Objects</u>. To the extent reasonably possible, images embedded in emails and OLE linked files containing duplicative content shall not be extracted and produced separately.

viii.   <u>Appearance and Content</u>. Except for Documents containing redactions, no Document may be intentionally manipulated to change how the source Document would have appeared if printed out to a printer attached to a computer viewing the file, without prior agreement of the Requesting Party.

ix.   <u>Color</u>. On a case-by-case basis, the Parties will accommodate reasonable requests made in good faith for the production of specific color images originally produced in greyscale TIFF format to the extent available and where reasonably necessary to decipher the complete meaning, context, or content of the Documents.

x.   <u>Production Stamping</u>. Each page of a Document produced as TIFFs shall have a legible, unique Bates Number electronically endorsed onto the image at a location that does not obliterate, conceal, or interfere with any information from the source Document (the "Bates number"). Each file produced in Native Format shall be named by the Bates number, with a TIFF placeholder containing the same Bates number. Documents produced in Native Format may also contain the confidentiality endorsement in the file name.

1.   Bates numbering shall be consistent across the production and be numerically sequential. Each Document produced shall be identified with a Bates number, according to the following protocol:

       a. The first half of the Bates number shall contain a prefix which clearly identifies the producing Party.

       b. The second half of the Bates number shall contain nine (9) digits, padded with leading zeroes as needed to preserve its length.

   2. If a Bates number or set of Bates numbers is skipped, the skipped number(s) should be noted with a placeholder.

   3. Bates numbers shall be sequential within a family.

xi. <u>Text Messages</u>. Text messages shall be produced as Color JPEG images with EXIF compression, 300 dpi or higher, and 24-bit color depth. Relativity Short Message Format ("RSMF") Metadata fields as outlined in Exhibit A shall be produced, along with Extracted Text. RSMFs shall be produced in 24-hour increments.

   1. An RSMF containing both privileged and responsive content is produced with the privileged content redacted; and

   2. All attachments to an RSMF shall be included in the production.

xii. <u>Family Relationships of Electronic Files</u>.

   1. Each Party shall preserve and appropriately reflect in a Load File the association between an attachment and its parent Document for ESI.

   2. A parent email, whether it contains attachments or not, containing both privileged and responsive, non-privileged content shall be produced with the privileged information redacted. Headers (*i.e.*, From/To/CC/BCC/Date/Time) for all emails in the email chain shall be produced intact.

   3. Any non-email attachment withheld on the basis of privilege that is an attachment to an email that has been produced shall either (i) be replaced with a Bates-stamped TIFF placeholder identifying the attachment as withheld as privileged; or (ii) be redacted in full and produced with Bates numbers on each page.

xiii. <u>Production Media</u>. Documents shall be produced via a secure file transfer protocol ("SFTP") site, or such other readily accessible computer or electronic Media as the Parties may hereafter agree upon (the "Production Media"). Each piece of Production Media shall include a unique identifying label and cover letter or email including the following information:

   1. Name of the litigation and its case number;

2.  Name of the Producing Party;

3.  Date of the production in MM/DD/YYYY format;

4.  Volume number;

5.  Bates range;

6.  Highest confidentiality designation; and

7.  Notes regarding any irregularities in the production (*e.g.*, whether it is replacement Production Media, as discussed in Section III.c.xiv).

xiv.  <u>Production Media (SFTP Sites)</u>.

Producing Parties shall produce via a SFTP site or as the Parties may hereafter agree.

1.  Any replacement productions shall cross-reference the original production volume, clearly identify that it is a replacement, and Bates stamp the documents being replaced using the same Bates numbers which shall now contain a **_A** suffixed Bates number on each reproduced page.

2.  Producing Parties may encrypt their production media and, if so, shall provide a key or password to decrypt the production media in a separate communication transmitted via a different method from that being used to transmit the data itself.  For example, if a production is transmitted via SFTP and the SFTP link is sent via email, the decryption key or password may not be sent to the same email address(es) even in a separate transmission.  Acceptable alternative methods of transmitting decryption keys or passwords include phone calls, voicemails, and texting.

xv.  <u>Time</u>.

1.  When processing non-email ESI for a TIFF production, the Producing Party will instruct its vendor to turn off any automatic date stamping.

2.  When processing ESI, the time zone that the Producing Party has used to normalize time stamps during processing will be provided in the production metadata.

