UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUBREY DRAKE GRAHAM,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UMG RECORDINGS, INC.,<br><br>　　　　　Defendant. | No. 1:25-cv-399-JAV<br><br>**ORAL ARGUMENT REQUESTED** |

**UMG RECORDINGS, INC.'S REPLY IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

ARGUMENT ............................................................................................................................. 1

I.    DRAKE FAILS TO STATE A CLAIM FOR DEFAMATION ......................................... 1

    A.    The Statements Are Nonactionable Opinion ........................................................ 1

    B.    The Statements Are Not Mixed Opinion .............................................................. 6

    C.    Drake Does Not Plead Actual Malice ................................................................... 7

II.    DRAKE FAILS TO STATE A CLAIM FOR HARASSMENT ....................................... 8

III.    DRAKE FAILS TO STATE A CLAIM UNDER N.Y. G.B.L. § 349 ................................ 9

CONCLUSION .......................................................................................................................... 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asset Co. v. Katzoff*,
  2025 WL 919489 (S.D.N.Y. Mar. 26, 2025) ............................................................................. 9

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
  151 F. Supp. 3d 287 (E.D.N.Y. 2015) ..................................................................................... 3

*Boehm v. Sportsmem, LLC*,
  2019 WL 3239242 (S.D.N.Y. July 18, 2019) .......................................................................... 9

*Brian v. Richardson*,
  660 N.E.2d 1126 (N.Y. 1995) ............................................................................................. 1, 4

*Casper Sleep v. Mitcham*,
  2016 WL 7188788 (S.D.N.Y. Nov. 17, 2016) ....................................................................... 11

*City of New York v. Smokes-Spirits.Com, Inc.*,
  911 N.E.2d 834 (N.Y. 2009) ............................................................................................10, 11

*Delgado v. Sonnen*,
  2025 WL 1042343 (S.D.N.Y. Feb. 18, 2025) .......................................................................... 6

*Dfinity Found. v. N.Y. Times Co.*,
  702 F. Supp. 3d 167 (S.D.N.Y. 2023) .................................................................................. 1, 2

*Dworkin v. Hustler Mag. Inc.*,
  867 F.2d 1188 (9th Cir. 1989) ................................................................................................ 8

*Dwyer v. Allbirds, Inc.*,
  598 F. Supp. 3d 137 (S.D.N.Y. 2022) .................................................................................... 10

*Feitosa v. Keem*,
  2023 WL 2267055 (W.D.N.Y. Feb. 28, 2023) ................................................................ 3, 5, 6

*Frintzilas v. DirecTV, LLC*,
  731 F. App'x 71 (2d Cir. 2018) ............................................................................................. 11

*Galella v. Onassis*,
  487 F.2d 986 (2d Cir. 1972) .................................................................................................... 8

*Goldfarb v. Channel One Russia*,
  663 F. Supp. 3d 280, 297 (S.D.N.Y. 2023) ..................................................................... 1, 2, 7

*Immuno AG v. Moor-Jankowski*,
    567 N.E.2d 1270 (N.Y. 1991) .................................................................................. 1, 4

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024) .......................................................................................5

*LaNasa v. Stiene*,
    2025 WL 893456 (2d Cir. Mar. 24, 2025) ..................................................................7

*Long v. Beneficial Finance Co.*,
    330 N.Y.S.2d 664 (App. Div. 1972) ............................................................................9

*Mann v. Abel*,
    885 N.E.2d 884 (N.Y. 2008) .......................................................................................2

*McNamee v. Clemens*,
    762 F. Supp. 2d 584 (E.D.N.Y. 2011) ........................................................................6

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) .....................................................................................10

*Ortiz v. Ciox Health LLC*,
    179 N.E.3d 635 (N.Y. 2021) .......................................................................................8

*Palin v. New York Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ............................................................................... 3, 7, 8

*People v. Stuart*,
    797 N.E.2d 28 (N.Y. 2003) .........................................................................................9

*Pickett v. Migos Touring, Inc.*,
    420 F. Supp. 3d 197 (S.D.N.Y. 2019) .........................................................................5

*Rapaport v. Barstool Sports, Inc.*,
    2021 WL 1178240 (S.D.N.Y. Mar. 29, 2021), *aff'd*, 2024 WL 88636 (2d Cir.
    Jan. 9, 2024) ...................................................................................................1, 2, 3, 4

