UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
:
AUBREY DRAKE GRAHAM,
:
        Plaintiff,
:
                                                      :      No. 1:25-cv-399-JAV
        v.
:
UMG RECORDINGS, INC.,
:
        Defendant.
:
---------------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO SERVE A RULE 45 SUBPOENA ON THIRD PARTY KOJO MENNE ASAMOAH BY ALTERNATIVE MEANS**

Michael J. Gottlieb
Anna Gotfryd (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
agotfryd@willkie.com

Brady Sullivan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
bsullivan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

BACKGROUND ...........................................................................................................................1
    A.      Plaintiff Identified Mr. Asamoah as a Relevant Witness.................................................1
    B.      Plaintiff Has Made Exhaustive Efforts to Locate and Serve Mr. Asamoah Without Success..........................................................................................................2
ARGUMENT.................................................................................................................................7
    A.      Service on Mr. Asamoah Through Traditional Methods is Impracticable. ......................9
    B.      Service by Alternative Means is Reasonably Calculated to Ensure that Mr. Asamoah Receives Actual Notice of the Subpoena..........................................................9
CONCLUSION..............................................................................................................................11

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*In re Bystolic Antitrust Litig.*,
   No. 20-CV-5735 (LJL), 2021 WL 4296647 (S.D.N.Y. Sept. 20, 2021) ...................................8

*Cordius Trust v. Kummerfeld*,
   No. 99 Civ. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) ........................................8

*Elliott v. Cartagena*,
   No. 19 CIV. 1998 (NRB), 2021 WL 12103903 (S.D.N.Y. Feb. 5, 2021) ................................8

*Freeman v. Giuliani*,
   No. 24-CV-06563 (LJL) (S.D.N.Y. Nov. 21, 2024) ................................................................8

*GP Acoustics (US), Inc. v. J&V Audio, Inc.*,
   No. 17 Civ. 05305 (AKH), 2017 WL 11570459 (S.D.N.Y. Sept. 13, 2017) ........................8, 9

*JPMorgan Chase Bank, N.A. v. IDW Group, LLC*,
   No. 08 CIV. 9116 (PGG), 2009 WL 1313259 (S.D.N.Y. May 11, 2009) ................................8

*Juniper Time Inv., LLC v. Wellington*,
   No. 7:19-CV-3393 (NSR), 2022 WL 20582421 (S.D.N.Y. July 27, 2022) .............................8

*Platina Bulk Carriers Pte. Ltd., v. Praxis Energy Agents DMCC*,
   No. 20 Civ. 4892 (NRB), 2020 WL 6083275 (S.D.N.Y. Oct. 15, 2020) .................................9

*SEC v. Pence*,
   322 F.R.D. 450 (S.D.N.Y. 2017) .............................................................................................9

*Sirius XM Radio Inc. v. Aura Multimedia Corp.*,
   339 F.R.D. 592 (S.D.N.Y. 2021) ....................................................................................7, 8, 9

*Tube City IMS, LLC v. Anza Cap. Partners, LLC*,
   No. 14-cv-1783 (PAE), 2014 WL 6361746 (S.D.N.Y. Nov. 14, 2014) ..................................8

**Other Authorities**

C.P.L.R. §§ 308(1)-(4) ....................................................................................................................7

C.P.L.R. § 308(5) .........................................................................................................................7, 8

Fed. R. Civ. P. 4(e)(1), (2) ..............................................................................................................7

Plaintiff Aubrey Drake Graham ("Plaintiff") respectfully submits this memorandum of law in support of his motion for leave to serve a Rule 45 subpoena on third party Kojo Menne Asamoah by alternative means.

## BACKGROUND

On January 15, 2025, Plaintiff commenced this action against UMG Recordings, Inc. ("UMG" or "Defendant") asserting claims for defamation, harassment in the second degree, and violation of the New York General Business Law § 349 and filed an amended complaint on April 16 alleging the same. ECF Nos. 1, 41. Plaintiff alleges, *inter alia*, that UMG published and promoted the Defamatory Material,[1] which contains statements about Plaintiff that are false and defamatory *per se* and that it did so with actual malice. Plaintiff further alleges that in publishing and promoting the Defamatory Material, UMG engaged in deceptive acts and practices in the conduct of business, trade, and commerce by covertly financially incentivizing third parties to play, stream, and promote the Recording and then by making materially false and misleading representations and omissions to consumers.

