# WILLKIE FARR & GALLAGHER LLP

1875 K Street, NW
Washington, D.C. 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

August 12, 2025

**VIA ECF**

Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Graham v. UMG Recordings, Inc.*, 1:25-cv-399 (JAV)

Dear Judge Vargas:

Pursuant to Sections 3(A) and 6(B) of the Court's Individual Rules and Practices in Civil Cases and Federal Rules of Civil Procedure 26 and 37, Plaintiff Aubrey Drake Graham ("Plaintiff" or "Drake") respectfully requests an order compelling Defendant UMG Recordings, Inc. ("Defendant" or "UMG") to collect, review, and produce the responsive custodial documents of UMG's Chairman and Chief Executive Officer, Lucian Grainge ("Grainge").[1] UMG's refusal to permit relevant discovery into its CEO's files is unsupported by law and would prejudice Plaintiff's ability to test and prove his claims. Plaintiff's Amended Complaint ("AC") contains numerous allegations specific to Grainge, including his role in and knowledge of the scheme to defame and harass Plaintiff, and UMG's use of deceptive business practices regarding the same. *See, e.g.*, ¶¶ 13, 20, 22, 51, 69, 112, 125, 164, 209, 222–23.[2] UMG's insistence on shielding Grainge from document discovery is unfair, unwarranted, and inconsistent with fundamental principles of discovery.

Under the Federal Rules of Civil Procedure, Plaintiff is entitled to discovery regarding any nonprivileged matter relevant to any claim or defense with relevance being broadly construed. *See* Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *Lindsey v. Butler*, No. 11 CIV. 9102 (ER), 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017). Once Plaintiff has shown relevance, the burden is on UMG to show why the requested discovery is not justified. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012).

---

[1] In addition to meeting and conferring by telephone and through numerous letters on the topic, *see* Exs. 2, 4, 8, the parties participated in a telephonic meet and confer on August 7 at 4:00 p.m. for 15 minutes. In attendance were: Brady Sullivan, M. Annie Houghton-Larsen, Anna Gotfryd, Nick Crowell, and Katelin Everson. During the conference, Plaintiff informed Defendant that Plaintiff believed the parties were at an impasse and that Plaintiff would be requesting relief from the Court. On August 11, Defendant confirmed that the parties were at an impasse.

[2] All citations to "¶ _" are to the AC, ECF No. 41.

The AC is replete with allegations regarding Grainge's role in approving the publication and promotion of the Defamatory Material,[3] his position of control over the artists UMG represents and the workplace code by which UMG operates, and his knowledge of the ongoing harm to Drake and Drake's denials of the allegations in the Defamatory Material. The AC alleges that Grainge was "involved in the initial publication of the Recording and Image," and Video, ¶¶ 69, 112. The AC alleges that UMG has always known that Drake is not a pedophile and had no history of sexual abuse allegations and that UMG's substantial investment in Drake as one of its flagship artists evidences as much. ¶¶ 120–24. The AC connects these allegations directly to Grainge, alleging that, in 2022, he praised Drake's contract extension by calling him one of the "biggest artists of today" and expressing that "UMG couldn't be more excited about what lies ahead" for its relationship with Drake. ¶ 51. The AC also alleges that Grainge is the author of the introduction to the UMG Code of Conduct, which states that UMG does not tolerate "human rights abuses such as . . . human trafficking and unsafe or unfair work practices" and only conducts "business with partners . . . who share our commitment to protecting human rights." ¶ 122. At the beginning of the Code of Conduct, Grainge says that UMG's leadership should be held "accountable for the decisions we make and how we conduct ourselves." ¶ 209. The AC alleges that Grainge has personal knowledge of the massive harm created by false accusations of sexual misconduct and how such accusations can destroy someone's reputation instantly: "a single lie can destroy a reputation of integrity and that while it takes years to build a reputation, it can be ruined in five minutes." ¶¶ 20, 125, 222–23. The AC connects UMG's incentive "to devalue Drake's music and brand in order to gain leverage in negotiations for an extension" of his contract, ¶¶ 52, 213, with Grainge, alleging that he is well known for the "encouragement of competition between the UMG record labels," ¶ 49. The AC alleges direct involvement in the Grammy publication by Grainge, who was present for the event and captured on video celebrating the Recording winning the Grammy for Record of the Year. ¶ 164. The AC also alleges in detail the legal demands sent by Plaintiff to senior ranking UMG officials in July and August of 2024. ¶¶ 203-15. There is no doubt that Grainge was made aware of these detailed denials from Drake, as well as Drake's description of the harm he had suffered as a result of the false allegations. Since the filing of the AC, Plaintiff now also has reason to believe that Grainge was personally involved in decisions made regarding the marketing and promotion of the Recording around its release. Accordingly, Grainge is likely to have documents responsive to many of Plaintiff's Requests for Production, including, just by way of example, Request Nos. 2, 8, 19, 20, and 36. *See* Exs. 1, 6, and 9.

