# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
AUBREY DRAKE GRAHAM,

          Plaintiff,

    v.                                Civil Action No. 1:25-cv-399-JAV

UMG RECORDINGS, INC.,

          Defendant.

------------------------------------------------------------x

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION**
**TO DEFENDANT UMG RECORDINGS, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Aubrey Drake Graham ("Drake" or "Plaintiff") hereby requests that Defendant UMG Recordings, Inc. ("UMG" or "You") produce all documents, electronically stored information, and tangible things in Your possession, custody, or control that are responsive to these Requests for Production of Documents (the "Requests"). Each individual Request shall be read and interpreted in accordance with the definitions and instructions set forth below.

**GENERAL DEFINITIONS**

Plaintiff incorporates by reference all instructions, definitions, and rules contained in the Federal Rules of Civil Procedure ("FRCP") and Local Rules of the United States District Court for the Southern District of New York and, for purposes of these Requests, the following definitions shall apply:

1.    Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

2. The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the FRCP.

3. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all information that might otherwise be construed to be outside of their scope.

4. "You," "Your," or "Yours" refers to UMG Recordings, Inc. ("UMG") and includes any persons or entities acting for UMG or on UMG's behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, contractors, subsidiaries, parent companies, and third parties, as well as any entities over which UMG has control, including but not limited to Interscope Records ("Interscope"), Republic Records ("Republic"), and Universal Music Publishing Group ("UMPG").

5. "Communication" or "Communications" means, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place, and under any circumstances whatsoever, whereby information of any nature is transmitted or transferred by any means, including but not limited to letters, memoranda, reports, emails, text messages, instant messages, social media, telegrams, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages on any platform, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all other correspondence on Social Media. Without limiting the foregoing in any manner, commenting as well as any act of expression that is not directed at a specific person, or otherwise may not be intended to provoke a

response (such as a social media posting, "likes," "shares," or any other form of reacting to another's use of Social Media), are forms of communication.

6. "Document" or "Documents" is used herein in the broadest sense of the term and means all records and tangible or electronic media of expression, including (i) papers of all kinds, including but not limited to originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, bank checks, credit card statements, and (ii) non-paper information of all kinds, including but not limited to any electronically stored information and computer generated or electronic data such as digital videos, digital photographs, audio recordings, podcasts, Internet files (including "bookmarks" and browser history), word documents, notes taken electronically, online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, uploads, posts, status updates, comments, "likes," "shares," direct messages, all Social Media activity, or any other use of ephemeral communications services or Social Media, and (iii) any other writings, records, or tangible objects produced or reproduced in any way. Without limiting the foregoing in any way, every Communication is also a Document.

7. "Relating to" means "concerning," "referring to," "describing," "evidencing," or "constituting."

8. "Social Media" means any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: X (formerly known as Twitter), Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis,

3

Slack, Whisper, Yik Yak, Medium, WordPress, WeChat, and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram, and CyberDust. Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing, and communicating on comment sections of Social Media.

## SPECIFIC DEFINITIONS

1. "Super Bowl LIX Halftime Show" refers to the Apple Music Super Bowl LIX Halftime Show on February 9, 2025.

2. "Recording" refers to the vocal performance of the recording artist Kendrick Lamar Duckworth, professionally known as "Kendrick Lamar," and embodying the musical composition co-written by Kendrick Lamar, titled "Not Like Us," which was first published on May 4, 2024.

3. "Image" refers to the accompanying cover image to the Recording, which depicts Plaintiff's home in Toronto, Canada, and was first published on May 4, 2024.

4. "Musical Works" mean any sound recordings of a musical composition, along with any accompanying lyrics, to which a copyright owner has the rights to make and distribute copies, publicly perform or display, make derivative works, and license for use by third parties.

5. "Music Videos" mean any video recording of a Musical Work with additional images, audio, and video accompanying the original Musical Work, and published, licensed, and promoted separately from the original Musical Work by the recorded artist, the recorded artists' label, or other affiliated entities with a contractual or licensed right to publish an official Music Video of the Musical Work.

