# EXHIBIT 2

Case 1:25-cv-00399-JAV   Document 79-2   Filed 08/12/25   Page 1 of 6

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

May 7, 2025

***VIA EMAIL***

Nicholas P. Crowell
Katelin Everson
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 212-839-5449
Ncrowell@sidley.com
Keverson@sidley.com

Re:   *Graham v. UMG Recordings, Inc.*, No. 1:25-cv-00399-JAV (S.D.N.Y.)

Dear Counsel,

I write to memorialize our May 2, 2025 meet and confer regarding Plaintiff's first set of requests for production and related discovery matters, as well as to provide Plaintiff's understanding of the current status of UMG's responses and next steps.

This letter is not intended to cover every topic that we discussed. Unless explicitly stated herein, Plaintiff disagrees with UMG's responses and objections and reserves all rights.

As we discussed on the call, Plaintiff believes that working collaboratively throughout discovery is in the best interest for both parties—with the parties engaging in regular discussions and working iteratively, particularly with respect to identifying custodians. We understood that you were in agreement.

**Protective Order:** We discussed UMG's markup to the draft protective order and our proposed changes. We have provided you with that mark up by separate email.

**ESI Protocol:** We discussed UMG's markup to the ESI protocol and our proposed changes. That mark up is attached to the same transmittal email as this letter. While all of our edits are contained in our returned mark up, we specifically wanted to note one item about the production of text messages. In UMG's latest mark up, UMG seeks to foreclose the parties' ability to redact non-responsive portions of 24 hour RSMF segments. Plaintiff does not agree to this proposal. Personal text messages—especially those contained on the personal phone of a major celebrity—are overwhelmingly likely to contain non-responsive content within 24 hours of responsive content. Non-responsive content may include, for example, non-responsive information about Drake's family, including his minor son, or non-responsive, sensitive communications with other celebrities.

On the meet and confer, you stated that UMG's basis for seeking to prohibit responsiveness redactions in RSMF files was that it allows the producing party to unilaterally decide what material is or is not responsive. However, all document discovery requires that both sides exercise responsiveness determinations in good faith. If UMG wishes to challenge any such RSMF redactions, Plaintiff will consider them in good faith, including by offering representations to UMG about the subject matter of any redacted messages. Plaintiff would expect that Defendant would do the same.

As you will see, we have adjusted the redaction provision so that (a) it confers reciprocal rights on both parties to redact non-responsive information in RSMF files and (b) it forbids redacting any material necessary to provide context to the responsive message.

**Status of UMG discovery:** We inquired about the status of UMG's document collection and review. We explained that we wanted to ensure that UMG's discovery process was not being delayed by the parties' ongoing negotiation of the protective order and ESI protocol. You stated that there was no such delay. Specifically, you advised that you have collected the electronic documents of five of the custodians[1] listed on Plaintiff's proposed custodians list for the relevant time period and are planning to run Plaintiff's proposed search terms across those documents. It was not clear to us on the call what specifically was encompassed by the collected electronic documents (i.e. emails, cell phones). Additionally, it was not clear to us on that call whether UMG would be running Plaintiff's proposed search terms or some other set of search terms. **We would appreciate receiving clarification on these points.**

**Custodians:** On April 25, 2025, Plaintiff sent UMG a proposed list of custodians to assist with its document collection efforts. During our meet and confer, you advised that it is UMG's position that, at least at this time, it will only being searching for and producing the documents of 5 of the 28 custodians on Plaintiff's proposed list: Bill Evans, Gary Kelly, Greg Marella, Jim Roppo, and Ramon Alvarez-Smikle. We asked how you selected those 5 custodians. You said that you were not certain and would get back to us. **Please promptly let us know.**

We did not agree that UMG's limiting its collection to just 5 custodians was appropriate. You explained that once we have the opportunity to review UMG's production of the documents for the first 5 custodians, should there be any custodians whose documents we believe should be searched and produced, you would be willing to have that conversation. We reserve all rights to seek discovery from all 26 custodians listed on our initial proposal and any other custodians we determine to be relevant throughout the course of discovery.

We then discussed each custodian individually. We explained that for many custodians, we were seeking their documents based on their publicly available job-title, but that our identification of custodians would be more focused with more information about UMG's organizational structure. On our previous meet and confer (April 17, 2025), we discussed the possibility of UMG producing to Plaintiff an organizational chart to assist Plaintiff in identifying custodians with relevant documents. On this call you advised that no such person-by-person organizational chart exists. We raised the possibility of providing you with specific names of UMG employees so that you

---

[1] You represented that you have collected the electronic documents of: Bill Evans, Gary Kelly, Greg Marella, Jim Roppo, and Ramon Alvarez-Smikle.

could then provide the scope of their job responsibilities and the people on their team/who they work for. You said you would be open to discussing this as a solution.

