# EXHIBIT 4

**WILLKIE FARR & GALLAGHER** LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

May 23, 2025

**VIA ELECTRONIC MAIL**

Nicholas P. Crowell
Katelin Everson
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 212-839-5449
Ncrowell@sidley.com
Keverson@sidley.com

Re:   *Graham v. UMG Recordings, Inc.*, No. 1:25-cv-00399-JAV (S.D.N.Y.)

Dear Counsel,

We write in response to UMG's letter dated May 22, 2025 ("May 22 Letter") and regarding ongoing discovery matters. We note at the outset that it has been two-and-a-half months since Plaintiff served UMG with eighteen Requests for Production and, as of this writing, UMG has not produced a single document.

**Initial Screening Search Terms**

We appreciate UMG's agreement to collect and search custodial data in the ordinary course.

For the record, your suggestion that filtering future document collections at the point of collection by running "initial screening search terms"—before later running a second set of search terms—would somehow make discovery more efficient is not credible. UMG's proposal would introduce a new step into the collection and review process. Under UMG's proposal, instead of sending date-range-limited custodial data to a document vendor and having the vendor run search terms, UMG *itself* (not a vendor) would *first* run a set of (not yet negotiated) "filter" search terms at the point of collection, an inherently unreliable exercise (especially for devices), and then send that data to a document vendor, and then have the vendor run a second set of search terms. Thus, your proposal would have *further delayed* UMG's document production, not streamlined it. Strangely, it also would have cost your client more time (running search terms internally, as opposed to relying on a vendor that you presumably have already engaged) and money (attorney time negotiating a new set of search terms). Your proposal is even more puzzling because the only stated "burden" supposedly alleviated would be the cost of storing incremental data in a processing workspace. We invited UMG to send us information about that incremental cost,

but you have not done so. We also explained that, based on our experience, the cost of storing data in a processing workspace (as opposed to promoted data in Relativity) is not significant in the context of a large, complex litigation, and you have not disputed as much. If there is a significant burden to UMG that we are not appreciating, do let us know.

**Apex Custodians**

You do not claim that certain senior level custodians (the "Contested Custodians"[1]) are not reasonably likely to have discoverable information—a telling concession. Instead your objections are (1) the Contested Custodians are immune from document discovery as "apex" custodians, yet you have not cited any binding authority supporting as much, nor have you responded to Plaintiff's authority demonstrating that there is no "apex" doctrine for document discovery; and (2) the Contested Custodians are likely to have discovery that is "cumulative or duplicative" of other custodians,[2] even though the entire premise of the "apex" objection is that these custodians are sufficiently senior that they should be treated differently than other custodians and afforded special protection. Nor, to our knowledge, have you run hit reports or duplication statistics in order to test UMG's dubious claim that the documents of senior executives would be mostly duplicative of the individuals below them with different roles and responsibilities. UMG has also made clear that it intends to argue that Plaintiff cannot prove actual malice with respect to individuals at UMG (*see* ECF No. 43 at 19), yet now UMG seeks to block discovery into some the very individuals whom Plaintiff alleges acted with actual malice.

Please let us know your availability on Tuesday May 27, Wednesday May 28, or Thursday May 29 to hold a telephonic meet and confer regarding this issue.

**Other Custodians**

Thank you for agreeing to expand the list of initial custodians from whom UMG will agree to produce discovery to include Steve Berman, Laura Carter, and Nicole Wyskoarko. We agree that the parties should continue to consider additional custodians as discovery continues.

**Michael Nash:** We appreciate your representations regarding the documents of Michael Nash being duplicative of Gary Kelly. We continue to not understand how the documents of two individuals with different roles and responsibilities could be duplicative of one another. We reserve all rights as to Michael Nash.

**Jody Gerson:** We appreciate your representations and clarifications about UMG's corporate relationship with UMPG. We reserve all rights as to Jody Gerson. Please identify who of the 8 custodians that UMG has agreed to produce documents for will have documents relating to the licensing of the Defamatory Material.

---

[1] Plaintiff understands, but UMG did not clarify in its May 22 Letter, that these Contested Custodians are: Annie Lee; Avery Lipman; Boyd Muir; John Janick; Lucian Grainge; and Monte Lipman.

[2] Per the May 22 Letter, UMG has agreed to collect and produce responsive material for the following custodians: Bill Evans, Gary Kelly, Greg Marella, Jim Roppo, Laura A. Carter, Nicole Wyskoarko, Ramon Alvarez-Smikle, and Steve Berman.

