# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- ---------x

AUBREY DRAKE GRAHAM,

               Plaintiff,

           v.

UMG RECORDINGS, INC.,

               Defendant.

:
:
:
:
:
:
:
:

Civil Action No. 1:25-cv-399-JAV

---------------------------------------------------------- ---------x

**PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION**
**TO DEFENDANT UMG RECORDINGS, INC.**

      Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Aubrey Drake Graham ("Drake" or "Plaintiff") hereby requests that Defendant UMG Recordings, Inc. ("UMG" or "You") produce all documents, electronically stored information, and tangible things in Your possession, custody, or control that are responsive to these Requests for Production of Documents (the "Requests"). Each individual Request shall be read and interpreted in accordance with the definitions and instructions set forth below.

**GENERAL DEFINITIONS**

      Plaintiff incorporates by reference all instructions, definitions, and rules contained in the Federal Rules of Civil Procedure ("FRCP") and Local Rules of the United States District Court for the Southern District of New York and, for purposes of these Requests, the following definitions shall apply:

      1.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

2.      The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the FRCP.

3.      "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all information that might otherwise be construed to be outside of their scope.

4.      "You," "Your," or "Yours" refers to UMG Recordings, Inc. ("UMG") and includes any persons or entities acting for UMG or on UMG's behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, contractors, subsidiaries, parent companies, and third parties, as well as any entities over which UMG has control, including but not limited to Interscope Records ("Interscope"), Republic Records ("Republic"), and Universal Music Publishing Group ("UMPG").

5.      "Communication" or "Communications" means, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place, and under any circumstances whatsoever, whereby information of any nature is transmitted or transferred by any means, including but not limited to letters, memoranda, reports, emails, text messages, instant messages, social media, telegrams, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages on any platform, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all other correspondence on Social Media. Without limiting the foregoing in any manner, commenting as well as any act of expression that is not directed at a specific person, or otherwise may not be intended to provoke a

response (such as a Social Media posting, "likes," "shares," or any other form of reacting to another's use of Social Media), are forms of communication.

6.      "Document" or "Documents" is used herein in the broadest sense of the term and means all records and tangible or electronic media of expression, including (i) papers of all kinds, including but not limited to originals and copies, however made, of letters, memoranda, hand-written notes,  notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, bank checks, credit card statements, and (ii) non-paper information of all kinds, including but not limited to any electronically stored information and computer generated or electronic data such as digital videos, digital photographs, audio recordings, podcasts, Internet files (including "bookmarks" and browser history), word documents, notes taken electronically, online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, uploads, posts, status updates, comments, "likes," "shares," direct messages, all Social Media activity, or any other use of ephemeral communications services or Social Media, and (iii) any other writings, records, or tangible objects produced or reproduced in any way.  Without limiting the foregoing in any way, every Communication is also a Document.

7.      "Relating to" means "concerning," "referring to," "describing," "evidencing," or "constituting."

8.      "Social Media" means any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: X (formerly known as Twitter), Rumble, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, YouTube, LinkedIn, Flickr, Reddit, Quora, Disqus,

Slack, Whisper, Yik Yak, Medium, WordPress, WeChat, and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram, and CyberDust.  Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing, and communicating on comment sections of Social Media.

## SPECIFIC DEFINITIONS

1.      "Allegations" refers to any allegation, statement, suggestion, insinuation, or rumor, whether contained in the Recording, Image, Video, or otherwise, and whether presented as fact, opinion, hyperbole, or otherwise, that: Plaintiff is a convicted pedophile; Plaintiff has been charged with a sex crime; Plaintiff engages in pedophilia or sexual acts with minors; Plaintiff traffics children; Plaintiff is or should be registered as a sex offender; Plaintiff harbors convicted sex offenders at his Toronto residence; Plaintiff associates with certified pedophiles and individual(s) who should be registered as a sex offenders; or that Kendrick Lamar Duckworth has information about any of the aforementioned allegations.

