# EXHIBIT 8

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099

Tel: 212 728 8000
Fax: 212 728 8111

July 3, 2025

**VIA ELECTRONIC MAIL**

Nicholas P. Crowell
Katelin Everson
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5449
Ncrowell@sidley.com
Keverson@sidley.com

Re:   *Graham v. UMG Recordings, Inc.*, No. 1:25-cv-00399-JAV (S.D.N.Y.)

Counsel,

We write regarding a number of issues with respect to UMG's document collection and production.

**Lucian Grainge**:  Plaintiff renews his request that UMG collect, review, and produce Lucian Grainge's custodial documents.[1]

UMG has now made clear that it intends to argue that Plaintiff must prove that particular individuals at UMG acted with actual malice.  *See* MTD at 19 ("Because UMG is a corporation, Drake must also plead 'specific allegations that individuals at [UMG] acted with actual malice' at the time that they 'participated in the publication of the statement in question.'") (citation omitted).  The Amended Complaint ("AC") pleads that Lucian Grainge was one such individual.

Specifically, the AC alleges that Sir Grainge was "involved in the initial publication of the Recording, Image," ¶ 69, and Video, ¶ 112.  The AC alleges that UMG has always known that Drake is not a pedophile and had no history of sexual abuse allegations and that UMG's substantial investment in Drake as one of its flagship artists evidences as much.  ¶¶ 120–24.  The AC connects these allegations directly to Sir Grainge, alleging that, in 2022, he praised Drake's contract extension by calling him one of the "biggest artists of today" and expressing that "UMG couldn't be more excited about what lies ahead" for its relationship with Drake.  ¶ 51.  The AC also alleges that Sir Grainge is the author who introduces the UMG Code of Conduct, which states that UMG does not tolerate "human rights abuses such as . . .

---

[1] Plaintiff previously stated that he reserved rights with respect to UMG's refusal to designate Lucian Grainge as a custodian.

human trafficking and unsafe or unfair work practices" and only "conducts business with partners . . . who share our commitment to protecting human rights." At the beginning of the Code of Conduct, Sir Grainge says that UMG's leadership should be "held accountable for the decisions we make and how we conduct ourselves." ¶ 209. The AC alleges that Sir Grainge has personal knowledge of the massive harm created by false accusations of sexual misconduct and how such accusations can destroy someone's reputation instantly: "a single lie can destroy a reputation of integrity and . . . while it takes years to build a reputation, it can be ruined in five minutes." ¶¶ 20, 125, 222–23. The AC connects UMG's incentive "to devalue Drake's music and brand in order to gain leverage in negotiations for an extension" of his contract (¶ 52) with Sir Grainge, alleging that he is well known for the "encouragement of competition between UMG record labels." ¶ 49. The AC alleges direct involvement in the Grammy publication by Sir Grainge, who was present for the event and captured on video celebrating the Recording winning the Grammy for Record of the Year. ¶ 164. The AC also alleges in detail the legal demands sent by Plaintiff to senior ranking UMG officials in July and August of 2024. ¶¶ 203-215. There is no doubt that Sir Grainge was made aware of these detailed denials from Drake, as well as Drake's description of the harm he had suffered as a result of the false allegations. We also have reason to believe that Sir Grainge was personally involved in decisions made regarding the marketing and promotion of the Recording around the release of the Recording. These allegations and assertions are more than sufficient to justify designating Sir Grainge as a document custodian.

UMG's justifications for refusing to collect, review, and produce Sir Grainge's documents have been shifting and inconsistent. You originally argued that Sir Grainge was exempt from document discovery because he is an "apex" custodian. However, after we sent you case law demonstrating that courts do not apply an apex doctrine to document discovery, you stated on a subsequent meet and confer that you were no longer relying on the "apex" assertion. You also took the position that discovery from Sir Grainge would be "cumulative" or "duplicative" of John Janick and Monte Lipman, while simultaneously arguing that Sir Grainge had "no role in the matters at issue in this litigation." *See* June 3, 2025 letter from Nicholas Crowell. It is unclear how both can be correct, and in any event, if it were true that Sir Grainge had "no role in the matters at issue in this litigation," there would be little or no burden in searching his documents with relevant search terms.[2] The only other argument on this topic that we have heard from UMG is that UMG disputes Plaintiff's allegations concerning Sir Grainge. But that is not grounds for denying discovery into Sir Grainge's documents. *See N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48–49 (E.D.N.Y. 2018) (a defendant's "opposition to a discovery motion is not the proper forum for raising challenges to the viability of [plaintiff's] claims, nor are such challenges proper grounds to preclude otherwise appropriate discovery.").

**Additional Custodians**: In its Responses and Objections to Plaintiff's Interrogatories, UMG listed six "UMG employees" with "knowledge of payments, incentives, or any other form of consideration provided by UMG or any third party in a contractual or agency relationship with UMG, whether directly or indirectly, to encourage, induce, or cause anyone to play, feature, market, or promote the Recording,

---

[2] As far as we are aware, you have not run any forensic searches across Sir Grainge's email, text messages, or other custodial files to substantiate any of your claims.

Image, or Video on any medium or platform . . . ." John Kozack was among the individuals. *Id.* at 5. However, UMG has not included Mr. Kozack in its list of agreed upon document custodians. Please confirm you will do so.

Plaintiff also requests that UMG add Jason Kawejsza as a custodian. Mr. Kawajsza signed the Interscope Agreement with Kendrick Lamar, dated April 27, 2024. Accordingly, Mr. Kawajsza is very likely to have responsive (and non-privileged) information about UMG's relationship with Kendrick Lamar, the Recording, and other relevant topics.

**Kendrick Lamar Contract**: On June 24, 2025, you produced a heavily redacted version of the Interscope Agreement with Kendrick Lamar at UMG_000001873. The extent of your redactions—which cover the *vast majority* of the 22 page agreement—render the agreement unreadable and incomprehensible. The redactions are plainly improper, especially because the parties specifically agreed to treat these types of contracts as Attorneys' Eyes Only under the terms of the Protective Order. *See Durling v. Papa John's Int'l, Inc.*, No. 16-CV-03592 (CS) (JCM), 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018). Your unilateral responsiveness redactions are all the more problematic given that UMG itself has previously refused to permit Plaintiff to make responsiveness redactions, telling Plaintiff that doing so would be "highly unusual and inappropriate" and that "there is no provision in the federal or local rules for redaction of non-responsive portions of otherwise responsive documents[.]" *See* May 12, 2025 Email from K. Everson.[3]

Plaintiff demands that UMG produce an unredacted version of the document bearing bates number UMG_000001873.

**Plaintiff's Request Nos. 11, 12, 17:** In Plaintiff's RFPs 11 and 12, Plaintiff seeks documents sufficient to show certain executive compensation information for John Janick and Interscope for the past five years. In Request 17, Plaintiff seeks documents sufficient to show the total money spent by UMG on the production of the Recording and Video. After refusing to produce any documents responsive to these requests, you agreed many weeks ago to confer with your client and get back to us. We never heard back; please let us know your position.

---

[3] "The weight of authority in [the Second] Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'" *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (quoting *Cyris Jewels v. Casner*, 2016 WL 2962203, at *4 (E.D.N.Y. May 20, 2016); *see also Coventry Capital US LLC v. EEA Life Settlements Inc.*, 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020) *objections overruled*, 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021).

Sincerely,

*/s/ Brady M. Sullivan*

Brady M. Sullivan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY
(212) 728-8949
bsullivan@willkie.com

- 4 -