# WILLKIE FARR & GALLAGHER LLP

1875 K Street, NW
Washington, D.C. 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

August 12, 2025

**VIA ECF**

Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     *Graham v. UMG Recordings, Inc.*, 1:25-cv-399 (JAV)

Dear Judge Vargas:

Pursuant to Sections 3(A) and 6(B) of the Court's Individual Rules and Practices in Civil Cases and Federal Rules of Civil Procedure 26 and 37, Plaintiff Aubrey Drake Graham ("Plaintiff" or "Drake") respectfully requests an order compelling Defendant UMG Recordings, Inc. ("Defendant" or "UMG") to produce discovery responsive to Plaintiff's Requests for Production 11, 12, 29, 30, 31, 33, and to produce an unredacted version of its recording agreement with Kendrick Lamar Duckworth responsive to Request Number 1 (the "Lamar Contract").[1]  The disputed RFPs are attached hereto as Exhibits 1 and 5.

Under the Federal Rules of Civil Procedure, Plaintiff is entitled to discovery regarding any nonprivileged matter relevant to any claim or defense, with relevance being broadly construed. *See* Fed. R. Civ. P. 26(b)(1); *see, e.g.*, *Lindsey v. Butler*, No. 11 CIV. 9102 (ER), 2017 WL 4157362, at *3 (S.D.N.Y. Sept. 18, 2017).  Once Plaintiff has shown relevance, the burden is on UMG to show why the requested discovery is not justified. *See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012).  "General and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery of requested information." *Trilegiant Corp. v. Sitel Corp.*, 275 F.R.D. 428, 431 (S.D.N.Y. 2011) (internal citations omitted).

**Requests 29 and 30**: Request 29 seeks documents related to UMG's historical censorship, modification, or alteration of, or decision not to license, publish, or promote, any musical work based on its content. Ex. 4.  Request 30 seeks the same types of documents with respect to musical

---

[1] In addition to meeting and conferring by telephone and through numerous letters, *see infra*, the parties participated in a telephonic meet and confer on August 7 at 4:00 p.m. for 15 minutes.  In attendance were: Brady Sullivan, M. Annie Houghton-Larsen, Anna Gotfryd, Nick Crowell, and Katelin Everson.  During the conference, Plaintiff informed Defendant that Plaintiff believed the parties were at an impasse and that Plaintiff would be requesting relief from the Court.  On August 12, Defendant confirmed that the parties were at an impasse.

works by Pusha T, and in particular, Pusha T's song "The Story of Adidon," as press reports indicate that UMG-owned record label Def Jam "suppress[ed]" and "muddled if not outright nixed the release of verses in which Pusha talked his shit next to people closely affiliated with Drake." *See* Ex. 4; Tharpe, Frazier, *Clipse Talk Love, Hate, and What Rap's Been Missing*, GQ (June 1, 2025) https://www.gq.com/story/clipse-gq-hype. UMG has refused to produce documents responsive to Requests 29 and 30. UMG's principal objection to Requests 29 and 30 is relevance.

In the Amended Complaint ("AC"), Plaintiff alleges that, in UMG's standard longform contract and UMG's contract with Mr. Duckworth, UMG has a contractual right to censor or restrict musical works, including rap lyrics, based on what UMG perceives to be defamatory or otherwise harmful content. ¶¶ 50, 55.[2] Insofar as UMG has historically exercised those rights—and Plaintiff has reason to believe it has—documents surrounding UMG's decisions and actions are relevant to Plaintiff's defamation claim. One of the parties' core disputes with respect to Plaintiff's defamation claim is whether and to what extent reasonable consumers would have understood the Defamatory Material to convey statements of fact—and UMG has taken the position that rap lyrics can *never* be understood as such. ECF No. 43 at 9-12. Plaintiff is entitled to probe UMG's position, including as manifested by UMG's own conduct. Documents showing that UMG attempted to (or did) censor or alter rap lyrics is relevant to testing UMG's position that rap lyrics are not understood by the reasonable listener as conveying factual information. Such documents would also reveal why, and under what circumstances, UMG believes it is appropriate to censor its artists' expression, which Plaintiff could evaluate alongside UMG's decisions regarding "Not Like Us." UMG's past practice, and knowledge regarding prior defamatory material it has refused to publish, would be highly probative of UMG's knowledge here.

**Requests 11, 12**: These requests seek documents "sufficient to show" the executive compensation structure of Interscope's CEO John Janick for the past five years (RFP 11) and Interscope's 2024 executive incentive metrics (RFP 12). Ex. 1. UMG owns Interscope, and Interscope is the label that represents Mr. Duckworth. ¶ 9. UMG's sole objection to Requests 11 and 12 is relevance. Ex. 2.

Plaintiff alleges that the incentive structure for executives at UMG's labels motivated UMG to defame Drake. Specifically, Plaintiff alleges that UMG and Lucian Grainge encouraged "competition between the UMG record labels," including between Interscope and Republic, which represented Drake. ¶ 49. Janick and other executives' compensation was determined, at least in part, based on their success in this competition. ¶ 48. In other words, UMG's division-based incentive structure pitted Lamar's label against Drake's label, providing a clear financial incentive for Janick and Interscope to promote Mr. Duckworth's music, including the Defamatory Material,[3] and to harm Drake, thereby diminishing the performance of Janick's "competitor" at Republic. ¶ 49. Requests 11 and 12 are narrowly tailored to capture documents relevant to Plaintiff's theory.

