# EXHIBIT 2

# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

April 22, 2025

**VIA EMAIL**

Nicholas P. Crowell
Katelin Everson
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 212-839-5449
Ncrowell@sidley.com
Keverson@sidley.com

Re:   *Graham v. UMG Recordings, Inc.*, No. 1:25-cv-00399-JAV (S.D.N.Y.)

Dear Counsel,

I write to memorialize our April 17, 2025 meet and confer regarding UMG's responses and objections to Plaintiff's first set of requests for production and related discovery matters, as well as to provide Plaintiff's understanding of the current status of UMG's responses and next steps.

This letter is not intended to cover every topic that we discussed. Unless explicitly stated herein, Plaintiff disagrees with UMG's responses and objections and reserves all rights.

On many of the items we discussed, you stated that you needed to go back to your client. You stated that while your client was at the time on vacation, you expected to be able to speak with them early this week.

**Preliminary Matters**

- Protective Order and ESI Protocol: You will promptly provide additional comments (if any).

- Org chart: UMG agreed to search for and produce an organizational chart to assist Plaintiff in identifying potentially relevant custodians.

- Search Terms: Plaintiff and UMG agreed that utilizing custodians and search terms would be appropriate for certain requests. Plaintiff is willing to propose an initial set of search terms and custodians.

**Definitions and Instructions**

- Objection No. 1: You agreed to search for and produce an org chart to assist Plaintiff in evaluating UMG's proposed narrowing of the definition of "You," Your," and "Yours."

- Objection No. 5: You reiterated UMG's representation that it has no control over what Kendrick Lamar performs live. We requested that UMG produce documents to support this representation. You represented that such documents are encompassed by and within the scope of what UMG has agreed to produce in response to Request No. 1.

- Objection No. 6: You agreed to get back to us with a proposed definition of "Payola."

- Objection No. 13: The parties agreed to defer consideration of UMG's objection with respect to not logging certain communications. The parties agreed to meet and confer in the future about privilege logs.

**Specific Requests and Responses**

- Request No. 1: You agreed to produce redacted versions of contracts in the first instance. You further agreed to apply the redactions in a manner that permits Plaintiff to understand the subject matter of what has been redacted and to fairly evaluate whether Plaintiff wishes to challenge any such redactions. Plaintiff reserved all rights to request unredacted versions of the contracts. Plaintiff also requested that you not redact any definitions, definition sections, or section headings in the contracts.

- Request No. 2: We clarified the meaning of "approval and consent" based on our understanding that there is a process at UMG through which approval must be provided before a song can be published on music platforms. You agreed to confer with your client about this request and get back to us.

- Request No. 3: Reserving all rights, we agreed to narrow this request by removing the following language: "or the promotion of any Musical Works by Kendrick Lamar Duckworth." You agreed to confer with your client and get back to us.

- Request No. 4: You clarified that you understood the meaning of "discretionary marketing funds." We told you that Plaintiff does not agree to limit this request to "documents sufficient to show" because the details surrounding payments through discretionary marketing funds, including communications in connection therewith, are relevant to Plaintiff's claims. The parties agreed to negotiate a list of custodians and search terms for this request.

- Request No. 5: You confirmed that the use of "Not Like Us," as opposed to the "Recording, Image, and Video," is not a limitation in UMG's response. We told you that Plaintiff does not agree to limit this request to "documents sufficient to show." The parties agreed to negotiate a list of custodians and search terms for this request.

- Request No. 6: We told you that Plaintiff does not agree to limit this request to "documents sufficient to show." We explained that such narrowing would limit responsive documents

to those showing the fact that copyright restrictions were lifted and later reinstated, which Plaintiff already knows based on public records. Additional relevant information will include documents and communications showing why and how these decisions were reached by UMG. The parties agreed to negotiate a list of custodians and search terms for this request.

- Request No. 7: We clarified that this request is directed at UMG's general policies and procedures, not policies specific to the Recording and Video. You stated that UMG's response was not intended to limit the scope of the request for any particular reason, but that you need to get a better understanding of what policies and procedures exist across UMG, which you agreed to do.

- Request No. 8: We told you that Plaintiff does not agree to limit this request to "documents sufficient to show." You explained that responsive documents may exist in a particular department and may show that UMG spent a certain amount of money in connection with the Grammy Awards. You agreed to confer with your client to get more detail as to what types of responsive documents may exist and to get back to us.

  We also offered to clarify the potion of this request pertaining to archival footage. As referenced in the article cited in the request,[1] the National Academy/Grammy Awards appears to have deleted portions of the footage of the award presentation for Record of the Year from its YouTube page, including footage playing portions of the Recording directed at Plaintiff. The archived footage is available at: https://www.youtube.com/watch?v=_HtmXTNn2Rw and https://www.youtube.com/watch?v=PqqAnsm4agc. Plaintiff requests all Documents and Communications concerning the modification of the footage, including both internal communications and communications with the National Academy or representatives thereof. Please confirm your agreement to search for and produce these documents.

- Request No. 9: You represented that UMG was not involved in the live performance of the Recording at the Super Bowl, and that its only involvement may have been providing permission for a back-up tape in case something went wrong during the performance but that you would confirm as much. We told you that Plaintiff does not agree to limit this request to "documents sufficient to show." We reiterated our request for all responsive documents and communications, which should not be burdensome if UMG had minimal or no involvement. You said you will confirm whether this is acceptable and that UMG will produce what they have.

- Request No. 10: Plaintiff agreed that UMG's list of platforms in its response to Request No. 10 was sufficient as a starting point but reserved rights to include additional platforms in the future.

---

[1] https://www.hotnewhiphop.com/892143-grammys-deletes-clip-crowd-singing-kendrick-lamar-not-like-us-drake-lawsuit-hip-hop-news.

- Request Nos. 11-12: The parties disagree about the relevance of these requests.  You stated that you will discuss with your client and get back to us.

- Request No. 14: The parties agreed to negotiate a list of custodians and search terms for this request.

- Request No. 15: We clarified that "promotion" on Spotify and Apple Music refers to the platforms' promotion of the Recording through, for example (without limitation), featuring the Recording on curated playlists, in recommendations or "for you" pages, on landing pages, in search results, and through the use of influencers.  The parties agreed to negotiate a list of custodians and search terms for this request.

- Request No. 16: We clarified that this request is intended to cover objections or concerns raised within UMG or to UMG about the content of the Recording, Image, and Video.  The references to pedophilia and child sexual abuse in the Recording, Image, and Video are serious and so, for example (without limitation), certain individuals may have voiced concerns or questions as to whether it was appropriate to publish the material, or whether there was evidence substantiating the allegations.  You stated that you will confer with your client and get back to us.

- Request No. 17: The parties disagree about the relevance of this request.  You agreed to confer with your client and get back to us.

- Request No. 18: We clarified that expenditures could be considered "indirect" if, for example, UMG reimbursed a third party for promotional efforts, such that it may not be considered money spent directly by UMG, but it was ultimately paid for by UMG through reimbursements to third parties.

Sincerely,

*/s/ Brady Sullivan*

Brady Sullivan
Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, NY
(212) 728-8949
Bsullivan@willkie.com

4