

SIDLEY AUSTIN LLP  
350 SOUTH GRAND AVENUE  
LOS ANGELES, CA 90071  
+1 213 896 6000  
+1 213 896 6600 FAX

+1 213 896 6047  
RRANSOM@SIDLEY.COM

August 14, 2025

**By ECF**

Honorable Jeannette A. Vargas  
United States District Judge  
Southern District of New York  
500 Pearl Street  
New York, NY 10007

      Re:    *Aubrey Drake Graham v. UMG Recordings, Inc.*  
              Case No. 1:25-cv-399-JAV  
              <u>Letter Opposition to Drake's Motion to Add Sir Lucian Grainge as a Custodian</u>

Dear Judge Vargas:

      In his first motion to compel, Plaintiff Aubrey Drake Graham ("Drake") seeks to have Sir Lucian Grainge added as a document custodian because he is the CEO of Defendant UMG Recordings, Inc.'s ("UMG") indirect parent corporation, Universal Music Group N.V. *See* ECF No. 78. Drake does so, even though he previously agreed not to seek documents from Sir Lucian in light of UMG's agreement to designate and produce relevant documents from eleven document custodians, *see* ECF No. 79-10 at 2-3, including the CEO of Interscope Records, the label that released "Not Like Us."[1]

      Drake's motion is a transparent attempt to use discovery to harass UMG and force it to waste time and resources out of spite. The premise of Drake's motion—that he could not have lost a rap battle unless it was the product of some imagined secret conspiracy going to the top of UMG's corporate structure—is absurd. Sir Lucian is the CEO of a multinational enterprise; his days are spent determining and implementing global strategy, not vetting individual tracks or album covers or driving the release and promotional plans for any one recording. And even if Sir Lucian had any responsive documents, they would surely be captured by discovery from UMG's other document custodians, who were actually responsible for releasing and promoting "Not Like Us." Drake does not come close to meeting his burden of showing that Sir Lucian must be a custodian. His motion should be denied.

      Drake begins his motion by citing a case *not* involving document custodians to incorrectly assert that "[o]nce Plaintiff has shown relevance, the burden is on UMG to show why the requested discovery is not justified." ECF No. 78 at 1 (citing *Fireman's Fund Ins. Co. v. Great Am. Ins.Co.*

---

[1] Indeed, UMG has already produced nearly 3,500 confidential documents from these custodians. Drake, by contrast, has produced only his counsel's communications with UMG and public articles and social media posts, nearly all of which were pulled from the internet in the past few months.

# SIDLEY

Page 2

of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012)). As to the issue *here*—the identification and selection of custodians—that is not the law. In fact, it is well-settled that "[a]bsent agreement among the parties [] the responding party is entitled to select the custodians most likely to possess responsive information and to search the files of those individuals." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2017 WL 2305398, at *2 (S.D.N.Y. May 18, 2017). That choice is not disturbed "[u]nless [it] is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient[.]" *Id.*

At a minimum, Drake bears the "burden in showing that the requested custodian is likely to have non-cumulative relevant documents." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2023 WL 2871090, at *9 (S.D.N.Y. April 10, 2023) (cleaned up); *see also Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, 2021 WL 961750, at *2 (S.D.N.Y. Mar. 15, 2021) (requirement that a moving party must "demonstrate that discovery from [additional] custodians would be relevant and nonduplicative" is "consistent with longstanding discovery principles"). This burden cannot be met with "mere speculation." *Assured Guar. Mun. Corp. v. UBS Real Estate Secs., Inc.*, 2013 WL 1195545, at *5 (S.D.N.Y. Mar. 25, 2013) (cleaned up).

