

SIDLEY AUSTIN LLP
350 SOUTH GRAND AVENUE
LOS ANGELES, CA 90071
+1 213 896 6000
+1 213 896 6600 FAX

+1 213 896 6047
RRANSOM@SIDLEY.COM

August 14, 2025

**By ECF**

Honorable Jeannette A. Vargas
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *Aubrey Drake Graham v. UMG Recordings, Inc.*
Case No. 1:25-cv-399-JAV
Letter Opposition to Drake's Motion to Compel Certain Requests for Production

Dear Judge Vargas:

Drake's second letter-motion seeks to compel the production of documents responding to certain requests for production ("RFPs"). Drake seeks, *inter alia*, production of Kendrick Lamar's full recording contract, documents showing the value of Lamar's recording catalogue since January 2020, Interscope's monthly revenues and profits over the same period, and Interscope CEO John Janick's executive compensation for the last five years.

As with his motion concerning Sir Lucian Grainge, this motion is nothing but an obvious attempt to misuse the discovery process to pursue irrelevant and overbroad requests principally calculated to harass, embarrass or annoy Drake's perceived adversaries. This includes Kendrick Lamar, who is plainly the real target of Drake's anger, Interscope Records ("Interscope"), the label that distributes Lamar's recordings, Interscope's CEO, John Janick, and UMG more broadly.

Drake's relevance arguments for these invasive and overbroad requests are unfounded. "While broad discovery is available under Rule 26 of the Federal Rules of Civil Procedure, it is not without its limits." *Burgin v. Nat'l Football League*, 2014 WL 521576, at *1 (S.D.N.Y. Feb. 6, 2014). Requests must be "reasonably calculated to lead to discovery of admissible evidence." *Spina v. Our Lady of Mercy Med. Ctr.,* 2001 WL 630481, at *2 (S.D.N.Y. June 7, 2001). "[C]ourts should not allow parties to roam in the shadow zones of relevancy," and discovery requests that are "merely [] fishing expedition[s]," must be denied. *Id.* (cleaned up).

**Requests 11 & 12**: In RFP No. 11, Drake seeks Interscope CEO John Janick's private and highly confidential compensation details going back to 2021—*four years* before "Not Like Us" was even released. Yet Drake makes no attempt to explain how his intrusive request for five years' worth of individual compensation records is conceivably relevant or proportional to this case, which centers on the release and promotion of a single track and music video in 2024. There is none. And his arguments in support of discovery of *any* of Mr. Janick's compensation information

(none of which even attempts to link Mr. Janick's compensation to any decision to release "Not Like Us" in particular) fail miserably.

Drake's only explanation for seeking Mr. Janick's compensation details is that Mr. Janick was incentivized to "promote" Lamar's music because, as CEO of Interscope, his bonus is based in part on Interscope's financial performance. See ECF No. 81 at 2; ¶ 49. Tellingly, Drake does not argue that such an arrangement would have given Mr. Janick any incentive to promote Kendrick Lamar over any other Interscope artist, or "Not Like Us" over any other recording that Mr. Janick thought might be a commercial success. Instead, Drake manufactures the basis for such a motive out of thin air, speculating that because UMG's CEO encourages competition between its record label divisions, UMG's compensation structure must be a zero-sum game that "pitted Lamar's label against Drake's label." *Id.* But this theory is nowhere to be found in Drake's complaint, which states only that Mr. Janick's bonus is based primarily on the financial success of Interscope. *See* ¶¶ 48-49, 214. The proposition that Mr. Janick (or any other corporate executive running a division of a large business) is partly compensated based on the performance of that division is entirely unremarkable. Drake is not entitled to discovery into UMG's most sensitive and highly guarded records—which are not public anywhere—let alone *five years* of them, based on such a flimsy showing. *See In re Klein*, 2022 WL 1567584, at *10 (S.D.N.Y. May 18, 2022) (because the "applicants have not explained how such requests are proportional to the needs of the case, as Rule 26 requires," the "breadth of these demands is unduly intrusive and appears designed to harass the persons and entities covered by the demands") (cleaned up).