3. Parties must produce all ESI in the same time zone; the Coordinated Universal Time ("UTC") is preferred.

4. When a metadata field includes a date and/or time, it shall be provided in the following format: MM/DD/YYYY HH:MM:SS.

xvi. <u>Redactions</u>. To the extent that a responsive Document contains (a) privileged content, or (b) the types of personally identifiable information set forth in Fed. R. Civ. P. 5.2, the Producing Party may produce that Document in a redacted form. Plaintiff may redact his contact information or the contact information of any-third party as he deems appropriate. Defendant may also redact the personal contact information of any of its directors, officers or employees and of any artist or third-party as it deems appropriate.

1. Any privilege redactions shall be clearly indicated on the face of the Document with the redaction designation making clear the reason for the redaction (*e.g.*, "Redacted - Privileged").

2. Spreadsheets (*e.g.*, Microsoft Excel, Google Sheets) requiring redactions shall be produced with native redactions.

3. Where a Document contains both privileged and non-privileged responsive content, the Producing Party shall redact the privileged material as provided herein and produce the responsive content.

4. A Document's status as redacted does not relieve the producing Party from providing herein all the metadata required herein unless the metadata withheld contains privileged content; provided, however, that a Party may withhold the following metadata for redacted Documents: Subject, File Name, Attachment Names, All File Path, Title and MD5 Hash/SHA-1.

5. All Documents containing a redaction, whether on an image or within a native Document, shall contain a "Yes" value in the Redacted field or Metadata Redacted field as required in the Default Production Fields in Exhibit A.

6. The Parties agree to meet and confer in good faith to attempt to resolve any dispute arising under this paragraph.

e. **Search Protocol**

i. The Parties will promptly meet and confer at the commencement of discovery regarding the search methodologies the Producing Party proposes to employ to identify and collect responsive documents, and make such

disclosures regarding their proposed search methodology that will permit the receiving party to evaluate the proposed methodology. The parties will endeavor in good faith to agree upon a search protocol that includes custodians, search terms and other search parameters. If, after a Party has made a Document production, the Receiving Party believes that the Producing Party failed to identify relevant custodians or other sources of ESI, the Parties shall expeditiously meet and confer in good faith to resolve whether the Producing Party must collect ESI from the additional custodians and/or sources.

ii. The parties agree that the use of technology (such as active learning) may be appropriate and agree to meet and confer, in good faith, to discuss methodology, including the use of search terms in conjunction with active learning, the use of search terms alone or the use of active learning alone.

iii. If search terms are used, focused terms and queries should be employed; broad terms or queries should be avoided. The parties agree that if search terms are used, the methodology using search terms often requires iterative refinement. The parties agree to meet and confer regarding such terms.

iv. The Parties acknowledge that search terms may not be appropriate for searching non-custodial information sources and will use appropriate alternative means to search those sources.

f. **Use of Technology-Assisted Review**

i. No Party shall use technology-assisted review to cull or limit Documents to be reviewed or produced without notifying the opposing Party prior to such use and allowing reasonable time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

g. **Structured Data Format**

i. To the extent a response to a discovery request requires the production of ESI contained in a database that cannot reasonably be produced in either Excel or .CSV format, the Parties shall meet and confer regarding the format of the production (*e.g.*, commercial database, or some other agreed-upon format) prior to producing such information. The Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file. If the structured data exists in a proprietary database format, and an exportable electronic file cannot be created in a reasonably usable format, the Parties will meet and confer regarding utilizing the proprietary software to generate the production in an alternative format or other options.

## V.   **DOCUMENT MANAGEMENT**

a.  No documents, data or information produced by a Producing Party may be input into any public internet search engine or into any public, non-compartmentalized generative artificial intelligence (*e.g.*, ChatGPT, Google Bard, etc.) by the Receiving Party.

b.  Documents produced in this litigation shall be maintained in a distinct database, separate from any other documents, including those produced by a Producing Party in a separate litigation. A Receiving Party may not co-mingle confidential information with materials from any other litigation or matter. A Receiving Party may not use any form of Artificial Intelligence on any confidential information, unless the confidential information analyzed is limited to data from a single Producing Party that was produced in this litigation. The obligations and restrictions of this paragraph apply even where the data or the confidential information has been anonymized.