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014) ...........................................................................6

*Singh v. City of New York*,
    217 N.E.3d 1 (N.Y. 2023) .........................................................................................10

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) .......................................................................................5

*Steinhilber v. Alphonse*,
    501 N.E.2d 550 (N.Y. 1986) ................................................................................. 4, 6

*Torain v. Liu*,
    2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46 (2d Cir.
    2008) ................................................................................................................................4

*Trump v. Vance*,
    977 F.3d 198 (2d Cir. 2020)...........................................................................................5

**Statutes**

N.Y. G.B.L. § 349.............................................................................................................9, 10

Drake's opposition is a model of obfuscation. It confuses and conflates distinct legal principles, relies on conclusory allegations, and—perhaps most egregiously—ignores the critical context surrounding the statements at issue (as well as the law that *requires* this Court to consider that context). In short, Drake's opposition fails in every respect.

Assessed in light of the *correct* legal standards, "Not Like Us" conveys nonactionable opinion and rhetorical hyperbole; this is particularly evident when considered in reference to the established body of defamation law, where statements involving allegations of pedophilia (*Torian*), vitriolic diss tracks (*Rapaport*), and statements far more likely than rap lyrics to suggest factual pronouncements (*Brian*) or released in contexts signaling far more sober analysis than a diss track (*Immuno*) have been deemed nonactionable as a matter of law. Drake responds to these arguments by doubling down on his argument that a handful of cherry-picked, anonymous online comments, authored by handles like @Oh-no, are evidence that "millions" of people saw "Not Like Us" as fact-based. But this argument is simply a continuation of the rhetorical hyperbole that permeates this dispute; it is not cognizable, and in all events does not convert nonactionable opinion into actionable fact. Drake's claims should be dismissed.

## ARGUMENT

### I. DRAKE FAILS TO STATE A CLAIM FOR DEFAMATION

#### A. The Statements Are Nonactionable Opinion

As detailed in UMG's motion, the tone, apparent purpose and broader context of "Not Like Us" convey nonactionable opinion and rhetorical hyperbole, not fact. Mot. 9-19. The question of fact versus opinion is a matter of law for the court and thus "appropriately raised at the motion to dismiss stage." *Dfinity Found. v. N.Y. Times Co.*, 702 F. Supp. 3d 167, 174 (S.D.N.Y. 2023).

Drake first misstates the relevant standard. Quoting *Goldfarb v. Channel One Russia*, Drake contends that the "actual meaning" of allegedly defamatory words "must ultimately be

1

determined at trial." 663 F. Supp. 3d 280, 297 (S.D.N.Y. 2023). But the portion of *Goldfarb* on which Drake relies has *nothing* to do with fact versus opinion, and instead relates solely to the distinct question of whether a statement is *capable* of a defamatory meaning. *Id.* On the *relevant* question of fact versus opinion, New York Court of Appeals authority makes clear that the issue is for the *court* to resolve—the *court* must assess "the content of the communication as a whole," including its "tone and apparent purpose" and "the over-all context in which the assertions were made," and "determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." *Mann v. Abel,* 885 N.E.2d 884, 886 (N.Y. 2008). This is an objective test based on the "reasonable" person standard, *id.*, such that even statements that are "capable of being proven false may still be a non-actionable opinion" when assessed in context. *Rapaport v. Barstool Sports, Inc.,* 2021 WL 1178240, at *11 (S.D.N.Y. Mar. 29, 2021), *aff'd*, 2024 WL 88636 (2d Cir. Jan. 9, 2024); *see also* Mot. 9-13.

Drake's next argument—that a cherry-picked sample of anonymous online comments ostensibly constitutes "actual evidence" that listeners believed "Not Like Us" to communicate "factual allegations"—fares no better.