### A. Plaintiff Identified Mr. Asamoah as a Relevant Witness.

Plaintiff has identified Mr. Kojo Menne Asamoah as a relevant witness for his claim of deceptive business practices. Mr. Asamoah is listed as a witness on Plaintiff's initial disclosures. Ex. 2.[2] Based on the information available to Plaintiff today, Plaintiff believes that Mr. Asamoah possesses knowledge relating to UMG's use of covert tactics to promote the Defamatory Material, including because Plaintiff believes that Mr. Asamoah was involved in directing payments and/or

---

[1] All capitalized terms not defined herein have the meanings set forth in Plaintiff's Amended Complaint (ECF No. 41).
[2] All Exhibit cites are to exhibits attached to the declaration of M. Annie Houghton-Larsen ("Decl.") filed in support hereof.

- 1 -

financial incentives from UMG to third parties involved in online botting for the purpose of artificially inflating the streaming numbers of the Recording. Plaintiff believes that Mr. Asamoah engaged in this behavior through and/or in connection with his relationship with Ramon Alvarez-Smikle, the Executive Vice President and Head of Digital Marketing of UMG's Interscope Records. Mr. Alvarez-Smikle is listed as a witness on both Plaintiff's and UMG's initial disclosures. Exs. 2, 3.

Plaintiff has been attempting to serve a subpoena *duces tecum* on Mr. Asamoah requesting 10 categories of documents (the "Subpoena"). Ex. 1. The requests in the Subpoena are targeted at discovering evidence of UMG's use of bots, payola, and other covert methods to promote the Defamatory Material. *See id*.

### B. Plaintiff Has Made Exhaustive Efforts to Locate and Serve Mr. Asamoah Without Success.

Shortly after the commencement of discovery in this action, Plaintiff began serving discovery requests, including through the issuance of Rule 45 subpoenas to third parties. Decl. ¶ 4.[3] Plaintiff began attempting to serve the Subpoena on Mr. Asamoah on March 14, 2025. Decl. ¶ 5.

Despite repeated efforts to serve Mr. Asamoah at multiple locations over the course of many weeks at considerable cost to Plaintiff, Plaintiff has been unable to serve the Subpoena on Mr. Asamoah. Decl. ¶ 9. Specifically, between March 14, 2025 and April 10, 2025, Plaintiff attempted to serve the Subpoena on Mr. Asamoah over a dozen times at eight addresses in two states with the assistance of two different firms. See Ex. 4 (the "Capitol Process Aff."), Ex. 5 (the "Nardello Aff."). Plaintiff has employed both Nardello & Co. ("Nardello"), an experienced private

---

[3] The deadline for completing all fact discovery is February 13, 2026. ECF No. 38. The Court stated that it is "generally [] very loath to extend fact-discovery schedules." ECF No. 36 Initial Pre-trial Conference Tr. at 21:11-12.

investigative firm, and Capitol Process Services, Inc. ("Capitol Process"), a well-established process server, in his efforts to locate and serve Mr. Asamoah. Decl. ¶¶ 7-8. In total, Plaintiff estimates that he has incurred costs in excess of $75,000 in connection with these efforts. Ex. 5 ¶46.

- **Address 1:** On March 14, 15, and 17, 2025, Capitol Process attempted to serve Mr. Asamoah at a business address located at 722 Jackson Street, Los Angeles, California 90012. Ex. 4 at 1. Nardello identified this address as belonging to Hardpink Records, a company with which Mr. Asamoah has been affiliated. Ex. 5 ¶ 8. During each of the three service attempts, no one answered the door. Ex. 4 at 1. Following these attempts, for six days between March 29 and April 9, 2025, Nardello conducted surveillance at this address. Ex. 5 ¶¶ 21-27. During this surveillance, Nardello uncovered additional evidence of Mr. Asamoah's association with the address—including by speaking with a woman who stated that Mr. Asamoah was the owner of the business at this address. Ex. 5 ¶¶ 21-27.

- **Address 2:** On March 18, 2025, Capitol Process attempted to serve Mr. Asamoah at an apartment located at 215 West 6th Street, Apt. 1011, Los Angeles, California 90014. Ex. 4 at 1. Nardello identified this address as Mr. Asamoah's last known residential address. Ex. 5 ¶ 6. During the service attempt, the apartment appeared to be vacant. Ex. 4 at 1.