Additionally, UMG has taken the position that Plaintiff must prove that particular individuals at UMG acted with actual malice with respect to UMG's publication and republication of the Recording. ECF No. 43 at 19; ECF No. 59 at 7-8. Given that Plaintiff has alleged Grainge to be one of the individuals at UMG who acted with actual malice, Plaintiff is entitled to seek discovery into Grainge's files for the purpose of proving Grainge's actual malice.

---

[3] Any capitalized terms not defined herein shall have the meaning assigned in the AC.

UMG cannot carry its burden to justify its refusal to search Grainge's files.

Initially, UMG argued that Grainge was exempt from document discovery because he is an "apex" custodian, Ex. 2, but Plaintiff understands UMG has since dropped this (meritless) objection. *See, e.g.*, *Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 382 (S.D.N.Y. 2011); *Vaigasi v. Solow Mgmt. Corp.*, No. 11 CIV. 5088 (RMB)(HBP) 2016 WL 616386, at *16 (S.D.N.Y. Feb. 16, 2016); *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015); *Bouchard v. N.Y. Archdiocese*, No. 04 CIV. 9978 (CSH)(HBP), 2007 WL 2728666, at *3 (S.D.N.Y. Sept. 19, 2007).

UMG is now taking the position that Grainge had "no *meaningful* involvement in the matters and decisions at issue in this litigation"—having previously argued that he had "*no role* in the matters at issues in this litigation,"—and that "any (limited) relevant information" is "expected" to be "cumulative" or "duplicative" of John Janick (CEO of Interscope), Monte Lipman (CEO of Republic), or other unspecified custodians. *Compare* Ex. 10 at 2 (emphasis added) *with* Ex. 8 at 2 (emphasis added).

As set forth above, UMG's self-serving, unsupported, and untested factual averments as to its CEO's lack of "meaningful involvement" (whatever that may mean) run counter to Plaintiff's allegations, and "opposition to a discovery motion is not the proper forum for raising challenges to the viability of [plaintiff's] claims, nor are such challenges proper grounds to preclude otherwise appropriate discovery." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48–49 (E.D.N.Y. 2018). Moreover, to Plaintiff's knowledge, UMG has made no effort to test its claims about Grainge's documents, such as by running search terms across Grainge's emails and text messages from the relevant time period.

UMG's "expect[ation]" that any responsive documents in Grainge's possession are "cumulative" and "duplicative" of documents in other custodial files is meaningless and irrelevant. Any electronic discovery vendor's standard deduplication software will eliminate documents that are *literally* duplicative, i.e., an email from John Janick to Grainge. Beyond that, Plaintiff is entitled to all other responsive documents in Grainge's possession. The very fact that Grainge possesses responsive documents—whether or not the information contained in those documents is duplicative or cumulative of information that may eventually be produced from other custodial files—is independently relevant to Plaintiff's claims because it reveals Grainge's knowledge and state of mind. Plaintiff cannot learn what he needs to learn in discovery from other custodians. And if Grainge himself communicated about responsive topics, those communications are by definition unique to Grainge (and thus not duplicative).

UMG also incorrectly claims that Plaintiff agreed to drop his request for Grainge's documents until after UMG made other productions. Plaintiff made no such agreement and has always reserved his rights with respect to Grainge's documents, as reflected in the parties' extensive meet and confer correspondence. *See* Exs. 2, 3, 4, 5, 7, and 8.

***

There is a practical solution to this dispute. If, as UMG claims, Grainge had "no meaningful involvement in the matters and decisions at issue in this litigation," then UMG will have little, if anything, to produce to Plaintiff from his files, and the review process would impose minimal burden on UMG. Indeed, the parties have already agreed on a preliminary set of search terms, many of which cover a less-than-one-year time period. Likewise, if, as UMG also claims, Grainge *does* have responsive documents, but they are truly "duplicative" of documents from other custodial files, any "duplication can be easily eliminated through the deduping process." *Felder v. Warner Bros. Discovery, Inc.*, No. 23 CIV. NO. 08487 (AT) (GS), 2025 WL 1718098, at *10 (S.D.N.Y. June 20, 2025).

For the foregoing reasons, the Court should enter an order compelling UMG to promptly collect, review, and produce documents from Grainge responsive to Plaintiff's RFPs.

Respectfully submitted,

**Willkie Farr & Gallagher LLP**
/s/ *Michael J. Gottlieb*

*Counsel for Plaintiff*

cc: All counsel of record via ECF