6. "Video" refers to the music video for the Recording, which was first published on July 4, 2024.

7. "Payola" refers to the practice of paying for radio plays or other promotion without disclosure, prohibited by the Communications Act of 1934 (see 47 U.S.C. §§ 317, 508).

## INSTRUCTIONS

Plaintiff incorporates by reference all instructions, definitions, and rules contained in the FRCP and Local Rules of the United States District Court for the Southern District of New York and, for purposes of these Requests, the following instructions shall apply:

1. Unless otherwise specified, the relevant time period for the Requests is March 26, 2024 through the date of these Requests.

2. Your responses to the following Requests shall be based on all knowledge and information (whether or not hearsay or admissible) in Your possession, custody, or control.

3. Produce all responsive documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or persons under Your control, including Your agents, employees, representatives, or attorneys, or their agents, employees, or representatives.

4. If no responsive documents exist for any particular requests, specifically state that no responsive documents exist.

5. If any responsive document was, but is no longer, in Your possession, custody, or control, state the date and manner of its disposition, and identify its last known custodian and/or location. To the extent that any responsive document was lost or destroyed, produce any document that supports Your assertion that the document was lost or destroyed, provide the date when each such document was lost or destroyed, and the name, role, and title of the individual who authorized or requested the destruction of the document.

6. These Requests are continuing in nature. If, after making initial responses, You

obtain or become aware of any further Documents responsive to the Requests, You must supplement Your responses and provide such Documents.

7. If You object to production in response to a specific request, You shall state with particularity the basis for all objections with respect to such request. You shall respond to any and all portions of any request that do not fall within the scope of Your objection.

8. If, in responding to any of the following Requests, You encounter any ambiguity or confusion in construing either a Request or a Definition or Instruction relevant to a Request, set forth the matter deemed ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond to the Request using that interpretation, and explain with particularity the construction or interpretation selected by You in responding to the Request.

9. Whether or not You object to a particular Request, You must preserve all documents and communications relevant to the above-captioned matter, including all documents and communications responsive to these Requests.

10. Produce each responsive document in its entirety including with all attachments or other matters affixed thereto. Documents attached to each other should not be separated.

11. All documents shall be produced in electronic form and shall include related metadata. Produce documents in TIFF or native format (i.e., Word documents as .DOC or .DOCX files, Outlook emails as .PST files, Excel spreadsheets as .XLS or .XLSX files, Adobe PDF documents as .PDF files). For all forms of electronically stored information, ensure that the electronically stored information is provided in an unencrypted form and free of password protection.

12. Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts,

revisions, modifications, and other versions of a document, is a responsive document in its own right and must be produced.

13. In instances where two or more exact duplicates of any document exist, the most legible copy shall be produced.

14. Certify that Your production is complete and correct in accordance with specifications of the attached Certification that Response is Complete and Correct form provided as Exhibit 1.

15. If You have withheld from production responsive documents or tangible things on the basis that you assert a claim of privilege as to that document or thing, You shall prepare a list of withheld documents and things that lists the following information for each such document or thing, or part thereof, withheld on such a basis:

    a. the type of document, e.g., letter or memorandum;

    b. the general subject matter of the document;

    c. the date of the document;

    d. such other information as is sufficient to identify the document, including, where appropriate, the author of the document, the addressee of the document, and any other recipients shown in the document;

    e. the nature and basis for the claim of privilege; and

    f. sufficient additional information about the document as is necessary to justify Your claim of privilege.

**DOCUMENTS TO BE PRODUCED**

**DOCUMENT REQUEST NO. 1:**

All contracts and agreements between You and Kendrick Lamar Duckworth, his agents, or anyone working on his behalf, including all contracts and agreements reflecting Your right to approve, reject, refuse to publish, edit, amend, alter, or veto the publication of Kendrick Lamar Duckworth's Musical Works, Music Videos, or other content.

**DOCUMENT REQUEST NO. 2:**

All Documents and Communications relating to Your approval or consent to publish the Recording, Image, and Video.