- **Documents encompassed by another custodian:** For many of the custodians, you took the position that searching and producing their documents would be redundant of the other custodians whose documents you have agreed to search and produce.

    o You represented that it was your understanding that the following custodians documents would be redundant of <u>Ramon Alvarez-Smikle</u>: Faatimah Mahadi; Jordan Bell; Kojo Osie; Lane Mankoff; Luis Najera; Tiffany Bell.

    o You represented that it was your understanding that the following custodians documents would be redundant of <u>Gary Kelly</u>: Annie Lee, Jessica Stats; Mark Seepersaud; Pooja Mehta.

    o You represented that it was your understanding that Michael Nash's documents would be redundant of certain others, but you needed to go back to confirm whose documents specifically. **Please promptly advise.**

- **Apex custodians:** You took the position that searching and producing the documents of the following custodians would not be appropriate because they are "apex custodians:" Avery Lipman; Boyd Muir; John Janick; Lucian Grainge; Monte Lipman. Notwithstanding UMG's position, we continue to believe each of the aforementioned are key custodians likely to possess responsive information.

- **Relevance Questions:** You asked us to explain why we believed certain custodians were relevant. After we provided explanations, you agreed that these explanations were helpful, and you advised that you would go back to your client to discuss. **Please promptly let us know the result of these conversations.**

    o **Jody Gerson:** We explained that as the CEO of UMPG, we understand that Jody Gerson would be the custodian with information relevant to the licensing and promotion of the Defamatory Material on UMPG. We continue to believe Ms. Gerson is a key custodian likely to possess responsive information.

    o **John Janick:** We explained that as the CEO of Interscope, it is our understanding that John Janick would have been involved in the initial and ongoing approval necessary to publish the Defamatory Material. We continue to believe Mr. Janick is a key custodian likely to possess responsive information.

    o **Laura Carter and Nicole Wyskoarko:** We explained that as the Head of Urban Marketing at Interscope and EVP of Urban Marketing at Interscope, respectively, we believed that Laura Carter and Nicole Wyskoarko would have discovery relevant to Plaintiff's allegations about the use of discretionary marketing funds. We continue to believe Ms. Carter and Ms. Wyskoarko are a key custodians likely to possess responsive information.

- o **Steve Berman:** We explained that as the Vice Chairman of Interscope Records, we understood that Steve Berman would have been involved in the initial and ongoing approval of the publication of the Defamatory Material as well as receiving any complaints about the same. We also agreed to get back to you with any additional bases. It is our understanding that Mr. Berman is likely to possess responsive materials relating to UMG's communications with the entities involved in the promotion, marketing, and planning of the 2025 Super Bowl halftime show.

- **Will Tanous**: You represented that Will Tanous was the corporate communications person for UMG and was not involved in anything relevant to this lawsuit until the lawsuit was filed. We stated that we would consider your position. We believe that Mr. Tanous plays a significant role on UMG's executive team and is involved in key executive-level decisions, suggesting that Mr. Tanous would have been involved in the executive-level discussions about the approval and ongoing publication of the Defamatory material. **We ask that you please promptly confirm this understanding with your client of Mr. Tanous' role prior to the filing of the above-captioned case.**

**Search Terms:** Also on April 25, 2025, Plaintiff sent UMG a proposed list of search terms for certain of Plaintiff's discovery requests to assist with UMG's document collection efforts. In your letter addressed to me dated April 28, 2025, you advised the UMG would respond to these proposed search terms under a separate cover. **We await that correspondence.**

**Plaintiff's First Requests for Production:** We also briefly discussed a few questions we had regarding your April 28, 2025 letter regarding Plaintiff's First Requests for Production.

- Objection No. 6: While we are agreeable to a narrowed definition of the term "payola" than the one contained within Plaintiff's First Requests for Production, we explained that the definition you proposed was too narrow because it would not encompass the communications with "middle men" involved in the pay-for-play scheme, as alleged in the Amended Complaint. To that end, we propose the parties agree to the following definition of "payola" for the purpose of the First Requests for Production (and discovery writ large):

    "Payola" refers to the practice of paying or providing, or agreeing to pay or provide, money or other valuable consideration to any individual or entity for the purpose of achieving or obtaining airplay or increased airplay of certain content on an AM or FM radio station licensed by the Federal Communications Commission to operate in the United States, without disclosing the payment to radio station management so that the station can disclose the payment to its listeners at the time of broadcast, as required by the Communications Act of 1934. Payola also refers to any conduct prohibited by Your internal policies, procedures, or codes of conduct with respect to Your interactions with radio stations, radio station employees, or independent promotors.

    **Please promptly let us know if this definition is agreeable.**

- Request No. 1: We reiterated why we believe that UMG should agree to produce any redacted contracts or agreements with the definitions section unredacted—that no one could understand a contract's meaning without understanding the definition of the defined

4

terms. You agreed that your goal was not to produce redacted versions of contracts or agreements that were incomprehensible.

Sincerely,

*/s/ M. Annie Houghton-Larsen*

M. Annie Houghton-Larsen
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY
(212) 728-8164
Mhoughton-larsen@willkie.com