**Will Tanous:** Given your representation that Will Tanous began to have direct involvement in the matters at issue in this case when "the threat of litigation emerged" rather than at the time the above-captioned action was filed as previously understood, Plaintiff continues to believe that Will Tanous is a key custodian for proving actual malice. To the extent you provide evidence that Will Tanous exchanged a large volume of communications with outside counsel, we are willing to meet and confer about ways to alleviate the burden of logging those communications.

### UMG's Responses and Objections to Plaintiff's First Set of Requests for Production

We reiterate our request that UMG provide a date certain at which it will begin producing documents. On our meet and confer of May 13, you indicated that UMG would begin producing certain hand-collected documents shortly.

- **Request No. 3:** As discussed on our meet and confer on May 13, you asked that we provide an explanation for why the search term "GNX" was relevant. We explained that the Recording was not included on Kendrick Lamar's album "GNX" and Plaintiff was seeking discovery to understand whether UMG was involved in that decision and why the decision was made. You agreed to go back to your client with this explanation. In the May 22 Letter you simply state that UMG will not run the term "GNX" for Request No. 3. Please provide an explanation of why UMG is objecting to the search term "GNX."

- **Request No. 4:** You represent that UMG searched the "central repository of any discretionary marketing funds paid or reimbursed to or for the benefit of any artist or client of UMG" for responsive documents and did not identify anything. <u>Please provide a detailed explanation of how this repository is organized, i.e., how payments and reimbursements are labelled, how artists or clients are identified, and whether the repository contains song-level data, as opposed to artist-level. For example, is it possible that discretionary marketing funds were used "in support of or connection with" Kendrick Lamar, but the repository would not show whether those funds specifically supported the Recording, Image, or Video? Please also explain how UMG searched this central repository, including any terms or limiters used.</u>

- **Request No. 5:** You represent that "allegations complaints or reports of payola are received by UMG's Global Compliance group" and that UMG "has confirmed that Global Compliance has not received anything allegations, complaints or reports of payola regarding the Recording." <u>Please provide an explanation of how Global Compliance conducted its search, including any terms or limiters used. Please also provide confirmation that any responsive allegation, complaint, or report, whether formal or informal, oral or written, made to anyone at UMG would be directed to UMG's Global Compliance group as a matter of policy (and produce said policy or policies). Please also provide hit counts for our proposed search terms directed at this request so that we can understand your burden claim and, if necessary, work with you to tailor the search terms (or custodians) to reduce any undue burden.</u>

- **Request No. 7:** You represent that UMG searched and found no "published policies or procedures responding to this RFP." <u>Please clarify what is meant by "published." And please</u>

provide an explanation of how UMG searched this central repository, including any terms or limiters used.

- **Request No. 8:** Plaintiff reserves all rights as to Request No. 8 as we await your production with documents sufficient to verify your representations.

**Sources of ESI**

In our May 7 letter memorializing our May 2 meet and confer, we asked that UMG confirm that UMG was collecting the cell phones of the agreed-upon custodians in addition to other repositories of data. UMG did not provide a written response. However, on our May 13 meet and confer, UMG raised that it was planning to collect the non-Microsoft 365 data for the agreed-upon custodians (including cell phones). UMG made a similar representation in its May 14 email regarding the "initial screening search terms." Just to make sure both sides are clear, please confirm in writing that, for every custodian UMG has agreed to (or later agrees to) designate as a custodian, UMG is forensically collecting and reviewing the custodian's mobile phone(s).

**Timing of Discovery Responses**

Thank you for agreeing to give Plaintiff an additional 21 days to respond to UMG's First Set of Requests for Production, which is comprised of 138 requests. We do not understand why UMG is insisting that this extension be conditioned on Plaintiff agreeing to a reciprocal extension to UMG to answer Plaintiff's two Rule 33.3(a) Interrogatories or why UMG requires 21 additional days to answer those two requests, but Plaintiff nonetheless agrees to do so. Per our agreement, Plaintiff's response to UMG's First Set of RFPs and UMG's response to Plaintiff's Rule 33.3(a) Interrogatories are due June 23, 2025.

Sincerely,

*/s/ Brady M. Sullivan*

Brady M. Sullivan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY
(212) 728-8949
bsullivan@willkie.com