2.      "Artificial Streaming" refers to methods of inflating and manipulating stream counts on music platforms, including, but not limited to, through Bots, click farms, fraudulent playlists, multiple accounts, and streaming rings.

3.      "Bots" refers to software programs designed to mimic human behavior to appear to be real Social Media and streaming accounts.

4.      "Complaint" means the amended complaint filed in the above-referenced action on April 16, 2025 (ECF No. 41).

5.      "Complex Networks" refers to the American media and entertainment company for youth culture owned by NTWRK.  Complex Networks refers to and includes any persons or

entities acting for Complex Networks or on Complex Networks' behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, contractors, subsidiaries, parent companies, and third parties, as well as any entities over which Complex Networks has control, including but not limited to Complex.

6.      "iHeartMedia Inc." refers to the American mass media corporation and owner of iHeartRadio, a freemium broadcast, podcast, radio-streaming, and music-streaming platform.

7.      "Image" refers to the accompanying cover image to the Recording, which depicts Plaintiff's home in Toronto, Canada, and was first published on May 4, 2024.

8.      "Independent Promoters" mean any person or entity, not employed by UMG, who assists or facilitates the provision of funds, services, or items of value to a radio station for purposes of the radio station playing certain Musical Works.

9.      "Litigation" refers to the above-captioned matter, *Aubrey Drake Graham v. UMG Recordings, Inc.*, No. 1:25-cv-399-JAV.

10.     "Meta" refers to Meta Platforms, Inc., an American multinational technology company and the operator of Facebook, Instagram, Threats, Messenger, and WhatsApp.

11.     "Musical Works" mean any sound recordings of a musical composition, along with any accompanying lyrics, to which a copyright owner has the rights to make and distribute copies, publicly perform or display, make derivative works, and license for use by third parties.

12.     "Music Videos" mean any video recording of a Musical Work with additional images, audio, and video accompanying the original Musical Work, and published, licensed, and promoted separately from the original Musical Work by the recorded artist, the recorded artists' label, or other affiliated entities with a contractual or licensed right to publish an official Music Video of the Musical Work.

13.     "Payola" refers to the practice of paying for radio plays or other promotion without disclosure, as prohibited by the Communications Act of 1934 (see 47 U.S.C. §§ 317, 508).

14.     "Penske Media Corporation" refers to and includes any persons or entities acting for Penske Media Corporation or on Penske Media Corporation's behalf, including but not limited to all representatives, servants, agents, employees, officers, affiliates, contractors, subsidiaries, parent companies, and third parties, as well as any entities over which Penske Media Corporation has control, including but not limited to Variety, Billboard, Rolling Stone, Deadline Hollywood, and The Hollywood Reporter.

15.     "Pre-Action Discovery Petitions" refers to Plaintiff's two pre-litigation actions against You in State court in New York and Texas to investigate allegations that You engaged in a deliberate and inappropriate strategy of paying third parties to artificially inflate the Recording's metrics, a practice known as "payola" and which is prohibited by the Communications Act of 1934 as well as other causes of action.  *See* Verified Petition, *In the Matter of the Application of, FROZEN MOMENTS, LLC et al.*, Docket No. 161023/2024 (N.Y. Sup. Ct. Nov. 25, 2024); Verified Petition for Rule 202 Depositions, *In Re: Aubrey Drake Graham*, Docket No. 2024-CI-26782 (Tex. Dist. Ct. Nov. 25, 2024).

16.     "Rap Feud" refers to the "Lamar Rap Feud" as defined in Your First Requests for Production to Mr. Graham served on May 2, 2025.

17.     "Recording" refers to the vocal performance of the recording artist Kendrick Lamar Duckworth, professionally known as "Kendrick Lamar," and embodying the musical composition co-written by Kendrick Lamar, titled "Not Like Us," which was first published on May 4, 2024.

18.     "Recording Catalog" refers to the collection of an artist's existing Musical Works, including, but not limited to, an artists' prior albums, singles, and soundtrack contributions.