---

[2] Unless otherwise specified, all citations to "¶__" are to the AC.

[3] All capitalized terms not defined herein have the meaning set forth in the Amended Complaint, ECF No. 41.

**Requests 31 and 33**: These requests seek documents "sufficient to show Interscope's monthly revenues and profits" for the past five-and-a-half years (RFP 31) and the value of Mr. Duckworth's Recording Catalog for the past five-and-a-half years (RFP 33). Ex. 4. Plaintiff understands that UMG's principal objection to Requests 31 and 33 is relevance.

These limited requests are relevant to Plaintiff's theory that UMG's defamation of Drake was motivated, at least in part, by increasing revenues and profits derived from the defamatory material—which also impacted executive compensation. Plaintiff has requested materials for the last five and a half years in order to be able to compare the financial impact of the Defamatory Material on Interscope and UMG to past years. It is difficult to understand why UMG refuses to produce basic financial information, especially when the requests are limited by "sufficient to show." Request 33 is further relevant to Plaintiff's theory that UMG was incentivized to promote the Defamatory Material not only to profit in the near-term, but also to heavily monetize in the future: UMG wanted to prove it could immediately maximize Mr. Duckworth's value to convince him to re-sign exclusively with UMG long-term. ¶¶ 9, 213.

**Lamar Contract**: Plaintiff's Request 1 seeks contracts and agreements with Mr. Duckworth, including those that reflect UMG's right to approve, reject, refuse to publish, edit, amend, alter, or veto the publication of his Musical Works, Music Videos, or other content. *See* Ex. 1. On June 24, 2025, UMG produced an untitled document styled as a letter from Interscope Records, A Division of UMG Recordings, Inc., to Mr. Duckworth, which appears to be a contract between the two. Ex. 5.[4] However, the vast majority of the 22-page agreement is redacted, rendering it virtually unreadable and incomprehensible.

The parties negotiated, stipulated to, and the Court entered a two-tier Protective Order, which permits the designation of material as Attorneys' Eyes Only ("AEO"). *See* ECF Nos. 46, 49. As the parties represented to this Court, the AEO tier—which goes beyond the Court's standard template—was intended to cover "the production of certain categories of highly confidential or proprietary business information, ***specifically, previously undisclosed contracts*** and information regarding business relationships with non-parties to this litigation, the disclosure of which would be highly likely to cause significant harm." ECF No. 46 (emphasis added). In other words, the whole point of the parties' deviation from Court's standard template was to permit the production of documents like the Lamar Contract. Nevertheless, although Plaintiff has no objection to UMG designating the Lamar Contract as AEO, UMG refuses to produce an unredacted version.

UMG cannot unilaterally decide which portions of an indisputably responsive contract Plaintiff is entitled to see. It is well-established that relevance redactions are "particularly impermissible" where, as here, "a confidentiality stipulation and order is in place." *Coventry Cap. US LLC v. EEA Life Settlements Inc.*, No. 17 CIV 7417 (SLC), 2020 WL 7383940, at *9 (S.D.N.Y. Dec. 16, 2020), objections overruled, No. 17 CIV. 7417 (VM) (SLC), 2021 WL 961750 (S.D.N.Y. Mar. 15, 2021); *see also Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (quoting *Cyris Jewels v. Casner*, No. 12 CV 1895 (KAM) (SLT), 2016 WL 2962203, at *4

---

[4] To date, UMG has not produced any other agreements responsive to this Request, and Plaintiff reserves all rights.

(E.D.N.Y. May 20, 2016) ("The weight of authority in [the Second] Circuit goes against allowing a party to redact information from admittedly responsive and relevant documents 'based on that party's unilateral determinations of relevancy.'").  Courts in this circuit are also loathe to permit relevance objections that "deprive the reader of context," *Christine Asia Co.*, 327 F.R.D. at 54, as context is particularly important for contract interpretation.  *See Norris v. Goldner*, No. 19 CIV 5491 (PAE) (SN), 2023 WL 5477229, at *9 (S.D.N.Y. Aug. 24, 2023) ("In contract interpretation, it is axiomatic that [p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby.") (quotation omitted); *Dreni v. PrinterOn Am. Corp.*, No. 18 CV 12017 (MKV), 2021 WL 4066635, at *3 (S.D.N.Y. Sept. 3, 2021); *Design Partners, Inc. v. Five Star Elec. Corp.*, No. 12 CV 2949 (PKC), 2018 WL 3636700, at *18 (E.D.N.Y. Feb. 24, 2018) ("[T]he Court construes the relevant provision . . . in accordance with general principles of contract interpretation under New York law, starting with the plain language of the provision in the context of the agreement as a whole.") (citation omitted).  Ironically, when the parties were negotiating a document-review protocol, UMG refused to permit Plaintiff to make responsiveness redactions in Plaintiff's productions, telling Plaintiff that doing so would be "highly unusual and inappropriate," and that "there is no provision in the federal or local rules for redaction of non-responsive portions of otherwise responsive documents."  *See* Ex. 3.

The Court should enter an order compelling UMG to promptly produce discovery responsive to Requests 11, 12, 29, 30, 31, and 33 and an unredacted version of the Lamar Contract.

                                                        Respectfully submitted,

                                                        **Willkie Farr & Gallagher LLP**
                                                        /s/ *Michael J. Gottlieb*

                                                        *Counsel for Plaintiff*

cc:  All counsel of record via ECF