Drake fails to meet his burden to show that Sir Lucian has documents that are both relevant and non-cumulative. As an initial matter, Sir Lucian has at most only minimal relevance to this action. As Sir Lucian explains, because he runs "a publicly-traded, multi-billion dollar, multi-national corporation," he does not get into "the weeds as to the release and promotion of any particular sound recording." Declaration of Sir Lucian Grainge, CBE ¶ 3. Sir Lucian in fact "never heard the recording 'Not Like Us,' nor ever saw the corresponding cover art or music video, until after they were released by Interscope Records." *Id.* ¶ 4. And while Sir Lucian has "financial oversight of and responsibility for UMG's global businesses, the proposition that [he] was involved in, much less responsible for, reviewing and approving the content of 'Not Like Us,' its cover art or music video, or for determining or directing the promotion of those materials, is groundless and indeed ridiculous." *Id.*

In contrast, Drake's attempts to show Sir Lucian's relevance are so strained that they defy credulity. *See* ECF No. 78 at 2. Drake cites to his own "information and belief" allegations that Sir Lucian was "involved" in the "publication" of "Not Like Us," AC ¶ 69 and "played a key role" in "approving the publication *and/or failing to prevent* [the music video's] publication," *id.* ¶ 112 (emphasis added). But these allegations—which do not plead that Sir Lucian necessarily did anything at all—are unaccompanied by any facts and thus amount to nothing more than "mere speculation," *Assured Guar. Mun. Corp.*, 2013 WL 1195545, at *5, which does nothing to show that Sir Lucian "likely" has "non-cumulative relevant documents"—especially given Sir Lucian's sworn declaration to the contrary. *LIBOR-Based Fin. Instruments*, 2023 WL 2871090, at *9.[2]

---

[2] Drake's reliance on these allegations is rendered even more ridiculous by his assertion that "[s]ince the filing of the AC, Plaintiff now also has reason to believe that Grainge was personally involved in decisions made regarding the marketing and promotion of the Recording around its release." ECF No. 78 at 2. If Drake has facts that he believes substantiates his bald assertion, he

# SIDLEY

Page 3

That Sir Lucian briefly praised Drake on an earnings call in 2022 also lacks any connection to potentially relevant documents. Nor does Drake even attempt to explain how his motion is supported by the fact that Sir Lucian wrote in the introduction to UMG's Code of Conduct that "[w]e are accountable for the decisions we make and how we conduct ourselves." AC ¶ 209. And Drake's reliance on portions of the Code of Conduct that he implicitly concedes Sir Lucian did not write is even farther afield. *Id.* ¶ 122. Likewise, Sir Lucian's denial of false allegations related to Sean Combs, the alleged impact of "competition" between record labels on Interscope's CEO, and Drake's legal demands provide no indication at all that Sir Lucian has relevant documents. Particularly strange (and petty) is Drake's assertion that Sir Lucian should be added as a custodian because he *celebrated a Grammy win by Kendrick Lamar, one of UMG's artists*—something that is obviously irrelevant but that surely annoyed Drake.[3]

The only occasion where Drake even attempts to connect Sir Lucian to the elements of his claims is to argue that discovery from Sir Lucian could be relevant to actual malice. *See* ECF No. 78 at 2. But even this argument is lacking: "[w]hen there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice." *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013). But Drake, again, can point to nothing to suggest that Sir Lucian—the CEO of the entire company—is the individual responsible for publishing "Not Like Us."

At its core, Drake's motion seeks discovery from Sir Lucian based on "speculation that his position as a senior executive might increase the relevance of his files," but as courts have repeatedly held, this "is not a basis for designating him as a custodian." *Mortg. Resolution Servicing*, 2017 WL 2305398, at *3; *LIBOR-Based Fin. Instruments*, 2023 WL 2871090, at *10 (denying discovery from "high-level executives" where "plaintiffs' reasoning for their inclusion does not sufficiently show that a search of their documents would provide unique, relevant and noncumulative evidence") (cleaned up); *Assured Guar. Mun. Corp.*, 2013 WL 1195545, at *3 (denying addition of custodians where the moving party "simply speculates that the positions of [the proposed custodians] as senior executives" makes them relevant).