RFP No. 12 runs even further afield of any relevance claim. Drake seeks "Interscope's 2024 executive incentive metrics, targets, projections, and performance used to determine annual incentive compensation for Interscope's executives and officers." ECF No. 83-1 at 10. Drake offers no basis for this request beyond the meritless arguments about Mr. Janick. That is not surprising as his complaint make *no* allegations about the compensation of any other Interscope executive. The request is nothing but a fishing expedition that should be denied. *Spina*, 2001 WL 630481, at *2; *see also Collens v. City of New York*, 222 F.R.D. 249, 252 (S.D.N.Y. 2004) (discovery must be focused on "the actual claims and defenses involved in the action").[1]

**<u>Requests 29 & 30</u>**: RFP No. 29 seeks all documents from January 2020 to present relating to any "instruction, direction, or suggestion" that *any* song or music video over which UMG has "contractual rights or control of *any* kind" be censored, modified or altered, or not licensed, published or promoted, based on the content of the song or video. ECF No. 83-4 at 13. RFP No. 30 seeks the same with respect to any music by rapper Pusha T, including particularly "The Story of Adidon"—a different diss track from a separate feud that attacks Drake. *Id.*

RFP No. 29 is grossly overbroad and unduly burdensome. UMG "has a catalog of more

[1] Drake's claim that "UMG's sole objection to Requests 11 and 12 is relevance," ECF No. 81 at 2, is false. UMG objected in its initial responses and continues to object on the basis that these requests are irrelevant *and* not proportional to the needs of the case.

than 220 artists and brands [and] 3.2 million recordings[.]" ¶ 45. The idea that it should review records for *every single song and music video* that it exercised contractual rights or control over for the last five years to respond to this request (which sweeps as broad as seeking documents related to even the *suggestion* of modification) is absurd and unworkable.

RFP Nos. 29 and 30 also fail on relevance grounds. Drake alleges that UMG's "standard longform" recording contract includes a provision permitting it to "eliminate material" that it believes "constitutes defamation or libel," ¶ 50, and that any historical exercise by UMG of such rights is relevant. But UMG's capacity to censor or modify content under *separate* contracts has no relevance to its capacity to censor or modify content under a contract with *Lamar*. UMG has produced the relevant sections of its contract with Lamar bearing on any rights to modify or censor his songs; that is the only contract relevant to Drake's defamation claim. *See N.Y. Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 599 (S.D.N.Y. 2024). Drake's only other relevance argument is that documents showing any attempts by UMG to censor rap lyrics would be "relevant to testing UMG's position that rap lyrics are not understood by the reasonable listener as conveying factual information." ECF No. 81 at 2. This argument fails because the reasonable person standard is, as the Court noted, an objective question of law. *See* MTD Tr. 5:3. The subjective views of any specific individuals (or of UMG) do not factor in.

**Requests 31 & 33**: Drake makes only a passing attempt to justify RFP Nos. 31 and 33, *see* ECF No. 81 at 3, which are irrelevant, invasive and entirely overbroad. In RFP No. 31, Drake purports to need documents showing five-and-a-half years' of Interscope's monthly revenues and profits "to be able to compare the financial impact of ["Not Like Us"] on Interscope and UMG to past years." *Id*. The notion that Drake could isolate the impact of "Not Like Us" from Interscope's top-line financials is nonsensical as any number of events in the previous half decade account for shifting revenues and profits at Interscope. Even taking his flawed position as true, Drake offers no basis for why he needs *five years* of financial data.