## VI.   **PRIVILEGE AND REDACTION LOGS**

a.  <u>Privileges.</u> Nothing in this Stipulation shall be interpreted as requiring the disclosure of documents or ESI that a Party contends are protected by the attorney-client privilege, the work-product doctrine, common interest privilege, or any other applicable privilege or protection.

b.  <u>Privilege Log.</u> Each Document withheld pursuant to a claim of attorney-client privilege or attorney work product protection, or any other applicable privilege or immunity, shall be identified in a privilege log pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure.

   i.   The Parties will meet and confer in good faith to determine whether certain materials are presumptively privileged and need not be logged or may be logged in a manner that reduces the burden on the producing party.

   ii.  The Party withholding or redacting any responsive document on the grounds of any privilege or immunity claim shall provide to the other Party a Privilege Log which shall contain the following information for each document withheld:

   1.  Privilege Log Entry Number;
   2.  the date of the email, or if an attachment, the date of the parent email;
   3.  the identity of person(s) who sent, authored, signed or otherwise prepared the document, and if an email, including their email address (*e.g.*, Jane Doe (jdoe@gmail.com));

14

4. the identity of all persons designated as recipients, CCs, or BCCs;

5. a description of the contents of the document that, without revealing information that is allegedly privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

6. the type or nature of the privilege asserted (*e.g.*, attorney-client, work product, common interest, etc.).

iii. Privilege logs shall be produced no later than 3 weeks after the completion of document discovery.

iv. On a document-by-document basis, a Party may request additional information about a privilege redaction or withholding.

v. Email Strings: For those documents that contain a series of e-mail communications in a single document ("email string"), it shall be sufficient to log the 'string' without separate logging of each included communication, but reference to the document as an "email string" should be made in the document description field of the log. Responsive email strings that are not privileged in their entirety should be redacted, the redaction labeled to reflect the nature of the privilege and the non-privileged portions produced.

vi. Redacted documents need not be logged as long as (a) for emails, the bibliographic information (*i.e.*, to, from, cc, bcc, recipients, date and time) is not redacted, and the reason for the redaction is noted on the face of the document; and (b) for non-email documents, the reason for the redaction is noted on the face of the document. To avoid the burden of producing duplicative emails requiring redaction for privilege, the Producing Party may suppress less inclusive emails and produce only the most inclusive email in the string.

c. The Parties and all Producing Parties hereby claim the benefits of and agree to be bound by Federal Rules of Evidence and any protective order entered in this case.

## VII.   <u>MISCELLANEOUS</u>

a. <u>Variance</u>. Any practice or procedure set forth herein may be varied by agreement of the Parties without order of the Court.

Dated: May 14, 2025

SO STIPULATED AND AGREED.

By: */s/ Brady M. Sullivan*
Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Brady M. Sullivan
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
bsullivan@willkie.com
mhoughton-larsen@willkie.com
*Counsel for Plaintiff Aubrey Drake Graham*

By: */s/ Nicholas P. Crowell*
Rollin A. Ransom
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Tel: (213) 896-6000
rransom@sidley.com

Nicholas P. Crowell
Katelin Everson
SIDLEY AUSTIN LLP
787 Seventh Ave.
New York, NY 10019
Tel: (212) 839-5449
ncrowell@sidley.com
keverson@sidley.com
*Counsel for Defendant UMG Recordings, Inc.*

16

SO ORDERED.

Dated: _____
New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge

## EXHIBIT A

I.  **PRODUCTION FIELDS**

The following metadata fields will be provided for all Documents in the production, to the extent the metadata is extractable during processing. Specific metadata associated with redacted Documents may be withheld from the production as provided in Paragraph IV.D and as set forth below.