First, Drake misrepresents the *Rapaport* record, stating "the plaintiff in *Rapaport* did not even argue on summary judgment that the allegedly defamatory material was factual based on the online comments." Not so. Rapaport made the argument in both his initial brief, *Rapaport*, ECF No. 104 at 25 (Rapaport's "Podcast was swarmed with thousands of negative reviews and negative comments repeating Defendants' vile statements," which "evidences the extent that audiences perceived Barstool's accusations as true"), and his reply, *Rapaport*, ECF No. 142 at 14-15 (the "ability for Defendants' statements to be understood as true is further evidenced by the fact that

2

their statements were in fact understood as such" based on "thousands of negative reviews and negative comments"). This argument was squarely presented and properly rejected.[1]

Drake's "authorities" are likewise unavailing. In *Feitosa v. Keem*, 2023 WL 2267055 (W.D.N.Y. Feb. 28, 2023), the court (applying California law) elected to take *no account* of social media posts allegedly showing commenters believed the statements to be fact. *Id.* at *5-7. Far from making Drake's point, *Feitosa* reinforces that such comments have no relevance. The *dicta* Drake cites from *Palin v. New York Times Co.*, 940 F.3d 804 (2d Cir. 2019), concerns the distinct issue of whether statements are "capable of being proven false," *id.* at 816, *not* whether their tone and context indicate to a reasonable person that the statements are opinion. *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC,* 151 F. Supp. 3d 287, 296 (E.D.N.Y. 2015), likewise reinforces that online comments are *themselves* opinion, and not properly treated as statements of fact.

Drake's other arguments also fail. His conclusory claim that "the AC plausibly alleges that millions, not a 'handful,' of people understood the lyrics as factual" comes nowhere close to meeting his pleading standard. The only basis he provides is his selection of approximately 60 cherry-picked anonymous comments that are inherently unreliable. *See* Mot. 15.[2] Given this unreliability, "New York courts have consistently [treated] statements made in online forums as statements of opinion rather than fact." *Bellavia* 151 F. Supp. at 295 (collecting cases). That online commentators have an *opinion* about the statements of *opinion* in "Not Like Us" does not magically transform the latter into fact.

---

[1] Drake's other efforts to distinguish *Rapaport* ignores the obvious similarities between the cases. *See* Mot. 12-13. And Drake's argument that *Rapaport* "does not justify dismissal *at the pleadings stage*," Opp. 12, is a red herring, as there was no motion to dismiss in *Rapaport*.
[2] Drake claims "numerous" statements from the "press, commentators and podcasts" "express[] belief in the allegations," but he cites only to four, *see* ¶¶84-87, none of which states such explicit belief.

3

Critically, Drake makes *no* attempt to address the "apparent purpose" of "Not Like Us," presumably because he recognizes that the track's purpose—to *out-diss* Drake—signals to the audience that they are hearing a "highly partisan point of view," *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1281 (N.Y. 1991), rather than a factual assessment by a disinterested observer, *Rapaport*, 2021 WL 1178240 at *12. The tone of "Not Like Us," rife with name calling, anger, vitriol, and exaggerated words and imagery, denotes the same. Drake's attempts to distinguish the remaining cases in UMG's motion, Opp. 11-12, are wholly unpersuasive—as in those cases (even as described by Drake), "Not Like Us" is filled with "heated" and "absurd" "rhetoric[]." These cases further establish that "accusations" and "rumor" are typically classified as opinion. *Brian v. Richardson,* 660 N.E.2d 1126, 1131 (N.Y. 1995). Equally uncompelling is Drake's assertion that cover art with *thirteen* sex offender icons is intended to convey *fact*; the very over-the-top number of icons reflects rhetorical hyperbole. *See Rapaport,* 2021 WL 1178240, at *16.

Drake's argument that "none of UMG's cases involved allegations of pedophilia" is false. In *Torain v. Liu*, 2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46 (2d Cir. 2008), the court held that statements calling plaintiff a "sick pedophile loser" made during a "war of words" were nonactionable opinion. *Id.* at *1, 3. And courts routinely find that tone renders statements nonactionable even where they involve allegations of criminality. *See, e.g.*, *Brian,* 660 N.E.2d at 1131.

As to the broader context, this is an archetypal case where a reasonable listener would "anticipate the use of epithets, fiery rhetoric or hyperbole." *Steinhilber v. Alphonse*, 501 N.E.2d 550, 556 (N.Y. 1986). Faced with this fact, Drake seeks to confine the Court to a self-serving version of events, in which Lamar woke up one morning and simply called Drake a pedophile. But this ignores reality, *even as pled by Drake*. Drake *concedes* that "Not Like Us" was a diss track

released as part of a "rap beef." ¶202. He nevertheless contends the Court cannot take judicial notice of multiple exhibits, including the lyrics of other diss tracks in the feud and related press coverage. But as UMG showed, courts *routinely* take judicial notice of "the fact that press coverage … contained certain information," *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008), "media reports" detailing "widely documented events that plaintiffs themselves reference or generally acknowledge in their pleadings," *Jeffery v. City of New York*, 113 F.4th 176, 179 (2d Cir. 2024), and song lyrics, *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 207 (S.D.N.Y. 2019). Moreover, most of the exhibits are cited in the FAC (Exs. B, H, J-K, and M-P), and thus are also incorporated by reference. RJN at 4-6; *Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020).