- **Address 3:** On March 18, 2025, Capitol Process attempted to serve Mr. Asamoah at 3371 Glendale Boulevard, #206, Los Angeles, California 90039. Ex. 4 at 1. Nardello identified this address as the billing address for a current telephone number for Mr. Asamoah and it is the address of a number of companies organized

by Mr. Asamoah between 2022 and 2024. Ex. 5 ¶ 6. Capitol Process reported that this location is a SpeedCo Fax & Park, a packing and shipping location. Ex. 4 at 1. The SpeedCo Fax & Park manager stated that Mr. Asamoah rents Box #206. *Id*.

- **Address 4:** On March 21 and 22, 2025, Capitol Process attempted to serve Mr. Asamoah at 416 E Broadway, #102, Glendale, California 91205, *id*., an address Plaintiff believed may have been associated with Mr. Asamoah. No one answered the door. *Id*. Capitol Process spoke with an individual in the leasing office, who confirmed that Mr. Asamoah is not listed on this unit or any other unit in the building. *Id*. at 1-2.

- **Address 5:** On March 20, 2025, Capitol Process attempted to serve Mr. Asamoah on two occasions at a home located at 14406 Kings Crossing Boulevard, Boyds, Maryland 20841. *Id*. Nardello identified this home as being owned by Mr. Asamoah's parents and as a historic address for Mr. Asamoah—meaning that Mr. Asamoah has used this address as his home address in the past. Ex. 5 ¶ 7. On the first attempt, no one answered the door, but there was a black Range Rover parked in the driveway. Ex. 4 at 1. On the second attempt, a man identifying himself as Mr. Asamoah's brother, Kofi, answered the door. *Id*. This man stated that Mr. Asamoah does not reside in Maryland, but refused to provide his current address. *Id*.

- **Address 6:** On March 21, 2025, Capitol Process attempted to serve Mr. Asamoah at a business located at 117 N Frederick Avenue, Gaithersburg, Maryland 20877. *Id*. This is the location of Savanna International Market, a business incorporated by Mr. Asamoah's father Kofi. Ex. 5 ¶¶ 10-11. Capitol Process inquired about Mr.

Asamoah's whereabouts at the Savanna International Market and a man, who stated his name was Kofi, requested that Capitol Process leave the premises. Ex. 4 at 1.

- **Address 7:** On March 21, 2025, Capitol Process attempted to serve Mr. Asamoah at an apartment located at 18001 Cottage Garden Drive, Apt. 103, Germantown, Maryland 20874-5803, *id*., an address Plaintiff believed may have been associated with Mr. Asamoah. A man who identified himself as the current resident answered the door and stated that he has lived at this address for four years and has never heard of Mr. Asamoah. *Id*.

- **Address 8:** On or about April 3, 2025, Nardello located another commercial address appearing to be associated with Mr. Asamoah: 1667 Blake Avenue, Los Angeles, California 90031, and began active surveillance at this address. Ex. 5 ¶¶ 28-29. Following this lead, Nardello surveilled the address for six consecutive days from April 3 to April 10, 2025. *Id*. ¶¶ 29, 34, 35. During surveillance, Nardello noted that this location appeared to be commercially active, with individuals entering and exiting the premise, and identified several vehicles registered to individuals connected to the music business. *Id*. ¶¶ 29-44. On April 7, 2025, Nardello spoke to a woman working in the building, who acknowledged that she had heard of Mr. Asamoah, but stated that she did not know him personally and did not know anyone who might have information about his current location. *Id*. ¶¶ 32, 37. On April 10, 2025, Nardello observed a Range Rover (with a different license plate number than the one seen at 14406 Kings Crossing Boulevard, Boyds, Maryland 20841) at this address, which records searches later confirmed is registered to Mr. Asamoah. *Id*. ¶ 39. Nardello searched the California Department

of Motor Vehicle Records and confirmed that this vehicle is not registered to any address. *Id.*

Additionally, as part of Plaintiff's efforts to locate and serve Mr. Asamoah, Plaintiff obtained three email addresses believed to be associated with Mr. Asamoah: kojo@hard.pink, djvinylproductions@gmail.com, and info@hard.pink. Decl. ¶ 12. Counsel for Plaintiff sent an email to each of these email addresses. *Id.* Counsel for Plaintiff did not receive any bounce-back (or response) from any of the three emails. *Id.*

Plaintiff is not aware that Mr. Asamoah is represented by counsel, Decl. ¶ 3, let alone counsel who would consent to service on his behalf.