**DOCUMENT REQUEST NO. 3:**

All Communications involving Ramon Alvarez-Smikle relating to the Recording, Image, or Video or the promotion of any Musical Works by Kendrick Lamar Duckworth.

**DOCUMENT REQUEST NO. 4:**

All Documents and Communications relating to the payment and reimbursements of discretionary marketing funds for the benefit of Kendrick Lamar Duckworth, or any person working on his behalf, including, but not limited to Anthony Saleh.

**DOCUMENT REQUEST NO. 5:**

All Documents and Communications relating to any allegations, concerns, complaints or reports, whether formal or informal, oral or written, made to You relating to Payola violations regarding any Musical Works by Kendrick Lamar Duckworth.

**DOCUMENT REQUEST NO. 6:**

All Documents and Communications relating to any actions or contemplated actions You undertook with respect to the copyright restrictions for the Recording, Image, or Video, including but not limited to any alteration, modification, removal, suspension of the same.

**DOCUMENT REQUEST NO. 7:**

Documents sufficient to show Your internal policies, procedures, and guidelines relating to the enforcement of copyright restrictions over the publication, playing, streaming, or sharing of Musical Works, Music Videos, or other content on third-party platforms.

**DOCUMENT REQUEST NO. 8:**

All Documents and Communications relating to the February 2, 2025 Grammy Awards relating to the Recording, Image, or Video, including, but not limited to: all Documents and Communications with the National Academy of Recording Arts and Sciences, Inc., or any representative or agent thereof; all Documents and Communications regarding the promotion and advertising of the Recording, Image, or Video for the purposes of obtaining a nomination for a Grammy Award, obtaining a win for a Grammy Award, or for promoting the February 2, 2025 Grammy Awards; and all Documents and Communications regarding the content of the archival footage available from the February 2, 2025 Grammy Awards, including, but not limited to, as referenced in https://www.hotnewhiphop.com/892143-grammys-deletes-clip-crowd-singing-kendrick-lamar-not-like-us-drake-lawsuit-hip-hop-news.

**DOCUMENT REQUEST NO. 9:**

All Documents and Communications relating to the selection and licensing of the Recording to be performed at the Super Bowl LIX Halftime Show, including but not limited to all Documents and Communications relating to any and all decisions proposed, contemplated, or

9

made with respect to whether to omit or censor any lyrics or other content related to the Recording during the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 10:**

Documents and Communications sufficient to show the number of streams, views, downloads, purchases, and radio plays of the Recording and/or Video on all platforms, including Social Media platforms.

**DOCUMENT REQUEST NO. 11:**

Documents sufficient to show the executive compensation structure and annual incentive plans for Interscope Chief Executive Officer John Janick for the past five years.

**DOCUMENT REQUEST NO. 12:**

Documents sufficient to show Interscope's 2024 executive incentive metrics, targets, projections, and performance used to determine annual incentive compensation for Interscope's executives and officers, including Chief Executive Officer John Janick for the past five years.

**DOCUMENT REQUEST NO. 13:**

Documents and Communications sufficient to show the dates on which You sent litigation hold notices and the recipients of those notices relating to any of the allegations in the Complaint or anticipated or actual litigation by Plaintiff.

**DOCUMENT REQUEST NO. 14:**

All Documents and Communications relating to the May 7, 2024, armed attack and the May 8 and 9, 2024, trespassing attempts at Drake's Toronto residence.

**DOCUMENT REQUEST NO. 15:**

All Documents and Communications relating to the promotion of the Recording on Spotify and Apple Music.

**DOCUMENT REQUEST NO. 16:**

All Documents and Communications regarding objections to or concerns regarding the content of the Recording, Image, and Video.

**DOCUMENT REQUEST NO. 17:**

Documents sufficient to show the total money spent by UMG, directly or indirectly, on the production of the Recording and Video.

**DOCUMENT REQUEST NO. 18:**

Documents sufficient to show the total monthly money spent by UMG, directly or indirectly, on the promotion each of the Recording and Video.

Dated: March 10, 2025

By: /s/ *Michael J. Gottlieb*
Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
mhoughton-larsen@willkie.com