19.     "Royalties" refers to payments made to rights holders, including songwriters, artists, and publishers, for the use of their Musical Works.

20.     "Streamshare" is a royalty distribution method used by streaming platforms whereby a percentage of a platform's revenue is allocated to artists and/or labels based on their share or proportion of total streams in a specific market.

21.     "Super Bowl LIX Halftime Show" refers to the Apple Music Super Bowl LIX Halftime Show on February 9, 2025.

22.     "TikTok" refers to the social media and short-form online video platform owned by the Chinese company ByteDance.

23.     "UMPG" refers to Your music publishing and distribution arm Universal Music Publishing Group, and includes all publishing companies over which UMPG has control, including, but not limited to, Universal Music Corp., Songs of Universal, Inc., Universal Music – MGB NA LLC, Polygram Publishing, Inc., and Universal Music – Z Tunes LLC.

24.     "Vevo LLC" refers to the privately held American multinational music video-hosting service and distributor, in partnership with You and other record labels and artists.

25.     "Video" refers to the music video for the Recording, which was first published on July 4, 2024.

26.     "Whitelisting" refers to permitting Social Media users or platforms to use or republish copyrighted content without charging fees or imposing other limitations, including, but not limited to, suspending automated content identification systems to block the unauthorized use of copyrighted material by such users and platforms.

27.    "YouTube" refers to an American social media and online video sharing platform, owned by Google LLC, and its related services, including, but not limited to, its music streaming service YouTube Music.

## INSTRUCTIONS

Plaintiff incorporates by reference all instructions, definitions, and rules contained in the FRCP and Local Rules of the United States District Court for the Southern District of New York and, for purposes of these Requests, the following instructions shall apply:

1.    Unless otherwise specified, the relevant time period for the Requests is March 26, 2024 through the date of these Requests.

2.    Your responses to the following Requests shall be based on all knowledge and information (whether or not hearsay or admissible) in Your possession, custody, or control.

3.    Produce all responsive documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or persons under Your control, including Your agents, employees, representatives, or attorneys, or their agents, employees, or representatives.

4.    If no responsive documents exist for any particular Request, specifically state that no responsive documents exist.

5.    If any responsive document was, but is no longer, in Your possession, custody, or control, state the date and manner of its disposition, and identify its last known custodian and/or location.  To the extent that any responsive document was lost or destroyed, produce any document that supports Your assertion that the document was lost or destroyed, provide the date when each such document was lost or destroyed, and the name, role, and title of the individual who authorized or requested the destruction of the document.

6.      These Requests are continuing in nature.  If, after making initial responses, You obtain or become aware of any further Documents responsive to the Requests, You must supplement Your responses and provide such Documents.

7.      If You object to production in response to a specific Request, You shall state with particularity the basis for all objections with respect to such Request.  You shall respond to any and all portions of any Request that do not fall within the scope of Your objection.

8.      If, in responding to any of the following Requests, You encounter any ambiguity or confusion in construing either a Request or a Definition or Instruction relevant to a Request, set forth the matter deemed ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond to the Request using that interpretation, and explain with particularity the construction or interpretation selected by You in responding to the Request.

9.      Whether or not You object to a particular Request, You must preserve all documents and communications relevant to the above-captioned matter, including all documents and communications responsive to these Requests.

10.      Produce each responsive document in its entirety including with all attachments or other matters affixed thereto.  Documents attached to each other should not be separated.

11.      All documents shall be produced in electronic form and shall include related metadata.  Produce documents in TIFF or native format (i.e., Word documents as .DOC or .DOCX files, Outlook emails as .PST files, Excel spreadsheets as .XLS or .XLSX files, Adobe PDF documents as .PDF files).  For all forms of electronically stored information, ensure that the electronically stored information is provided in an unencrypted form and free of password protection.

12.      Any alteration of a responsive document, including any marginal notes,

handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a document, is a responsive document in its own right and must be produced.