Moreover, any relevant documents in Sir Lucian's possession would surely be captured by searches of UMG's eleven other custodians. For this to be otherwise, Sir Lucian would not only have to have been involved in the events underlying this case, but would have to have done so in a way that somehow excluded the individuals actually responsible for the publication and promotion of "Not Like Us."

Drake never actually denies that the vast majority of whatever relevant documents Sir

---

should have raised them during the meet-and-confer process, and in all events was required to state them in his motion. His refusal to do so is telling.

[3] Drake claims that the "AC alleges direct involvement in the Grammy publication by Grainge," but no such allegation is actually in the Amended Complaint. ECF No. 78 at 2 (citing AC ¶ 164).

# SIDLEY

Page 4

Lucian has are likely duplicated elsewhere. He asserts that this duplicativeness issue is "meaningless" and "irrelevant," ECF No. 78 at 3, but "longstanding discovery principles," require a movant to "demonstrate that discovery from [additional] custodians would be relevant *and nonduplicative.*" *Coventry Cap.*, 2021 WL 961750, at *2 (emphasis added); *see also LIBOR-Based Fin. Instruments*, 2023 WL 2871090, at *9 (same); *Mortg. Resolution Servicing*, 2017 WL 2305398, at *3 (same); *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (same); *Assured Guar. Mun. Corp.*, 2013 WL 1195545, at *5 (same). Drake's denigration of the relevant standard betrays his inability to meet it. Drake's argument about "deduping" is both inconsistent with this weight of authority and also misses the (obvious) point. If whatever *relevant* documents Sir Lucian has are eliminated by deduping, then searching the *irrelevant* documents that remain would have only "minimal marginal value." *LIBOR-Based Fin. Instruments*, 2023 WL 2871090, at *10 ("unique, relevant" evidence needed). Even the case Drake cites recognizes that duplicativeness concerns should preclude adding another custodian if the party otherwise "produce[s] a considerable volume of documents"—and here, UMG is producing documents from eleven custodians. *Felder v. Warner Bros. Discovery, Inc.*, 2025 WL 1718098, at *10 n.3 (S.D.N.Y. June 20, 2025). Drake's argument that he needs to know whether a particular document was in Sir Lucian's possession or sent by him is a *non sequitur* since communications produced from the eleven designated custodians will show what was sent or received by Sir Lucian.

Drake's barb about UMG's "untested factual averments" is mooted by Sir Lucian's declaration. *See* ECF No. 78 at 3. And regardless, his argument inverts what is *Drake's burden* to justify Sir Lucian as a custodian and would circularly require UMG to conduct the very discovery at issue, which is why it has been repeatedly rejected. *See Fort Worth Emps. Ret. Fund*, 297 F.R.D. at 107 (noting that the plaintiffs' argument about the defendant's "*ipse dixit* assertions" of duplicativeness "misconstrues the nature of the plaintiffs' burden here"); *Assured Guar. Mun. Corp.*, 2013 WL 1195545, at *3 (rejecting custodians despite argument about "unsworn conclusions"). Contrary to Drake's assertion, this discovery dispute is not about the "viability" of Drake's claims (though they are indeed meritless), but rather whether Sir Lucian has any non-duplicative materials relevant to those claims.

Ultimately, Drake resorts to a "heads I win, tails you lose" argument, asserting that Sir Lucian should be added as a custodian regardless of whether he is likely to have any nonduplicative relevant documents. In other words, Drake argues that Sir Lucian must be a custodian for no other reason than because Drake asked for him. That is entirely inconsistent with the law and is particularly inappropriate given that Drake's request is clearly based on a desire to harass UMG, rather than for a legitimate reason. Drake's motion should be denied.

Respectfully submitted,

*/s/ Rollin A. Ransom*
Rollin A. Ransom

*Attorney for UMG Recordings, Inc.*