Drake's explanation for RFP No. 33 is equally nonsensical. He states that he needs the valuation of Lamar's recording catalogue for the last five-and-a-half-years to support his "theory that UMG was incentivized to promote [Not Like Us] not only to profit in the near-term, but also to heavily monetize in the future: UMG wanted to prove it could immediately maximize Mr. Duckworth's value to convince him to re-sign exclusively with UMG long-term." *Id.* What this means is anyone's guess. Drake makes no attempt to explain why discovery on the historical value of Lamar's recording catalog has any relevance to his claim that UMG tried to convince Lamar to re-sign with UMG or how that relates to "Not Like Us." It does not.

**Lamar Contract**: Drake's RFP No. 1 seeks any contracts between UMG and Lamar reflecting UMG's right to "approve, reject, refuse to publish, edit, amend, alter, or veto the publication" of Lamar's songs or videos. *See* ECF No. 83-1 at 8. The parties agreed that UMG would produce any portions of its contract with Lamar reflecting such rights and redact the remainder. *See* ECF No. 83-2 at 2. At Drake's request, UMG also agreed to leave the contract section headings unredacted. *See id*. UMG did just that. Drake nonetheless now moves for an

unredacted copy of Lamar's contract. This appears to be another instance of Drake seeking discovery based on his grudges—Drake called on Lamar to release his contract during the rap feud. *See* ECF 44, Ex. H ("Pull your contract 'cause we gotta see the split").

Drake cannot explain why the rest of the contract is relevant. He contends that redactions deprive him of "context," but the portions of the contract bearing on UMG's right to refuse, reject or otherwise edit Lamar's music, videos or accompanying artwork have been produced and are entirely intelligible. *See* ECF No. 83-5. Drake contends that the contract should be produced in full on the principle that courts oppose unilateral relevance redactions. ECF No. 81 at 3-4. But that is not an absolute rule. Exceptions apply where, as here, commercially sensitive information is at issue. *See, e.g., Trellian Pty, Ltd. v. adMarketplace, Inc.*, 2021 WL 363965, at *4 (S.D.N.Y. Feb. 3, 2021) (commercial information such as budget figures, performance metrics, and other business performed was properly redacted); *LPD N.Y., LLC v. Adidas Amer.,* 2020 WL 6784179, at *1 (E.D.N.Y. Nov. 17, 2020) (holding that "competitively sensitive portions" of licensing agreements that were "not relevant to the issues in" the case could be redacted). As in *Trellian*, the redactions here shield (highly) commercially sensitive information. 2021 WL 363965, at *4. Drake has made "no showing whatsoever as to the relevance of the redacted portions," the subject matter of which "may be gleaned from their headings." *LPD N.Y.,* 2020 WL 6784179 at *2. And the "ongoing competition" between Drake and Lamar "requires the exercise of additional caution with respect to [the] commercially sensitive information." *Trellian*, 2021 WL 363965, at *4.

Drake also argues that the existence of the Attorneys' Eyes Only ("AEO") designation in the parties' Protective Order abrogates any otherwise justified withholding or redaction of documents, including confidential or proprietary business information. ECF No. 81 at 3. Not so, as "even with a protective order in place, the disclosure of commercially sensitive information [] can be harmful." *Grand River Enters. Six Nations, Ltd. v. King*, 2009 WL 222160, at *3 (S.D.N.Y. Jan. 30, 2009). That is, "simply telling [UMG] to apply the AEO designation in the Protective Order does not eliminate the risk of harm from disclosure of its commercially sensitive information." *Trellian*, 2021 WL 363965, at *4. Particularly, "given the [fact] that the redacted information is not relevant," redactions are appropriate. *Id.*

Accordingly, Drake's demand for an unredacted copy of Lamar's full contract should be denied. At minimum, the Court should conduct an *in camera* review of the contract before ruling on Plaintiff's motion. *See Strategic Growth Int'l, Inc. v. RemoteMDX, Inc.*, 2007 WL 3341522, at *2 (S.D.N.Y. Nov. 9, 2007) (determining, after *in camera* review, that certain irrelevant information could remain redacted).

Respectfully submitted,

*/s/ Rollin A. Ransom*
Rollin A. Ransom

*Attorney for UMG Recordings, Inc.*