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **BEGBATES** | ABC_00000001 (Unique ID) | The Bates number associated with the first page of a document. | All | Yes |
| **ENDBATES** | ABC_00000003 (Unique ID) | The Bates number associated with the last page of a document. | All | Yes |
| **BEGATTACH** | ABC_0000001 (Unique ID Parent-Child Relationships) | The Bates number associated with the first page of the parent document. | All | Yes |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Bates number associated with the last page of the last attachment. | All | Yes |
| **VOLUME** | VOL001 | The name of production volume and/or production media. | All | Yes |
| **RECORD TYPE** | Options: Email, Attachment, Hard Copy Document, EDocument | The record type of a document. | All | Yes |
| **MASTER (FAMILY) DATE** | MM/DD/YYYY | The date the email, message, or calendar entry was sent or the date the document was created, which date field will be propagated to the full family for purpose of sorting email or document families. | All | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **MASTER (FAMILY) TIME** | HH:MM | The time the email, message, or calendar entry was sent or the time the document was created, which time field will be propagated to the full family for the purpose of sorting email or document families by time. | All | Yes |
| **SENTDATE** | MM/DD/YYYY | The date the email or calendar entry was sent. | Email | Yes |
| **SENTTIME** | HH:MM | The time the email or calendar entry was sent. | Email | Yes |
| **RECEIVEDDATE** | MM/DD/YYYY | The date the document was received. | Email | Yes |
| **RECEIVEDTIME** | HH:MM | The time the document was received. | Email | Yes |
| **CREATEDATE** | MM/DD/YYYY | The date the document was created. | EDocument | Yes |
| **CREATETIME** | HH:MM | The time the document was created. | EDocument | Yes |
| **LASTMODDATE** | MM/DD/YYYY | The date the document was last modified. | EDocument | Yes |
| **LASTMODTIME** | HH:MM | The time the document was last modified. | EDocument | Yes |
| **AUTHOR** | jsmith | The author of a document from extracted metadata. | EDocument | Yes |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item. An email address should always be provided. | Email | Yes |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item. An email | Email | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| | | address should always be provided for every email if a recipient existed. | | |
| CC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item. An email address should always be provided for every email if a copyee existed. | Email | Yes |
| BCC | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. | Email | Yes |
| SUBJECT | | The subject line of the email/calendar item. | Email | May be omitted |
| TITLE | | The title of the email or document. | Email, Edocument | Yes |
| MsgID | | The Unique Message ID. | Email | Yes |
| RSMF THREAD ID | | | RSMF | Yes |
| RSMF BEGIN DATE | MM/DD/YYYY | | RSMF | Yes |
| RSMF END DATE | MM/DD/YYYY | | RSMF | Yes |
| RSMF MESSAGE COUNT | Numeric | | RSMF | Yes |
| RSMF PARENT DATE | MM/DD/YYYY | RSMF BEGIN DATE value populated for the family. | RSMF | Yes |
| RSMF PARTICIPANTS | Smith, Joe; Doe, Jane | | RSMF | Yes |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **ALL CUSTODIANS** | Smith, Joe; Doe, Jane | All of the agreed-upon custodians of a document from which the document originated, separated by semicolons. | All | Yes |
| **ATTACHMENT COUNT** | Numeric | The number of attachments to a document. | Email, EDocument | Yes |
| **ATTACHMENT NAMES** | Document Name.xls | The file names of the attachments to a parnt document | Email, EDocument | May be omitted |
| **FILE EXTENSION** | XLS | The file extension of a document. | Email, EDocument | Yes |
| **FILE NAME** | Document Name.xls | The file name of a document. | Email, EDocument | May be omitted |
| **EMAIL OUTLOOK TYPE** | email, calendar item, note, task, meeting request, message, etc. | Type of Outlook item, e.g. email, calendar item, note, task. | Email | Yes |
| **FILE SIZE** | Numeric | The file size of a document. | All | Yes |
| **PAGE COUNT** | Numeric | For documents produced as images, the number of pages in the document.  For documents produced as natives, page count will be 1 (for placeholder). | All | Yes |
| **HIDDEN CONTENT** | Yes or No | Denotes presence of Tracked Changes/Hidden Content/Embedded Objects in item(s). | Email, EDocument | Yes |
| **HASH** | Alphanumeric | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. | Email, EDocument | May be omitted |

| Field Name | Example / Format | Description | Document Types | Redacted Documents |
|---|---|---|---|---|
| **CONFIDENTIALITY** | Confidential or Highly Confidential or Blank | The Confidentiality designation assigned to each document. | All | Yes |
| **REDACTED** | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. | All | Yes |
| **METADATA REDACTED** | Yes or Blank | If any metadata contains a redaction, this field will display 'Yes'. | All | Yes |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc. | The time zone where the documents were located at time of collection. | Email, EDocument | Yes |
| **ALL FILE PATHS** | \Outlook\Smith, Mary\2025 Account Statements | The path(s) from the location(s) in which the document was stored in the ordinary course of business. | Email, EDocument | May be omitted |
| **NATIVELINK** | \NATIVES\ABC000001.xls | The full path to a native copy of a document in the production media. | All | Yes |
| **TEXT** | \TEXT\ABC000001.txt | The path to the full extracted text of the document in the production media or the OCR'd text if a document is redacted. | All | Yes |