Drake never acknowledges the well-established doctrines in these cases. Instead, he again relies on *Feitosa*, but that decision does not even *mention* judicial notice. 2023 WL 2267055. Moreover, *Feitosa* was concerned about an "incomplete record." *Id.* at *7. That is not the case here, where most exhibits are materials cited in the FAC, including lyrics and news coverage concerning a "rap beef" that the FAC acknowledges.

Drake's contention that a reasonable listener would not be familiar with the feud—a ubiquitous news story—likewise blinks reality. *See, e.g.*, Ex. C. Moreover, Drake himself cites several articles and podcasts concerning "Not Like Us," *all* of which reference the broader feud (*see* Exs. B, J, P), as do the anonymous comments on which Drake so fervently relies, *see, e.g.*, ¶75 ("Jesus christ, talk about winning a rap battle").

Drake's argument that "most of the AC's allegations of actionable defamation occurred after…the rap battle ended" again confuses the relevant legal standard. The statements at issue are lyrics in "Not Like Us" and imagery in the video and cover art. *See* Opp. 4. The question for the

5

Court is whether the context and forum in which *those statements* were made signal to a reasonable listener that the statements convey fact or opinion and rhetorical hyperbole. *Steinhilber*, 501 N.E.2d at 553-54. UMG's subsequent promotion of those materials is irrelevant to this analysis.[3]

Finally, the authorities Drake cites for the contention that "[c]ourts have rejected 'context' arguments in similar circumstances" say no such thing. In *Feitosa*, the court concluded that relevant "context" evidence was simply lacking, 2023 WL 2267055 at *6-7, and in *Delgado v. Sonnen*, 2025 WL 1042343, at *7 (S.D.N.Y. Feb. 18, 2025), the court found the statements were *not* made as part of "a heated exchange filled with epithets, fiery rhetoric, and hyperbole" that provides the relevant context here.

At bottom, Drake's arguments appear designed to defer the question of whether the statements are fact or opinion to summary judgment while he seeks invasive and burdensome discovery. The Court should reject this ploy. The materials submitted with UMG's motion are properly subject to judicial notice and the issue is one of law for the Court to decide. Particularly in light of the very real threat that claims such as Drake's chill artistic expression—as powerfully articulated by amici in this matter, *see* ECF. No 52, *and recognized by Drake himself*, *see* Ex. A— the time to dismiss this claim is now. *See* Mot. 9.

B.     **The Statements Are Not Mixed Opinion**

Drake's claim that the lyrics of "Not Like Us" imply they are based on additional facts fails because (i) the tone and context of "Not Like Us" do not imply factual basis, (ii) the statements cannot reasonably be understood to convey undisclosed facts, and (iii) the statements relate to

---

[3] In contrast to the cases upon which Drake relies, the FAC does not allege that UMG's ongoing promotional activities include *unique* defamatory statements distinct from the alleged "Defamatory Material." *Cf. Restis v. Am. Coal. Against Nuclear Iran, Inc.,* 53 F. Supp. 3d 705, 711-14 (S.D.N.Y. 2014); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 590 (E.D.N.Y. 2011).

rumors and incidents that are widely known and that Drake himself acknowledged. *See* Mot. 16-19. Drake does not confront *any* of these arguments.

As to (i), Drake has no answer to UMG's arguments and caselaw concerning tone and context. *See, e.g.*, *LaNasa v. Stiene*, 2025 WL 893456 (2d Cir. Mar. 24, 2025). His claim fails for this reason alone.

As to (ii), Drake again points to his selection of online comments. As discussed, they provide no legal support. *See supra* pp.2-3. Drake's only other argument is to dispute that "Taylor Made Freestyle" can be interpreted as inviting Lamar to discuss rumors about Drake's history with minors, but it is impossible to see how the lyric "[t]alk about [Drake] likin' young girls" is reasonably subject to another interpretation. Ex. I.