\*\*\*

Given Plaintiff's extensive and unsuccessful attempts to serve Mr. Asamoah through traditional means, Plaintiff now respectfully requests the Court permit Plaintiff to serve Mr. Asamoah through alternative means reasonably calculated to ensure that Mr. Asamoah receives actual notice of the Subpoena. Specifically, Plaintiff respectfully requests leave to serve Mr. Asamoah by serving him with the Subpoena through each of the following methods (together, the "Alternative Means"):

1. By certified mail to the following five addresses believed to belong to Mr. Asamoah personally or professionally, or to belong to members of Mr. Asamoah's nuclear family (together, the "Physical Addresses"):

    a. 1667 Blake Avenue, Los Angeles, California 90031 (Address 8);

    b. 722 Jackson Street, Los Angeles, California 90012 (Address 1);

    c. 3371 Glendale Boulevard, #206, Los Angeles, California 90039 (Address 3);

      d.      14406 Kings Crossing Boulevard, Boyds, Maryland 20841 (Address 5); and

      e.      117 N Frederick Avenue, Gaithersburg, Maryland 20877 (Address 6);

2.      By affixing the subpoena to the door at each of the Physical Addresses; and

3.      By email to three email addresses believed to be associated with Mr. Asamoah (together, the "Email Addresses"): kojo@hard.pink; djvinylproductions@gmail.com; and info@hard.pink.

## ARGUMENT

The Court should permit Plaintiff to serve Mr. Asamoah by the Alternative Means because service by traditional means is impracticable, and the Alternative Means are reasonably calculated to ensure that Mr. Asamoah receives actual notice of the Subpoena. An individual located within a judicial district of the United States may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1), (2). In New York, the state in which this Court is located, service may be effected upon a person by: (1) personal service; (2) delivery of the summons to a "person of suitable age and discretion at the [individual's] actual place of business, dwelling or usual place of abode" and mailing it to the individual; (3) service on an agent; or (4) "affixing the summons" to the individual's actual place of business, dwelling or usual abode and mailing it to the individual. C.P.L.R. §§ 308(1)-(4).

A court may direct alternative methods of service where service by traditional means is "impracticable." C.P.L.R. § 308(5). "The meaning of 'impracticable' depends on the facts and circumstances of a particular case. In general, plaintiff must make some showing that the other prescribed methods of service could not be made." *Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 339 F.R.D. 592, 593 (S.D.N.Y. 2021) (cleaned up). "A plaintiff can demonstrate that service by conventional means is 'impracticable' by making diligent, albeit unsuccessful, efforts

to obtain information regarding a defendant's current residence, business address or place of abode." *GP Acoustics (US), Inc. v. J&V Audio, Inc.*, No. 17 Civ. 05305 (AKH), 2017 WL 11570459, at *2 (S.D.N.Y. Sept. 13, 2017).

"The decision to allow alternative service is committed to the sound discretion of the district court." *In re Bystolic Antitrust Litig.*, No. 20-CV-5735 (LJL), 2021 WL 4296647, at *1 (S.D.N.Y. Sept. 20, 2021) (internal citations omitted). Courts routinely find that alternative service, including by email, is appropriate where the moving party provides evidence that the recipient is likely to receive the service through the alternative method. *See, e.g.*, *In re Bystolic Antitrust Litig.*, 2021 WL 4296647, at *2; *Juniper Time Inv., LLC v. Wellington*, No. 7:19-CV-3393 (NSR), 2022 WL 20582421, at *1 (S.D.N.Y. July 27, 2022); *Sirius XM Radio Inc.*, 339 F.R.D. at 593. With respect to Rule 45 subpoenas, "district courts in this Circuit have held that, in appropriate circumstances, alternative forms of service may be used, as long as they are calculated to provide timely actual notice." *Tube City IMS, LLC v. Anza Cap. Partners, LLC*, No. 14-cv-1783 (PAE), 2014 WL 6361746, at *2 (S.D.N.Y. Nov. 14, 2014) (collecting cases); *see also* Memorandum and Order at 4-6, *Freeman v. Giuliani*, No. 24-CV-06563 (LJL) (S.D.N.Y. Nov. 21, 2024) (granting alternative service by email and FedEx overnight delivery to the third party's home address in St. Louis, Missouri under Rule 45 and C.P.L.R. § 308(5)); *Elliott v. Cartagena*, No. 19 CIV. 1998 (NRB), 2021 WL 12103903, at *1 (S.D.N.Y. Feb. 5, 2021) (permitting alternative service of subpoena via (1) regular and certified mail at the nonparty's known addresses; (2) the nonparty's known business email; and (3) Facebook, where the nonparty was recently active); *Platina Bulk Carriers Pte. Ltd., v. Praxis Energy Agents DMCC*, No. 20 Civ. 4892 (NRB), 2020 WL 6083275, at *3 (S.D.N.Y. Oct. 15, 2020) (granting leave to serve the defendants by alternative means, including by email); *JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 CIV. 9116