13.    In instances where two or more exact duplicates of any document exist, the most legible copy shall be produced.

14.    If You have withheld from production responsive documents or tangible things on the basis that you assert a claim of privilege as to that document or thing, You shall prepare a list of withheld documents and things that lists the following information for each such document or thing, or part thereof, withheld on such a basis:

    a.  the type of document, e.g., letter or memorandum;

    b.  the general subject matter of the document;

    c.  the date of the document;

    d.  such other information as is sufficient to identify the document, including, where appropriate, the author of the document, the addressee of the document, and any other recipients shown in the document;

    e.  the nature and basis for the claim of privilege; and

    f.  sufficient additional information about the document as is necessary to justify Your claim of privilege.

## **DOCUMENTS TO BE PRODUCED**

### **DOCUMENT REQUEST NO. 19:**

All Documents and Communications from January 1, 2009 through the present relating to the Allegations.

**DOCUMENT REQUEST NO. 20:**

All materials provided to the Board of Directors of UMG or Universal Music Group, N.V that discuss or mention in any way the Recording, Video, Image, Allegations, the Pre-Action Discovery Petitions, or the Complaint (or any of the allegations contained in the Complaint). This Request includes, but is not limited to, meeting minutes, board "books" or similar compilations, presentations, reports, or any other materials or documents provided the Board of Directors of UMG or Universal Music Group, N.V (or committees thereof) or members thereof.

**DOCUMENT REQUEST NO. 21:**

All Documents and Communications relating to any Social Media posts about Plaintiff, Kendrick Lamar Duckworth, the Allegations, the Pre-Action Discovery Petitions, the Complaint (or any allegations contained in the Complaint), the Recording, the Video, the Image, the 2025 Grammy Awards, and/or the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 22:**

Documents sufficient to show all Social Media accounts You control that posted or shared content relating to Plaintiff, Kendrick Lamar Duckworth, the Allegations, the Pre-Action Discovery Petitions, the Complaint (or any allegations contained in the Complaint), the Recording, the Video, the Image, the 2025 Grammy Awards, and/or the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 23:**

All Documents and Communications relating to any analyses You conducted or commissioned of Social Media engagement or discussion related to Plaintiff, Kendrick Lamar Duckworth, the Allegations, the Pre-Action Discovery Petitions, the Complaint (or any

allegations contained in the Complaint), the Recording, the Video, the Image, the 2025 Grammy Awards, and/or the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 24:**

All Documents and Communications relating to the deletion or removal of Your Social Media posts and/or comments about Plaintiff, Kendrick Lamar Duckworth, the Allegations, the Pre-Action Discovery Petitions, the Complaint (or any allegations contained in the Complaint), the Recording, the Video, the Image, the 2025 Grammy Awards, and/or the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 25:**

All Documents and Communications relating to the deletion or removal of Social Media posts and/or comments by Your employees about Plaintiff, Kendrick Lamar Duckworth, the Allegations, the Pre-Action Discovery Petitions, the Complaint (or any allegations contained in the Complaint), the Recording, the Video, the Image, the 2025 Grammy Awards, and/or the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 26:**

All Documents and Communications relating to Social Media posts and/or comments by Greg Marella, including but not limited to the deletion of all posts on his Instagram profile (@gregmarella) on or around March 25, 2025.

**DOCUMENT REQUEST NO. 27:**

Documents sufficient to show Your internal policies and procedures relating to removing, reporting, taking down, or limiting comments on Your Social Media and YouTube accounts.

**DOCUMENT REQUEST NO. 28:**

All Documents and Communications relating to any removals, reports, or limits on users' comments on Your Social Media and YouTube accounts that relate to Plaintiff, Kendrick Lamar Duckworth, the Allegations, the Pre-Action Discovery Petitions, the Complaint (or any allegations contained in the Complaint), the Recording, the Video, the Image, the 2025 Grammy Awards, and/or the Super Bowl LIX Halftime Show.