As to (iii), Drake creates a strawman, asserting that UMG does not show that Drake was "widely reported…as having engaged in conduct that would make him a pedophile or a registered sex offender[.]" This misstates UMG's argument, which is that "Not Like Us" trades on well-known and widely published rumors and controversies about Drake's involvement with minors. Mot. 17-19. Drake's own statements, *see* Mot. 4-5, and the articles and podcasts cited in *Drake's* FAC and appended to the RJN (Exs. B, J and P) make this plain.

### C.  Drake Does Not Plead Actual Malice

Drake selectively quotes from *Palin* to argue that he does not need to plead that *specific* individuals at UMG acted with actual malice. This is wrong. *Palin* explicitly notes that a plaintiff alleging defamation against a corporation "must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Palin*, 940 F.3d at 810 n.9. Drake's own authorities also undermine his argument. *See Goldfarb*, 663 F. Supp. 3d at 296 (same).

7

Notwithstanding his attempt to re-write his complaint, Opp. 21, Drake has not met this standard. The best he can do are conclusory assertions, on information and belief, that certain people at UMG were "involved" or "played a key role" in the initial publication of the Recording, Image, or Video. ¶¶69, 112. *Nowhere* in his 104 page FAC does Drake allege that any specific person at UMG knew the statements were false or acted with reckless disregard to their falsity at the time that *that person* published the statements. *Palin*, 940 F.3d at 810 n.9. Nor does he plead that anyone at UMG understood "Not Like Us" to convey statements of fact, rather than rhetoric and insult endemic to the genre. *See* Mot. 19; *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1194-95 (9th Cir. 1989).

Drake's argument that he pleads actual malice "based on the different points in time when UMG published" the impugned statements fails for the same reason. To the extent any actions by UMG to promote "Not Like Us" since the release of the track and music video constitute a distinct defamatory statement (they do not, as discussed, *supra* n.3), Drake has made no attempt to identify the specific individuals at UMG responsible for these purported activities, let alone allege that any such individuals acted with actual malice.

## II.    DRAKE FAILS TO STATE A CLAIM FOR HARASSMENT

Drake makes only a cursory argument that there is a private right of action under the New York standard. His sole response to binding caselaw holding that "alternative [public] enforcement mechanisms" foreclose implied rights of action, *see Ortiz v. Ciox Health LLC*, 179 N.E.3d 635, 638-39 (N.Y. 2021), is to deride it as "circular." But under Drake's logic, virtually every criminal statute would have a private right of action, which is obviously wrong. *See* Mot. 20.

Drake relies on inconclusive *dicta* in *Galella v. Onassis*, 487 F.2d 986, 994 n.11 (2d Cir. 1972), and cases citing it, but none of those cases grapples with the New York standard for implied rights of action—a standard that post-dates *Galella*. And *Galella* itself only *cf.*-cited a Fourth

8

Department case affirming *dismissal* of a harassment claim without addressing the private-right-of-action issue. *See Long v. Beneficial Finance Co.*, 330 N.Y.S.2d 664 (App. Div. 1972).

Drake's other arguments fare no better. He cannot cite to anywhere in his pleading where he alleges the requisite intent to harass him, rather than an intent to "devalue" his brand. Drake also does not address binding caselaw that the harassment statute only criminalizes *conduct* without regard to content (*e.g.*, repeated telephone calls), and *not* pure speech. *See* Mot. 21. Drake further concedes that his claims fail the constitutional test for incitement, but asserts that this is irrelevant because "Not Like Us" ostensibly includes false speech. Drake cites no authority for a falsity exception to incitement, and his harassment claim concerns "calls for violence against Drake" independent of falsity in any event. ¶248. Lastly, Drake cannot explain how his allegations of UMG's financial purpose (whether "corrupted" or otherwise) satisfy the legal standard of "*no legitimate purpose*," which requires that the *sole* motive be "to hound, frighten, intimidate or threaten." *People v. Stuart*, 797 N.E.2d 28, 41 (N.Y. 2003).