(PGG), 2009 WL 1313259, at *3 (S.D.N.Y. May 11, 2009) (permitting alternative service by mail and by leaving a copy with a person of suitable age and discretion after nine failed attempts at two locations); *Cordius Trust v. Kummerfeld*, No. 99 Civ. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) (permitting alternative service by certified mail because personal delivery is not the exclusive method for service of subpoena under Rule 45).

### A. Service on Mr. Asamoah Through Traditional Methods is Impracticable.

Service on Mr. Asamoah through traditional methods is impracticable. *See Sirius XM Radio Inc.*, 339 F.R.D. at 593 . As detailed at length above, Plaintiff has attempted service through traditional methods on Mr. Asamoah for weeks, at multiple personal and business addresses in multiple states, and at multiples times of day. *Supra* at 2-6. Plaintiff has utilized an investigative firm and a service firm for these efforts. Plaintiff has exhausted efforts to obtain information regarding Mr. Asamoah's current residence. *See generally* Nardello Aff.; *see also GP Acoustics (US), Inc.*, 2017 WL 11570459, at *2. Plaintiff is not aware that Mr. Asamoah is represented by counsel, let alone counsel who would consent to service on his behalf. *Supra* at 6.

### B. Service by Alternative Means is Reasonably Calculated to Ensure that Mr. Asamoah Receives Actual Notice of the Subpoena.

The Alternative Means are reasonably calculated to ensure that Mr. Asamoah receives actual notice of the Subpoena. *See SEC v. Pence*, 322 F.R.D. 450 (S.D.N.Y. 2017). First, Plaintiff requests to send the Subpoena both by certified mail and to affix the Subpoena to the door at the Physical Addresses believed to be associated with Mr. Asamoah, his nuclear family, or his business:

- 1667 Blake Avenue, Los Angeles, California 90031: a commercial space where Nardello observed a vehicle registered to Mr. Asamoah on April 10, 2025, in

addition to vehicles registered to other individuals in the music business, *see* Ex. 5 ¶¶ 28-44;

- 722 Jackson Street, Los Angeles, California 90012: a commercial space that is associated with Mr. Asamoah's business Hardpink Records, and where one individual told Nardello that she worked for a record label and another individual told Nardello that Mr. Asamoah was the property owner, *see id.* ¶¶ 25-27;

- 3371 Glendale Boulevard, #206, Los Angeles, California 90039: a mailbox that is registered to Mr. Asamoah as a renter, *see* Ex. 4 at 1;

- 14406 Kings Crossing Boulevard, Boyds, Maryland 20841: Mr. Asamoah's parents' residence, where Capitol Process spoke with Mr. Asamoah's brother, *see* Ex. 5 ¶ 7; Ex. 4 at 1; and

- 117 N Frederick Avenue, Gaithersburg, Maryland 20877: a market owned by Mr. Asamoah's parents, where Capitol Process spoke with Mr. Asamoah's father, *see* Ex. 5 ¶ 11; Ex. 4 at 1.

Second, Plaintiff requests to send the Subpoena by email to three email addresses associated with Mr. Asamoah and his last known business ventures. Counsel for Plaintiff confirmed that these email addresses remain operative and are therefore likely to reach Mr. Asamoah because counsel did not receive any bounce-back (or response) after emailing each address. *Supra* at 6.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order authorizing Plaintiff to serve Mr. Asamoah with copies of the Subpoena through the Alternative Means.

Dated: July 14, 2025

Respectfully Submitted,

/s/*Michael J. Gottlieb*
Michael J. Gottlieb
Anna Gotfryd (*pro hac vice*)
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgottlieb@willkie.com
agotfryd@willkie.com

Brady Sullivan
M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY 10019
(212) 728-8000
bsullivan@willkie.com
mhoughton-larsen@willkie.com

*Attorneys for Plaintiff*

- 12 -

## WORD COUNT VERIFICATION

    I, Michael J. Gottlieb, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1 and Section 5(A) of the Court's Individual Rules and Practices in Civil Cases, there are 2,888 words in the document.