**DOCUMENT REQUEST NO. 29:**

All Documents and Communications from January 1, 2020 through the present relating to any:

a)  instruction, direction, or suggestion that any Musical Work or Music Video over which You have contractual rights or control of any kind be censored or otherwise modified/altered based on the content of the Musical Work or Music Video; or

b)  decision to not license, publish, or promote any Musical Work or Music Video over which You have contractual rights or control of any kind on the basis of the content of the Musical Work or Music Video.

**DOCUMENT REQUEST NO. 30:**

For the time period of January 1, 2018 to May 31, 2018, all Documents and Communications relating to any:

a)  instruction, direction, or suggestion that any Musical Work or Music Video by "Pusha T," including but not limited to "The Story of Adidon," be censored or otherwise modified/altered based on the content of the Musical Work or Music Video; or

b) decision to not license, publish, or promote any Musical Work or Music Video by "Pusha T," including but not limited to "The Story of Adidon," on the basis of the content of the Musical Work or Music Video.

## DOCUMENT REQUEST NO. 31:

Documents sufficient to show Interscope's monthly revenues and profits from January 1, 2020 through the present.

## DOCUMENT REQUEST NO. 32:

Documents sufficient to show Your and Interscope's monthly revenues and profits derived in any way from the Recording and Video.

## DOCUMENT REQUEST NO. 33:

Documents sufficient to show the value of Kendrick Lamar Duckworth's Recording Catalog from January 1, 2020 to present, including but not limited to any valuations thereof (formal or informal) that you conducted, commissioned, or considered.

## DOCUMENT REQUEST NO. 34:

All Documents and Communications internal to UMG relating to the renegotiation or anticipated renegotiation of Drake's current contract with UMG and/or negotiation of a new contract, including, but not limited to Documents and Communications discussing UMG's leverage over Drake, the value of Drake's Recording Catalog, the costs of extending Drake's current contract, the costs of entering into a new contract with Drake, and Documents and Communications with Jim Roppo, for the time period of August 1, 2023 to the present.

## DOCUMENT REQUEST NO. 35:

All Documents and Communications relating to the negotiations of Kendrick Lamar Duckworth's current contract with UMG, including, but not limited to, Documents and

Communications by, from, to, or including Steve Berman, for the time period of January 1, 2023 to May 4, 2024.

**DOCUMENT REQUEST NO. 36:**

All Documents and Communications relating to the Recording, Image, or Video.

**DOCUMENT REQUEST NO. 37:**

All Documents and Communications You receive from any third parties or nonparties in connection with or relating to the Pre-Action Discovery Petitions or this Litigation, whether by subpoena or otherwise.

**DOCUMENT REQUEST NO. 38:**

All Documents and Communications with Spotify USA Inc., Twitch Interactive, Inc., Amazon.com Services LLC, Apple Inc., Aymen "Anthony" Saleh, David Isaac Friley, Gary Marella, Joshua Delseni a/k/a Josh Kaplan, Kojo Menne Asamoah, or Anthony "Tony" Bucher, or any counsel representing them, relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 39:**

All Documents and Communications with Complex Networks relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 40:**

All Documents and Communications with Vevo LLC relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 41:**

All Documents and Communications with Penske Media Corporation relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 42:**

All Documents and Communications with iHeartMedia Inc. relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 43:**

All Documents and Communications with UMPG relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 44:**

All Documents and Communications with YouTube, whether directly or indirectly, relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 45:**

All Documents and Communications with Meta, whether directly or indirectly, relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 46:**

All Documents and Communications with the NFR Podcast and/or its hosts Luca Guerini and Anthony D'Aliesio, its employees, and its agents, whether directly or indirectly, relating to the Recording, Image, Video, Allegations, the Pre-Action Discovery Petitions, or Litigation.