## III. DRAKE FAILS TO STATE A CLAIM UNDER N.Y. G.B.L. § 349

Drake argues he may plead his G.B.L. § 349 claim based on "information and belief." Opp. 23. But as the caselaw UMG cited (and Drake ignores) explains, "such allegations must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation." *Boehm v. Sportsmem, LLC*, 2019 WL 3239242, at *2 n.1 (S.D.N.Y. July 18, 2019). The case Drake cites likewise acknowledges that "a factual basis for the assertion pleaded" is necessary. *Asset Co. v. Katzoff*, 2025 WL 919489, at *11 (S.D.N.Y. Mar. 26, 2025). As to the limited factual allegations Drake identifies in support (a podcast and Twitter posts—only one of which mentions UMG), Drake never contests caselaw cited by UMG (*see* Mot. 23) showing that these allegations are insufficient.

9

Drake likewise cannot defend his failure to allege materiality. Drake asserts that it is enough to allege that "reasonable music consumers do not assume" that labels are making "clandestine, back-channel payments." However, merely alleging that "consumers are not likely to know" some fact is not enough to establish "material[ity]" because "[t]here is no obligation under GBL § 349 … to provide whatever information a consumer might like to know." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 151 (S.D.N.Y. 2022). Tellingly, Drake's materiality argument only quotes the "objective definition of 'misleading'" for § 349 claims, *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015), but materiality is a separate element that he has failed to allege.[4]

Finally, UMG demonstrated that the two injury theories in Drake's complaint (¶¶262-63) are unsustainable. Mot. 24-25. In response, Drake effectively abandons both for a new theory: that "artificial streams boosted the Recording's status on Spotify, causing consumers to listen to and prioritize the Recording under false pretenses, ¶¶173, 181, which, in turn, tainted the 'streaming data' used to 'proportionally allocate and disburse payments,'" to Drake. Opp. 24-25. This is unpled and therefore improper. In any event, Drake still fails to allege "injury resulting from the" supposed deception. *Singh v. City of New York*, 217 N.E.3d 1, 7 n.5 (N.Y. 2023). He does not attempt to explain how the song's "Spotify status" and resulting streams are caused by UMG's allegedly false "representations about the Recording's popularity," ¶256. He further does not explain how the supposed "false pretenses" (as opposed to the botted streams themselves) caused consumers to stream the song.

Drake's new theory also runs afoul of the rule against "indirect" injuries because it is both "contingent on harm to third parties" and "remote[]." *City of New York v. Smokes-Spirits.Com,*

---

[4] Because a § 349 defendant must "possess the allegedly omitted information." *Dwyer*, 598 F. Supp. 3d at 151, Drake is wrong to claim that he need not allege UMG's knowledge of alleged misconduct concerning Lamar, which constitutes almost all of Drake's (meager) fact allegations.

10

*Inc.*, 911 N.E.2d 834, 838-39 (N.Y. 2009). Drake's theory requires a "boosted" "status on Spotify," which then led to more streams, which then led to "tainted" streaming data, which then led to Spotify paying Drake lower royalties. Drake invokes a line of cases allowing a competitor to sue over lost customers when the defendant's misrepresentations resulted in a "[w]ithholding of trade" and "[i]t is the withholding of trade, rather than any consumer's subsequent purchase of a competitor's product, that produces plaintiff's injury." *Casper Sleep v. Mitcham*, 2016 WL 7188788, *2 (S.D.N.Y. Nov. 17, 2016). To the extent these cases are somehow reconcilable with *Smokes-Spirits.Com*, Drake's theory is still far more remote because it involves many "further steps." *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018) (rejecting similar argument). And it is not based on mere "withholding" but rather subsequent consumer action: more streams. As in *Smokes-Spirits.Com*, 911 N.E.2d at 838, "had the allegedly deceived consumers not been improperly induced to [stream "Not Like Us"] then [Drake] would have no claim to lost [royalty] revenue," making Drake's alleged injury impermissibly "indirect."

## CONCLUSION

The amended complaint should be dismissed with prejudice.

11

Dated: June 11, 2025

*/s/ Rollin A. Ransom*
Rollin A. Ransom (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
350 South Grand Street
Los Angeles, CA 60603
Telephone: (213) 896-6000
Facsimile: (213) 896-6600
Email: rransom@sidley.com

Nicholas P. Crowell
James R. Horner
Katelin Everson
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: ncrowell@sidley.com
jhorner@sidley.com
keverson@sidley.com

*Counsel for Defendant UMG Recordings, Inc.*

## WORD COUNT VERIFICATION

    I, Rollin A. Ransom, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1, there are 3,500 words in the document.