**DOCUMENT REQUEST NO. 47:**

Documents and Communications sufficient to show all licenses (including, but not limited to, commercial and synchronization licenses) granted of the Recording, Image, Video, and/or the musical composition contained in the Recording and Video, to whom the licenses were granted, and the value of the licenses granted. This Request includes but is not limited licenses granted to/in connection with: Meta; TikTok; the July 11, 2024 ESPY Awards; the July 19, 2024 "Pop

Out" concert in Inglewood, California, and streaming thereof; the July 20, 2024 Kamala Harris presidential rally in Atlanta, Georgia; and the August 2024 Democratic National Convention in Chicago, Illinois.

**DOCUMENT REQUEST NO. 48:**

All Documents and Communications relating to "The Heart Part 6" by Drake.

**DOCUMENT REQUEST NO. 49:**

For January 1, 2009 through the present, all Documents and Communications relating to Drake's criminal history or lack thereof, including any background investigations, due diligence, inquiries, checks, or reports related to criminal records.

**DOCUMENT REQUEST NO. 50:**

From January 1, 2014 to the present, all Documents and Communications relating to allegations of domestic violence, violence against women, and/or other forms of violence committed by Kendrick Lamar Duckworth.

**DOCUMENT REQUEST NO. 51:**

From January 1, 2019 to the present, all Documents and Communications relating to David Isaac Friley (a/k/a Dave Free) and his relationship with Kendrick Lamar Duckworth and Kendrick Lamar Duckworth's children.

**DOCUMENT REQUEST NO. 52:**

All Documents and Communications relating to the "Rap Feud" from August 1, 2023 to the present.

**DOCUMENT REQUEST NO. 53:**

All Documents and Communications relating to the vandalism that occurred at Drake's OVO clothing store in London, United Kingdom, on May 7, 2024, as alleged at ¶ 97 of the Complaint.

**DOCUMENT REQUEST NO. 54:**

All Documents and Communications with Independent Promoters relating to the Recording or Video.

**DOCUMENT REQUEST NO. 55:**

All Documents and Communications relating to Independent Promoters hired, engaged, or retained by You to promote the Recording or Video.

**DOCUMENT REQUEST NO. 56:**

Not limited by date range, the settlement agreement between You and the New York Attorney General referenced in paragraphs of the Complaint, including but not limited to the settlement agreement and any schedules, exhibits, amendments, or modifications thereto.

**DOCUMENT REQUEST NO. 57:**

Not limited by date range, all Documents and Communications relating to violations or suspected violations of Your agreement with the New York Attorney General by You or by any Independent Promoter.

**DOCUMENT REQUEST NO. 58:**

All versions of the Independent Radio Promotion Agreement since 2020, as referenced in Your Radio and Television Promotion Policies and Procedures.

**DOCUMENT REQUEST NO. 59:**

From January 1, 2023 to the present, all executed Independent Radio Promotion Agreements relating to the Recording or Kendrick Lamar Duckworth.

**DOCUMENT REQUEST NO. 60:**

From January 1, 2006 to the present, all Documents and Communications relating to violations or suspected violations of Your Radio and Television Promotion Policies and Procedures.

**DOCUMENT REQUEST NO. 61:**

Documents sufficient to show all expenditures made by You in connection with the playing or promotion of the Recording on the radio, including such documents available in the database or databases referenced in Your Radio and Television Promotion Policies and Procedures.

**DOCUMENT REQUEST NO. 62:**

From August 1, 2023 through the present, all Documents and Communications relating to Whitelisting on third-party platforms, including, but not limited to, YouTube and Twitch, for any Musical Works or Music Videos, including, but not limited to, "First Person Shooter," Like That," "Push Ups," "Euphoria," "Family Matters," and "Meet the Grahams."

**DOCUMENT REQUEST NO. 63:**

All Documents and Communications relating to any analyses, measurements, experiments, or the like You undertook or received which assess the impact of Whitelisting the Recording on YouTube and Twitch, including, but not limited to, any reports, data, or reviews of the number of videos that used the Recording during the time period during which it was Whitelisted, public engagement with such videos, and sentiment analysis.

**DOCUMENT REQUEST NO. 64:**

Documents and Communications from January 1, 2024 to January 1, 2025 sufficient to show the standard licensing rates between You and Spotify.

**DOCUMENT REQUEST NO. 65:**

Documents and Communications sufficient to show the licensing rates with Spotify for the Recording.

**DOCUMENT REQUEST NO. 66:**

All Documents and Communications relating to the receipt of Royalties for the Recording from Spotify, including, but not limited to, documents reflecting the monthly Streamshare of the Recording.

**DOCUMENT REQUEST NO. 67:**

All Documents and Communications relating to the use of Bots, Artificial Streaming, or similar methods in connection with the Recording, Image, or Video on any platform, including but not limited to Spotify, YouTube and TikTok.

**DOCUMENT REQUEST NO. 68:**

All Documents reflecting the performance, engagement, or streaming metrics and individual post analytics of all publications of the Recording or Video by accounts under Your control on YouTube, including such metrics and analytics available on account and/or channel dashboards.

**DOCUMENT REQUEST NO. 69:**

Documents sufficient to show the specific playlists the Recording was added to and removed from on Spotify, Apple Music, Amazon Music, and YouTube Music from May 4, 2024 to the present, including the date and time it was added and/or removed.

**DOCUMENT REQUEST NO. 70:**

All Documents reflecting the performance, engagement, or streaming metrics and individual song analytics (including, but not limited to, the number of streams, unique monthly listens, and unique monthly listeners) of the Recording on Spotify, including such metrics and analytics reflected in monthly usage reports and available on Spotify for Artists or on other user dashboards.

**DOCUMENT REQUEST NO. 71:**

Documents sufficient to show, by the hour, the number of streams or plays, completion rate (rate of users who finish playing the Recording), skip rate (rate of users who skip the Recording once it begins to play), and average duration of play (length of time users play the Recording) of the Recording on Spotify, Apple Music, Amazon Music, and YouTube Music from May 4, 2024 to the present, as defined and measured by the respective platform.

**DOCUMENT REQUEST NO. 72:**

Documents sufficient to show, by the hour, the number of likes, saves, or follows of the Recording on Spotify, Apple Music, Amazon Music, and YouTube Music from May 4, 2024 to the present.

**DOCUMENT REQUEST NO. 73:**

Documents sufficient to show, by the hour, the demographics of listeners, including such listeners' ages, genders, countries, and cities, and the source of listeners (such as the listeners' queue, personalized editorial playlists, other playlists, search, or charts), who played or streamed the Recording on Spotify, Apple Music, Amazon Music, and YouTube Music.

**DOCUMENT REQUEST NO. 74:**

All Documents and Communications reviewed, consulted, retrieved, or otherwise relied on by You in answering, responding to, or objecting to these Requests and any previous or subsequent document requests, interrogatories, or requests for admission served by Drake in this litigation.

**DOCUMENT REQUEST NO. 75:**

All Documents and Communications with Kendrick Lamar Duckworth, his agents, or anyone working on his behalf relating to the meaning or intent of the Recording, Image, or Video, or any portion(s) thereof, including, but not limited to the following: "Say, Drake, I hear you like 'em young;" "You better not ever go to cell block one;" "Just make sure you hide your lil' sister from him;" "Certified Lover Boy? Certified pedophiles;" "Tryna strike a chord and its probably A minor;" "Shape the stories how you want, hey, Drake, they're not slow;" "Rabbit hole is still deep, I can go further, I promise;" "And your homeboy need a subpoena, that predatory move in flocks;" "That name gotta be registered and placed on neighborhood watch;" the image of Kendrick Lamar Duckworth playing hopscotch; the image of a caged owl; and the image of shipping containers.


Dated: June 3, 2025

By: /s/ Michael J. Gottlieb
Michael J. Gottlieb
Meryl C. Governski (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
mgottlieb@willkie.com
mgovernski@willkie.com

Brady M. Sullivan
M. Annie Houghton-Larsen
WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
bsullivan@willkie.com
mhoughton-larsen@willkie.com

*Counsel for Plaintiff Aubrey Drake Graham*